## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ELLA LEON, individually and as personal
representative of the estate of MARTIN LEON,
deceased,

       Plaintiff,

vs.                                                                        No. CIV 13-1005 JB/SCY

FEDEX GROUND PACKAGE SYSTEM, INC.,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant FedEx Ground Packages System,
Inc.'s Motion in Limine to Exclude Evidence of the Accident Register Report and Other
Accidents, filed November 16, 2015 (Doc. 65)("Register Motion").  The Court held a hearing on
December 22, 2015.  The primary issues are whether the Court should exclude Defendant FedEx
Ground Package System, Inc.'s ("FedEx Ground") Accident Register Report and other evidence
of prior accidents involving FedEx Ground's trucks, because: (i) the prior accidents are irrelevant
to liability, compensatory damages, and punitive damages; (ii) the Court cannot determine
whether the prior accidents were substantially similar to the accident at issue; (iii) FedEx
Ground's conduct in the other accidents is too dissimilar from the conduct at issue; (iv) the
danger of unfair prejudice and wasted time substantially outweigh the evidence's probative
value; (v) Plaintiff Elia Leon seeks to introduce the evidence to prove that FedEx Ground acted
in conformity with prior wrongs; and (vi) the evidence is hearsay not within any relevant
exception.  The Court will grant in part and deny in part the Register Motion.  The Court
concludes that the evidence of other accidents, including the Accident Register, is potentially

relevant to liability and punitive damages.  It determines that the evidence of other accidents, including the Accident Register, is inadmissible unless E. Leon can provide additional information to demonstrate that the other accidents are substantially similar to the accident at issue.  Similarly, the Court cannot admit the Accident Register as evidence related to punitive damages because it cannot determine whether FedEx Ground's conduct in prior accidents was similar to its conduct in this accident.  If E. Leon can provide additional detail on substantial similarity, the Court is unlikely to exclude the evidence on any of FedEx Ground's other objections.

## FACTUAL BACKGROUND

The Court takes its facts from the Plaintiff's Complaint to Recover Damages for Personal Injury & Wrongful Death (Jury Trial Demanded), filed October 17, 2013 (Doc. 1)("Complaint"). On November 30, 2011, at roughly 11:00 p.m., Federico Martinez-Leandro was driving a tractor-trailer "eastbound on Interstate 40 in Cibola County, New Mexico approximately .2 miles west of mile marker 89."  Complaint ¶ 12, at 3.  Martin Leon, an authorized passenger, was present in the tractor's cab.  See Complaint ¶ 13, at 3.  Martinez-Leandro crashed the tractor-trailer into the rear of a second tractor-trailer while in the right lane.  See Complaint ¶ 15, at 3.  M. Leon suffered serious injuries and death as a result of the accident.  See Complaint ¶ 16, at 3.

Martinez-Leandro was Eusebia Transportation, Inc.'s employee or agent.  See Complaint ¶ 8, at 2.  Eusebia Transportation, Inc. had leased the tractor and Martinez-Leandro's services to FedEx Ground, which provided the trailers and displayed its Department of Transportation number on the tractor.  See Complaint ¶ 7-8, at 2.

## PROCEDURAL BACKGROUND

Ella Leon brought suit as decedent M. Leon's widow and personal representative on October 17, 2013.  See Complaint ¶¶ 2, 4, at 1.  E. Leon alleges two causes of action in her Complaint: (i) a negligence and negligence per se claim based on FedEx Ground's failure to maintain and operate the vehicle in a safe manner, see Complaint ¶¶ 17-25, at 4-5; and (ii) a negligence and negligence per se claim based on FedEx Ground's failure to maintain and operate the vehicle in compliance with applicable safety rules and administrative standards, see Complaint ¶¶ 26-39, at 5-7.  E. Leon seeks actual and compensatory, exemplary, and punitive damages.  See Complaint ¶¶ 41-43, at 7-9.

### 1.    The Register Motion.

On November 16, 2015, FedEx Ground moved to exclude the Accident Register and all "evidence of other accidents, generally."  Register Motion at 1.  FedEx Ground explains that the Accident Register "contained a lengthy list of reported accidents from December 1, 2008, through December 30, 2011."  Register Motion at 1.  It explained:

> Accidents that did not have any injuries or deaths were redacted as set forth in the court's ruling on March 19, 2015. The Accident Register Report included accidents involving property damage, injuries (both minor and more severe) and deaths, but the Accident Register Report did not contain any specific information regarding the nature of the accident other than as stated above.

Register Motion at 1.  FedEx Ground raises three primary arguments in favor of exclusion.  First, it contends that evidence of any other accidents, including the Accident Register, is irrelevant to the current matter.  See Register Motion at 2-3.  It asserts that, because the other accidents "are too dissimilar from the collision in this case to make the existence of any fact that is of consequence to this case 'more or less probable,' they are not relevant to this case."  Register Motion at 3 (quoting Fed. R. Evid. 401).  FedEx Ground points to Black v. M & W Gear Co.,

269 F.3d 1220 (10th Cir. 2001), which it says held that any other incidents or accidents must be "substantially similar to the accident that is the subject of the litigation before the court" to be relevant and admissible.  Register Motion at 3 (quoting Black v. M & W Gear Co., 269 F.3d at 1227).  FedEx Ground defines "substantial similarity" to require that "conditions substantially similar to the subject collision caused the other conditions."  Register Motion at 4 (citing Wheeler v. John Deere Co., 862 F.2d 1404, 1407 (10th Cir. 1988), and Kopfinger v. Grand Cent. Pub. Mkt., 389 P.2d 529, 534 (Cal. 1964)).  It notes that it is not aware of any cases with substantially similar facts.  See Register Motion at 5.

Furthermore, FedEx Ground contends that rule 404(b) of the Federal Rules of Evidence would bar the admission of any substantially similar prior collisions.  See Register Motion at 5. It explains that the "exceptions that would permit such evidence to be admitted do not exist in this case."  Register Motion at 5.  It also attempts to cut off any arguments based on rule 406 on the grounds that prior collisions are not frequent enough and are not similar enough to constitute a "habit" or "routine practice."  Register Motion at 5.

Second, FedEx Ground asserts that evidence of other accidents "should be excluded because its probative value is outweighed by its risk of prejudicing, misleading, and confusing the jury" under rule 403.  Register Motion at 6.  It argues that admission will lead to distraction, time-wasting, unduly emotional responses, and the inference that it "was negligent in this case because it was allegedly negligent in prior cases."  Register Motion at 6-7 (citing Uitts v. General Motors Corporation, 411 F. Supp. 1380, 1383 (E.D. Pa. 1974)(Huyett, J.)).

Third, FedEx Ground argues that "[t]he Accident Register Report, accident reports from other collisions, complaints filed in other actions, complaints received by [FedEx Ground], police reports, or affidavits or statements of purported eyewitnesses to other accidents or

incidents are hearsay and do not fall into any recognized exception to the hearsay rule."  Register

Motion at 8 (citing Fed. R. Evid. 802).  It notes that E. Leon has not "identified any witnesses

who can testify as to their personal knowledge" of other accidents and that even "records of a

regularly conducted activity" do not fall within any hearsay exception because they are just

summaries of other hearsay.  Register Motion at 8 (citing Johnson v. Ford Motor Co., 988 F.2d

573, 579 (5th Cir. 1993)).

> **2.      The Response.**

E. Leon responded on December 3, 2015.  See Plaintiff's Response to FedEx Ground

Package System, Inc.'s Motion *In Limine* to Exclude Evidence of the Accident Register Report

and Other Accidents, filed December 3, 2015 (Doc. 85)("Register Response").  E. Leon explains:

> Plaintiff does not intend to introduce evidence of the specific accidents that are
> listed on FedEx's report.  The facts of those injury and fatal crashes are largely
> unknown to plaintiffs.  It is the totality of those crashes, and FedEx's apparent
> indifference to the consequences of its failure to train that is a central issue in this
> case.  That is appropriate evidence for that purpose.

Register Response at 2.  She contends that rule 404 does not apply, because she would introduce

the Accident Register to "show notice that FedEx knew or should have known the consequences

of its deliberate policy and practice not to train its drivers."  Register Response at 2.  She

describes the only other accident with which she is familiar as "strikingly similar to this one,"

adding that "FedEx failed to train its drivers on recognition of fatigue.  The FedEx driver ran into

the back of another vehicle late at night and was killed as a result."  Register Response at 2.  She

contends that the jury can consider the Accident Register and testimony related to it: (i) to

determine the level of care FedEx Ground was required to provide, given that the amount of care

owed rises with the risk of danger; (ii) to consider whether FedEx Ground's conduct rises to the

level of recklessness; and (iii) to fix an appropriate amount of punitive damages.  See Register

Response at 2-3.

**3.     The Reply.**

FedEx Ground replied on December 17, 2015.  See FedEx Ground Package System, Inc.'s Reply in Support of its Motion in Limine to Exclude Evidence of the Accident Register Report and Other Accidents, filed December 17, 2015 (Doc. 109)("Register Reply").  FedEx Ground first points out that the Accident Register includes all reportable accidents over a three year period, including accidents that resulted in property damage and minor injuries, and covered the entire country.  See Register Reply at 1-2.  FedEx Ground contends that E. Leon cannot demonstrate that any of these accidents are similar to the accident in this case.  See Register Reply at 2.  It distinguishes E. Leon's specific case on the grounds that it "involved only one commercial motor vehicle and a stopped car."  Register Reply at 2.  It adds that E. Leon's "corporate indifference" argument fails as a matter of law, because there is no substantial similarity.  Register Reply at 3.  Finally, it notes that E. Leon fails to respond to its rule 404(b) and hearsay arguments.  See Register Reply at 4.

**4.     The Hearing.**

The Court held a hearing on December 22, 2015.  See Transcript of Hearing, taken December 22, 2015 (Doc. 128)("Dec. 22 Tr.").  The Court opened the discussion by explaining that it was inclined to grant the Register Motion in part and deny it in part:

> But just simply putting in this report, I don't have any 403 concerns.  I do think that evidence of other collisions may be relevant, if we have a punitive damages case.  I don't think evidence of other collisions is necessarily going to prejudice or mislead the jury.  But I do think that the Tenth Circuit -- and maybe my own prior opinions -- have a substantial similarity [] requirement. So you can't just come in and say, So and so had so many accidents. There has to be some showing of similarity.

Dec. 22 Tr. at 57:13-23 (Court).  It concluded that other accidents would be inadmissible unless E. Leon could show that they were similar.  See Dec. 22 Tr. at 58:1-5 (Court).

FedEx Ground, of course, agreed.  See Dec. 22 Tr. at 58:8-16 (Saiz).  It allowed that, "if at some point during the course of the trial, plaintiff is able to make that showing prior to introduction of the register," the parties could dispute the issue then.  Dec. 22 Tr. at 59:14-28 (Saiz).  For now, it said, the "accident register is inadmissible because it does not contain the specific information regarding any of the prior accidents."  Dec. 22 Tr. at 59:18-22 (Saiz).

E. Leon argued that she was trying to introduce the Accident Register to show results of FedEx Ground's inadequate training rather than any similarities between the accidents.  See Dec. 22 Tr. at 60:4-22 (Barber).  She also noted that the Accident Register could be relevant to punitive damages:

> And so it's that element of punitive damages, knowledge that this is a very dangerous activity, sending out truckers with 80,000 pound vehicles with absolutely no thought to their training, and no attempt to make sure they are trained, in violation of federal statutes, results in almost an injury or fatal crash per day.  It's that summary that is crucial.  Not any particular.

Dec. 22 Tr. at 61:3-10 (Barber).  She argued that accident statistics were relevant to "foreknowledge" and punitive damages rather than as evidence of similar past conduct.  See Dec. 22 Tr. at 61:12-62:7 (Barber).

FedEx Ground responded that, "[f]or all that we know at this point, because plaintiff has not developed any other evidence in the case, the reported accidents involving injury could be somebody hitting a dog or having a minor fender-bender, simply because they're required to report any accident that results in any injury."  Dec. 22 Tr. at 62:15-20 (Saiz).  It argued that E. Leon should have asked for more specificity before the close of discovery.  See Dec. 22 Tr. at 63:11-16 (Saiz).

The Court then summarized its inclination:

> I'm inclined to still stick with my original ruling.  It can come in if the plaintiff can link up the accidents.  But I understand Mr. Barber's point.  It's going to preclude him from making the argument that I know he wants to make about the number, and how it happens every day.  That may be precluded by this ruling, and probably will be precluded.  He can still link up specific instances.  But I don't think the overall number can come in unless he's prepared to show that all 800 of these are substantially similar to the accident here.

Tr. at 64:6-17 (Court).

## LAW REGARDING THE RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."  Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).  "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")).  "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'"  United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012) (Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).  Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.   See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989)(Baldock, J.).   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."   United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(Tacha, J.)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)(Brorby, J.)).   The United States Court of Appeals for the Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."   United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010)(Baldock, J.).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999)(Kelly, J.), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983)(Ervin, J.); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980)(Russell, J.).   As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .   This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(Thomas, J.)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)).   See United States v. Abel, 469 U.S. 45, 54 (1984)(Rehnquist, J.)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke the jury's emotional response or would otherwise tend to adversely affect the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999)(Sanborn, J.). Evidence is not unfairly prejudicial merely because it damages a party's case.  See United States v. Caraway, 534 F.3d at 1301; United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)(Ebel, J.); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991)(Holloway, J.).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee notes).

## LAW REGARDING RULE 404(b)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith.  See Fed. R. Evid. 404(b).  Rule 404(b) provides:

**(b)     Crimes, Wrongs, or Other Acts.**

**(1)     Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2)**     **Permitted Uses; Notice in a Criminal Case.**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.   On request by a defendant in a criminal case, the prosecutor must:

       **(A)**     provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

       **(B)**     do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).  "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too."  Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2011 WL 6739166, at *5 (D.N.M. Nov. 1, 2011)(Browning, J.).  "The rule, however, has a number of 'exceptions'[1] -- purposes for which such evidence will be

---

[1]In a recent en banc opinion, the United States Court of Appeals for the Seventh Circuit stated that describing rule 404(b)(2) as exceptions to 404(b)(1)'s broad rule is a misconception, because subsection (2) permits the evidence to be used for other purposes that are not described in subsection (1).  See United States v. Gomez, 763 F.3d 845, 855 n.3 (7th Cir. 2014)(en banc).

> A common misconception about Rule 404(b) is that it establishes a rule of exclusion subject to certain exceptions.  That's not quite right.  The text of the rule does not say that propensity evidence is inadmissible *except* when it is used to prove motive, opportunity, intent, etc.   Rather, it says that propensity evidence -- other-act evidence offered to prove a person's character and inviting an inference that he acted in conformity therewith -- is *categorically* inadmissible.  Fed. R. Evid. 404(b)(1). But the rule also acknowledges that there may be "another" use for other-act evidence -- i.e., a different, *non-propensity* use.  Fed. R. Evid. 404(b)(2).  So it's technically incorrect to characterize the purposes listed in subsection (2) as "exceptions" to the rule of subsection (1).  The Rules of Evidence do contain some true exceptions to the rule against propensity evidence, but they're found elsewhere -- notably in Rules 412 through 415, which are limited to sexual-assault cases.   In contrast, the purposes enumerated in subsection (2) of Rule 404(b) simply identify situations in which the rule of subsection (1) by its terms does not apply.

United States v. Gomez, 763 F.3d at 855 n.3 (emphases in original).

admissible." <u>Wilson v. Jara</u>, 2011 WL 6739166, at *5.  Those purposes include proving motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

<u>See</u> Fed. R. Evid. 404(b).  The Supreme Court has enunciated a four-part process to determine

whether evidence is admissible under rule 404(b).  <u>See</u> <u>Huddleston v. United States</u>, 485 U.S.

681, 691-92 (1988)(Rehnquist, J.).  The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

<u>United States v. Zamora</u>, 222 F.3d 756, 762 (10th Cir. 2000)(Ebel, J.)(citing <u>United States v.</u>

<u>Roberts</u>, 185 F.3d 1125 (10th Cir. 1999)(Porfilio, J.)).  <u>See</u> <u>United States v. Higgins</u>, 282 F.3d

1261, 1274 (10th Cir. 2002)(Holloway, J.); <u>United States v. Hardwell</u>, 80 F.3d 1471, 1488 (10th

Cir. 1996)(Briscoe, J.)(citing <u>Huddleston v. United States</u>, 485 U.S. at 691-92).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal

defendant from risking conviction on the basis of evidence of his character.  <u>See</u> <u>United States v.</u>

<u>Lucas</u>, 357 F.3d 599, 611 (6th Cir. 2004)(Boggs, J.).  In <u>United States v. Phillips</u>, 599 F.2d 134

(6th Cir. 1979)(Merritt, J.), the United States Court of Appeals for the Sixth Circuit noted, in

addressing rule 404(b)'s limitations and requirements, that the rule addresses two main policy

concerns: (i) that the jury may convict a "bad man" who deserves to be punished, not because he

is guilty of the crime charged, but because of his prior or subsequent misdeeds; and (ii) that the

jury will infer that, because the accused committed other crimes, he probably committed the

crime charged.  <u>United States v. Phillips</u>, 599 F.2d at 136.  "'[W]hen other-act evidence is

admitted for a proper purpose and is relevant, it may be admissible even though it has 'the

potential impermissible side effect of allowing the jury to infer criminal propensity.'"  United

States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007)(Tacha, J.)(quoting United States v.

Cherry, 433 F.3d 698, 701 n.3 (10th Cir. 2005)(Tacha, J.)).  See United States v. Romero, No.

CR 09-1253 JB, 2011 WL 1103862, at *12 (D.N.M. March 9, 2011)(Browning, J.)("Rule 404(b)

evidence almost always has some propensity evidence; that is the reason for limiting

instructions.").

When bad-act evidence is both relevant and admissible for a proper purpose, "the

proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link

of which may be the inference that the defendant has the propensity to commit the bad act."

United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(McKee, J.)(alterations omitted).  The

Tenth Circuit has also stated that district courts must "identify specifically the permissible

purpose for which such evidence is offered and the inferences to be drawn therefrom."  United

States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(Seymour, J.)(citing United States v.

Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)(Seymour, J.)).

> The Government must articulate precisely the evidentiary hypothesis by which a
> fact of consequence may be inferred from the evidence of other acts.  In addition,
> the trial court must specifically identify the purpose for which such evidence is
> offered and a broad statement merely invoking or stating Rule 404(b) will not
> suffice.

United States v. Romine, 377 F. Supp. 2d 1129, 1132 (D.N.M. 2005)(Browning, J.)(quoting

United States v. Kendall, 766 F.2d at 1436).  Rules 401 to 403 and the conditional relevancy

rules in rule 104(b) govern the applicable burden the proponent must meet to successfully offer

evidence under rule 404(b).  See Huddleston v. United States, 485 U.S. at 686-91.

The Tenth Circuit has recognized the probative value of uncharged, unrelated acts to

show motive, intent, and knowledge, when the uncharged, unrelated acts are similar to the

charged crime and sufficiently close in time.  See United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)(Briscoe, J.)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989)(Brorby, J.)(holding that evidence about events over a year after the charged conduct was not "too remote in time and unrelated to the transactions with which he was charged").  The evidence's proponent may show this similarity through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'"  United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)(Niemeyer, J.)(quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978)(en banc)).  See United States v. Bonnett, 877 F.2d at 1461 ("The closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion.").  The more similar the act or state of mind, the more relevant the evidence becomes.  See United States v. Queen, 132 F.3d at 996.  Moreover, when establishing probative value, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical.  See United States v. Gutierrez, 696 F.2d 753, 755 (10th Cir. 1982)(McWilliams, J.).  "A much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind."  United States v. Myers, 550 F.2d 1036, 1045 (5th Cir. 1977)(Clark, J.)

In United States v. Tan, 254 F.3d 1204 (10th Cir. 2001), the Honorable LeRoy C. Hansen, United States District Judge for the District of New Mexico, excluded, in a second-degree murder case, evidence that the defendant had previously been convicted of

driving while intoxicated.  See 254 F.3d at 1206-07.  The murder charge rose out of the defendant driving a vehicle while intoxicated and striking a motorcyclist with his vehicle.  See 245 F.3d at 1206.  Judge Hansen concluded that evidence of the other convictions would show only that the defendant had a propensity for drunk driving and would be more prejudicial than probative.  See 254 F.3d at 1207.  The Tenth Circuit reversed.  In an opinion that the Honorable Stephen H. Anderson, United States Circuit Judge for the Tenth Circuit, wrote, and Judges Seymour and Kelly joined, the Tenth Circuit held that, because second-degree murder requires proof of malice, the prior convictions were probative of the proper purpose of proving malice or intent, reasoning that a person who is convicted of drunk driving is more aware of the substantial risks and harm that it can cause to others.  See 254 F.3d at 1210-11.[2]

---

[2]Before United States v. Gomez, the Seventh Circuit used a four-part test to determine the admissibility of 404(b) evidence; the test included:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

United States v. Gomez, 763 F.3d at 852.  In United States v. Gomez, the Seventh Circuit abandoned its traditional four-part test in favor of a "straightforward rules-based approach" that it articulated to "produce clarity and better practice in applying the relevant rules of evidence."  763 F.3d at 853.  One of the main changes in the Seventh Circuit's approach is that the relevance, similarity, and timing of the other act depend on the particular theory of admissibility.  See 763 F.3d at 854.  The Seventh Circuit also focused on the purpose of the other-act evidence to ensure that its relevance does not require a propensity inference.  See 763 F.3d at 856 ("[T]he district court should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose -- or more specifically, how the evidence is relevant without relying on a propensity inference."  (emphasis in original)).  For rule 403's balancing test, the Seventh Circuit focused on how contested an issue is to determine how relevant the other-act evidence is to the issue and to the case: the more disputed the issue, the more relevant the evidence.  See 763 F.3d at 859-60.  For example, for general intent crimes, evidence showing intent is likely irrelevant, unless the defendant puts

intent at issue, but, for specific intent crimes, other-act evidence is more relevant to showing intent. See 763 F.3d at 857-59.

> [W]hen intent is not "at issue" -- when the defendant is charged with a general-intent crime *and* does not meaningfully dispute intent -- other-act evidence is not admissible to prove intent because its probative value will always be substantially outweighed by the risk of unfair prejudice. In contrast, when intent *is* "at issue" -- in cases involving specific-intent crimes or because the defendant makes it an issue in a case involving a general-intent crime -- other-act evidence *may* be admissible to prove intent, but it must be relevant without relying on a propensity inference, and its probative value must not be substantially outweighed by the risk of unfair prejudice.

763 F.3d at 859 (emphasis in original). Finally, the Seventh Circuit held that district courts should draft customized jury instructions for the other-act evidence and that they should hesitate before giving a limiting instruction unless one of the parties requests one. See 763 F.3d at 860-61.

The Tenth Circuit has consistently used a four-part test that is similar, but slightly different from the Seventh Circuit's test. The Tenth Circuit's test provides that

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d at 762. Because "only the en banc court can overrule the judgment of a prior panel," United Food & Commercial Workers Union, Local 1564 of N.M. v. Albertson's, Inc., 207 F.3d 1193, 1198 (10th Cir. 2000)(Lucero, J.), this four-part test binds the Tenth Circuit -- and, most importantly here, all district courts within the Tenth Circuit -- until the Tenth Circuit, sitting en banc, rules otherwise, see Stephen A. Saltzburg, Professor, George Washington University Law School, The Second Best Federal Bar Seminar Ever: Evidence (May 1, 2015)(noting that United States Courts of Appeals must go en banc to change their four-part tests). Moreover, the Tenth Circuit, and every United States Court of Appeals with a four-part test, derived its test from the "four-step framework" that the Supreme Court set forth in Huddleston v. United States. United States v. Record, 873 F.2d at 1374-75 ("Further, Huddleston provides a four-step framework for avoiding such prejudice, which will greatly simplify the task of a trial court in this circuit, as well as a reviewing court, in analyzing the admission of Rule 404(b) evidence."). In Huddleston v. United States, the Supreme Court listed four rules of evidence that protect defendants from being unfairly prejudiced by evidence introduced under rule 404(b):

> We share petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b). We think, however, that the protection against

The Court dealt with rule 404(b) in several recent cases.  In United States v. Rodella, No. CR 14-2783 JB, 2014 WL 6911573 (D.N.M. Sept. 21, 2014)(Browning, J.), the United States prosecuted Thomas R. Rodella, the former Sheriff of Rio Arriba County, for unlawfully arresting and injuring a motorist during a traffic stop.  See 2014 WL 6911573, at *4.  The United States argued that Rodella, wearing civilian clothes, tailgated the motorist for an extended period to provoke a disrespectful act before pulling the motorist over and forcing him to submit to Rodella's authority.  See 2014 WL 6911573, at *5.  The United States offered evidence of three prior incidents in which Rodella, wearing civilian clothes, drove in a threatening manner, pulled motorists over, and forced them to acknowledge his authority.  See 2014 WL 6911573, at *2-3.  The Court admitted the evidence because there was a high degree of similarities between the prior incidents and the charged crime and to help the jury determine whether Rodella's conduct was willful.  See 2014 WL 6911573, at *15.  The Court also required the United States to make

---

such unfair prejudice emanates not from a requirement of a preliminary finding by the trial court, but rather from four other sources: first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402 -- as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

Huddleston v. United States, 485 U.S. at 691-92 (citations omitted)(footnote omitted).

While the Seventh Circuit abandoned its old four-part test, its new "rules-based approach" still considers each rule of evidence that the Supreme Court says protects litigants from unfair prejudice.  United States v. Gomez, 763 F.3d at 853-61 (applying rules 104, 105, 401, 402, 403, and 404(b) of the Federal Rules of Evidence).  Indeed, the Seventh Circuit described its change as "less a substantive modification than a shift in paradigm" to "produce clarity and better practice in applying the relevant rules of evidence."  763 F.3d at 853.  Because the Court of Appeals cannot abandon a Supreme Court case, any change the Tenth Circuit makes to its current four-part test -- which would require the en banc court -- must still apply the four factors -- i.e., the rules of evidence -- from Huddleston v. United States, even if the factors are not applied in the same mechanical fashion that the current test requires.

specific statements in its closing argument and offered to provide a limiting instruction in order to prevent the jury from using the evidence for propensity.  See 2014 WL 6911573, at *18. Rodella appealed the Court's ruling to the Tenth Circuit, arguing that the 404(b) evidence required the jury to make inferences based on propensity to find that he acted willfully.  See United States v. Rodella, 804 F.3d 1317, 1334 (10th Cir. 2015).

The Tenth Circuit affirmed the Court's decision.  See United States v. Rodella, 804 F.3d at 1334.  It concluded that the jury did not have to make propensity-based inferences to find that Rodella acted willfully:

> [T]he jury was not required to make any such inferences in order to also infer that Rodella purposely had his son drive in a threatening manner in order to provoke Tafoya into a disrespectful act, that Tafoya purposely intended to force Tafoya to submit to his authority and not to enforce any traffic law, and that Rodella knew that his identity as a law enforcement officer was not readily apparent to Tafoya until the very end of the encounter.  These inferences would reasonably have "rest[ed] on a logic of improbability that recognizes that a prior act involving the same knowledge decreases the likelihood that the defendant lacked the requisite knowledge in committing the charged offense."  Moran, 503 F.3d at 1145; see United States v. Queen, 132 F.3d 991, 996 (4th Cir.1997)(noting that the prior doing of other similar acts is relevant in terms of "reducing the possibility that the act in question was done with innocent intent").

804 F.3d at 1334.  The Tenth Circuit also concluded that the evidence's potential prejudice did not substantially outweigh its probative value:

> At most, [Rodella] asserts that the government "elicited unnecessary details from the [other-act] witnesses—including about how they felt when Rodella accosted them." Aplt. Br. at 41.  To the extent Rodella is implying that this testimony would have caused the jury to find him guilty on the basis of its emotions or to punish Rodella for his involvement in the other acts, the fact of the matter is that Rodella's conduct towards Tafoya was more severe than his conduct towards the drivers involved in the other three incidents.

804 F.3d at 1334-35.

Under different facts, the Court reached the opposite conclusion in United States v. Chapman, No. CR 14-1065 JB, 2015 WL 4461243 (D.N.M. July 15, 2015)(Browning, J.).  In

that case, the United States sought to introduce evidence that the defendant in a domestic violence prosecution: (i) threatened his wife to the point where she contacted the police in 2013; (ii) removed his wife's battery cables so that her car would not operate; and (iii) removed all vehicle keys from the couple's home so that his wife could not leave. See 2015 WL 4461243, at *3. The Court excluded the evidence, explaining that it "is relevant only for propensity purposes" and that the "danger of unfair prejudice substantially outweighs its probative value." 2015 WL 4461243, at *13-14. First, the Court dismissed the United States' argument that the statements could rebut the defendant's self-defense argument:

> These prior incidents are relevant to showing that L. Chapman's statements that D. Chapman was the initial aggressor and that he acted in self-defense are untrue only if the jury draws the forbidden inference that, because L. Chapman has been angry in the past, he was likely angry this time and, thus, was the initial aggressor and did not act in self-defense.

2015 WL 4461243, at *15. Second, the Court rejected the United States' argument that the incidents were relevant to show motive on the same grounds. See 2015 WL 4461243, at *15. It noted that "[e]vidence that L. Chapman became angry could only be relevant to showing motive if the jury inferred that, because L. Chapman has been angry in the past, the reason he assaulted D. Chapman -- his motive -- was that he was angry." 2015 WL 4461243, at *15. The Court stated that the incidents' unfair prejudice substantially outweighed their probative value. See 2015 WL 4461243, at *15. Finally, it concluded that the incidents involving the vehicle battery and keys were not "similar and sufficiently close in time to the charged crime." 2015 WL 4461243, at *16 (citing United States v. Olivo, 80 F.3d 1466, 1469 (10th Cir. 1996)).

The Court granted a motion to introduce evidence under rule 404(b) in United States v. Ballou, 59 F. Supp. 3d 1038 (D.N.M. 2014)(Browning, J.). United States v. Ballou involved a nurse's prosecution for assaulting a patient within a Department of Veterans Affairs hospital.

- 19 -

See 59 F. Supp. 3d at 1043-44.  The United States moved to bar the nurse from introducing testimony and documentary evidence of hostile encounters between the alleged assault victim and various hospital employees, including the defendant.  See 59 F. Supp. 3d at 1045-46.  The Court allowed the testimony -- but not most of the documents -- about the prior altercations between the victim and hospital employees.  See 59 F. Supp. 3d at 1062.  It explained that, under the "relaxed 'reverse' rule 404(b) standard" applicable to non-defendants, the nurse could use testimony about prior incidents "to show Ballou's [the nurse's] state of mind -- in particular, his belief regarding the necessity and amount of force he needed to use against Jaquez to defend himself, and the reasonableness of that belief -- as well as to show Jaquez' animus towards the VA Hospital staff, including Ballou specifically."  59 F. Supp. 3d at 1062.  It excluded most of the documents on separate hearsay grounds.  See 59 F. Supp. 3d at 1063.

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible."  United States v. Christy, No. CR 10-1534 JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802). Under rule 801(c), "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."  United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999)(Carnes, J.).  A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness.  See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)(Hartz, J.)("We have already explained why the content of the statement, if used substantively, would be

inadmissible hearsay.  If admitted for impeachment purposes, however, it is not hearsay.").  Rule

805 recognizes that "[h]earsay within hearsay" -- commonly referred to as double hearsay -- may

be admissible "if each part of the combined statements conforms with an exception to the rule."

Fed. R. Evid. 805.  A party opponent's statement is excluded from the definition of hearsay

where:

> The statement is offered against an opposing party and:
>
>> (**A**) was made by the party in an individual or representative capacity;
>>
>> (**B**) is one the party manifested that it adopted or believed to be true;
>>
>> (**C**) was made by a person whom the party authorized to make a statement on the subject;
>>
>> (**D**) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>>
>> (**E**) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2).  The Tenth Circuit has stated:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 667 (10th Cir.

2006)(Seymour, J.)(alterations omitted)(internal quotations and alterations omitted).[3]

---

[3]The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d) and uses instead the term "statements."  Fed. R. Evid. 801(d).  This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be within the exclusion even

## LAW REGARDING PUNITIVE DAMAGES

A chronology of the Supreme Court's and the United States Court of Appeals for the Tenth Circuit's caselaw on the constitutional limitations on punitive damages reveals an increasingly restrictive view of punitive damages awards that greatly exceed compensatory damages.   The Court cannot, as a district court that must faithfully follow controlling constitutional cases, say that the Supreme Court has replaced the guideposts in BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), for constitutional analysis with the bright-line test in Exxon Shipping Co. v. Baker, 554 U.S. 471 (2008), which is now used in maritime cases, but even the Supreme Court's opinion in State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003), states that "[w]hen compensatory damages are substantial, then a lesser ratio [of punitive to compensatory], perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."   538 U.S. at 425 (emphasis added).   Coupled with the analysis of Exxon Shipping Co. v. Baker, which remains instructive, even if not controlling in constitutional cases, it may be difficult to justify under the Due Process Clause more than a one to one ratio in cases involving substantial compensatory, purely economic damages.

1.    **The Case Law from the Supreme Court and the Tenth Circuit Concerning Punitive Damages.**

In Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257,

---

if it 'admitted' nothing and was not against the party's interest when made." Fed. R. Evid. 801, advisory committee's note on 2011 Amendments.

Although the advisory committee made the commentary quoted in the text regarding the trustworthiness of "admissions by a party-opponent" before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules. Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 should still be useful for cases after the restyling. Fed. R. Evid. 801.

262 (1989), the Supreme Court held that the Excessive Fines Clause of the Eighth Amendment to the Constitution of the United States of America does not apply to a punitive damages award in a civil case between private parties.   See 492 U.S. at 262 (noting that "our cases long have understood [the Eighth Amendment] to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments.").   The Supreme Court held that,

> even if we were prepared to extend the scope of the Excessive Fines Clause beyond the context where the Framers clearly intended it to apply, we would not be persuaded to do so with respect to cases of punitive damages awards in private civil cases, because they are too far afield from the concerns that animate the Eighth Amendment.

492 U.S. at 275.   Although it ultimately declined to review the punitive damages award in Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc. under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States of America because the petitioners had not previously raised that argument before the District Court or the Court of Appeals, and had made no mention of the argument in their petition for certiorari, the Supreme Court nonetheless noted: "There is some authority in our opinions for the view that the Due Process Clause places outer limits on the size of a civil damages award made pursuant to a statutory scheme."   Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. at 277. Although only five justices joined in all parts of the majority opinion in Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., all nine justices concurred that the Due Process Clause might be used in future cases to limit punitive damages awards.   See Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. at 280-282 (Brennan, J., concurring in part, joined by Marshall, J.)("I join the Court's opinion on the understanding that it leaves the door open for a holding that the Due Process Clause constrains the imposition of punitive damages in civil cases brought by private parties."); Browning-Ferris Indus. of Vt., Inc. v. Kelco

Disposal, Inc., 492 U.S. at 282-283 (O'Connor, J., concurring in part, joined by Stevens, J.)("[N]othing in the Court's opinion forecloses a due process challenge to awards of punitive damages or the method by which they are imposed . . . .").

In Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1 (1991), the Supreme Court confronted the questions whether and to what extent the Due Process Clause might limit punitive damages awards in civil cases between private litigants.  See 499 U.S. at 15.  The Supreme Court held:

> One must concede that unlimited jury discretion -- or unlimited judicial discretion for that matter -- in the fixing of punitive damages may invite extreme results that jar one's constitutional sensibilities.  We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case.  We can say, however, that general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus.  With these concerns in mind, we review the constitutionality of the punitive damages awarded in this case.

499 U.S. at 18-19 (internal citations omitted).  The underlying facts of Pacific Mutual Life Insurance Co. v. Haslip involved a life insurance agent for Pacific Mutual Insurance Company who sold life insurance to a number of employees of an Alabama municipality.  See 499 U.S. at 4.  Although the insureds' employer paid the insureds' premiums to the insurance agent, he misappropriated most of the funds and failed to forward notices of lapsed coverage to the insureds.  See 499 U.S. at 5.  The insureds sued both the insurance agent and Pacific Mutual Insurance Company, and the jury awarded $1,040,000.00 in total damages to plaintiff Cleopatra Haslip, including $4,000.00 in out-of-pocket expenditures and compensatory damages of $200,000.00.  See 499 U.S. at 6 n.2.  Recognizing that the district court had adequately instructed the jury and that the appellate courts had properly analyzed the verdict for excessiveness, the Supreme Court ultimately held that the punitive damages award was

constitutional.  See 499 U.S. at 19-23.  Specifically, the Supreme Court found:

> We are aware that the punitive damages award in this case is more than 4 times the amount of compensatory damages, is more than 200 times the out-of-pocket expenses of respondent Haslip, and, of course, is much in excess of the fine that could be imposed for insurance fraud under Ala. Code §§ 13A-5-11 and 13A-5-12(a) (1982), and Ala. Code §§ 27-1-12, 27-12-17, and 27-12-23 (1986).  Imprisonment, however, could also be required of an individual in the criminal context.  While the monetary comparisons are wide and, indeed, may be close to the line, the award here did not lack objective criteria.  We conclude, after careful consideration, that in this case it does not cross the line into the area of constitutional impropriety.  Accordingly, Pacific Mutual's due process challenge must be, and is, rejected.

499 U.S. at 23-24.

The Supreme Court affirmed a punitive damage award of ten million dollars in its next punitive damages case.  See TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 446 (1993).  The jury in TXO Production Corp. v. Alliance Resources Corp. awarded compensatory damages of only $19,000.00.  See TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. at 446.  In the plurality opinion, Justice Stevens, joined by Chief Justice Rehnquist and Justice Blackmun, emphasized that the potential harm from the defendant's conduct went beyond the damage that actually occurred: "It is appropriate to consider the magnitude of the *potential harm* that the defendant's conduct would have caused to its intended victim if the wrongful plan had succeeded, as well as the possible harm to the other victims that might have resulted if similar future behavior were not deterred."  TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. at 460-61 (emphasis original).  The defendant, TXO Production Corp., was a large oil and gas company conducting business in twenty-five states, whereas the plaintiff, Alliance Resource Corp., was a smaller company that owned mineral rights in a tract of land that TXO Production considered potentially profitable.  See 509 U.S. at 447.  TXO Production made a deal with Alliance Resource to acquire its interest, subject to a provision that Alliance Resource would return the

consideration TXO Production paid if TXO Production's attorneys found that Alliance Resource's title had failed.  See 509 U.S. at 447-48.  Knowing that Alliance Resource's title was valid, TXO Production attempted to induce a third party to sign an affidavit stating otherwise, according to the Alliance Resources, so that TXO Production would not have to pay royalties on the oil-and-gas revenues generated on the property, pursuant to the parties' agreement.  See 509 U.S. at 449.  The jury was ultimately persuaded to agree with Alliance Resource, given its award.

Acknowledging "the shocking disparity between the punitive damage award and the compensatory award," Justice Stevens wrote:

> [T]he shock dissipates when one considers the potential loss to [Alliance Resources], in terms of reduced or eliminated royalties payments, had [TXO Production] succeeded in its illicit scheme.  Thus, even if the actual value of the "potential harm" to [Alliance Resource] is not between $5 million and $8.3 million, but is closer to $4 million, or $2 million, or even $1 million, the disparity between the punitive award and the potential harm does not, in our view, "jar one's constitutional sensibilities."

509 U.S. at 462 (quoting Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. at 18).  Noting Justice O'Connor's dissenting opinion, in which Justice White and Justice Souter joined, wherein she asserted the "plausible argument" that the sizeable punitive damage award "is explained by the jury's raw, redistributionist impulses stemming from  antipathy to a wealthy, out-of-state, corporate defendant," TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. at 468 (Kennedy, J., concurring), Justice Kennedy wrote:

> There is, however, another explanation for the jury verdict, one supported by the record and relied upon by the state courts, that persuades me that I cannot say with sufficient confidence that the award was unjustified or improper on this record: TXO acted with malice.  This was not a case of negligence, strict liability, or *respondeat superior*.  TXO was found to have committed, through its senior officers, the intentional tort of slander of title.  The evidence at trial demonstrated that it acted, in the West Virginia Supreme Court's words, through a "pattern and practice of fraud, trickery and deceit" and employed "unsavory and malicious

practices" in the course of its business dealings with respondent.  "The record shows that this was not an isolated incident on TXO's part -- a mere excess of zeal by poorly supervised, low level employees -- but rather part of a pattern and practice by TXO to defraud and coerce those in positions of unequal bargaining power."

TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. at 468-69 (Kennedy, J., concurring).

      a.    ***BMW of North America, Inc. v. Gore.***

In BMW of North America, Inc. v. Gore, the Supreme Court found for the first time that a punitive damages award was unconstitutionally excessive and in violation of the Due Process Clause's substantive component.  See BMW of N. Am., Inc. v. Gore, 517 U.S. at 585-86. Noting that "[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose," the Supreme Court set forth three guideposts for lower courts to consider when determining the constitutionality of a punitive damages award.  See BMW of N. Am., Inc. v. Gore, 517 U.S. at 574-75.  The BMW of North America, Inc. v. Gore guideposts are: (i) the reprehensibility of the defendant's conduct; (ii) "the disparity between the harm or potential harm suffered by [the plaintiff] and his punitive damages award;" and (iii) "the difference between this remedy and the civil penalties authorized or imposed in comparable cases."  517 U.S. at 575.

The plaintiff in BMW of North America, Inc. v. Gore purchased a BMW automobile and later learned that the vehicle had been repainted after it was damaged before its delivery to the plaintiff.  See 517 U.S. at 562.  The manufacturer admitted it was company policy not to disclose such damage to new cars when the cost of repair was less than three percent of the car's suggested retail price.  See 517 U.S. at 562.  In addition to compensatory damages in the amount of four-thousand dollars, the jury awarded punitive damages in the amount of four-million

dollars.  See 517 U.S. at 565.  On appeal, the Supreme Court of Alabama remitted the punitive damages award to two-million dollars.  See 517 U.S. at 567.

With regard to the first guidepost, the reprehensibility of the defendant's conduct, the Supreme Court held that "BMW's conduct was not sufficiently reprehensible to warrant imposition of a $2 million exemplary damages award."  517 U.S. at 580.  Noting that "[t]he $2 million punitive damages awarded to Dr. Gore by the Alabama Supreme Court is 500 times the amount of his actual harm as determined by the jury," 517 U.S. at 582, the Supreme Court found the relationship between punitive and compensatory damages to be "breathtaking" and held that it "must surely 'raise a suspicious judicial eyebrow,'" 517 U.S. at 583.  With regard to the third guidepost, the Supreme Court held that "the $2 million economic sanction imposed on BMW is substantially greater than the statutory fines available in Alabama and elsewhere for similar malfeasance."  517 U.S. at 584.  Thus, the Supreme Court reversed and remanded the Supreme Court of Alabama's remitted amount.  See 517 U.S. at 586.

In the first punitive damages case the Tenth Circuit considered after BMW of North America, Inc. v. Gore, the Tenth Circuit remitted a punitive damages award to an amount "approximately six times the actual and potential damages plaintiffs suffered."  Cont'l Trend Res., Inc. v. OXY USA, Inc., 101 F.3d 634, 643 (10th Cir. 1996)(reversing district court's denial of remittitur and reducing punitive damages award of $30 million to $6 million).  A number of punitive damages decisions thereafter used the six to one ratio.  See United Phosphorous, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1231 (10th Cir. 2000)(affirming as constitutional a punitive damages award of $653,217.00 where compensatory damages were $67,694.00, after noting that adding the plaintiff's lost profits to the compensatory damages would "bring[] the punitive to harm ratio down to less than 6:1"); Fed. Deposit Ins. Corp. v. Hamilton, 122 F.3d

854, 862 (10th Cir. 1997)("[W]e reverse the $1,200,000.00 punitive damage award entered by the district court, and order a remittitur to $264,000.00, an amount representing six times the actual damages suffered by the Hamiltons.").

On the other hand, also after BMW of North America, Inc. v. Gore, case law from the Tenth Circuit suggested that it would allow punitive to compensatory damages ratios of greater than ten to one.  See United Phosphorous, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1230 (10th Cir. 2000)(noting that "the 10:1 ratio is not a sacred line in the sand, across which no punitive award may venture without feeling the wrath of an appellate court's constitutional sword").  Indeed, in some cases, the Tenth Circuit permitted punitive to compensatory ratios greater than ten to one.  See Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1272-73 (10th Cir. 2000)(holding that punitive damages award of $295,000.00 was not constitutionally excessive despite compensatory damages of only $5,000.00, because "both the Supreme Court and this court acknowledge that low awards of compensatory damages may support a higher ratio if a particularly egregious act has resulted in a small amount of economic damages"); Bielicki v. Terminix Int'l Co., 225 F.3d 1159, 1165 (10th Cir. 2000)(affirming as constitutional the district court's award of punitive damages where "[t]he ratio between the punitive damages and compensatory damages awarded by the jury is 12 to 1").

###### b.    *State Farm Mutual Automobile Insurance Co. v. Campbell*.

The Supreme Court returned to the question of the constitutional limits on punitive damages in State Farm Mutual Automobile Insurance Co. v. Campbell, where the Supreme Court considered a bad-faith failure to settle claim brought by an insured against its insurer. See 538 U.S. at 412.  The jury at the district-court level awarded one million dollars in compensatory damages and $145 million in punitive damages.  See 538 U.S. at 412.  The Supreme Court found

the question whether punitive damages were excessive to be "neither close nor difficult." 538

U.S. at 418.  Although it found that "State Farm's handling of the claims against the Campbells

merits no praise," 538 U.S. at 419, the Supreme Court found that the punitive damages award --

or at least the analysis of the first guidepost, reprehensibility -- was based more on State Farm's

"nationwide policies than for the conduct directed toward the Campbells," 538 U.S. at 420.  The

Supreme Court declined to impose any bright-line ratio of punitive to compensatory damages

under the second guidepost, but held that "in practice, few awards exceeding a single-digit ratio

between punitive and compensatory damages, to a significant degree, will satisfy due process."

538 U.S. at 425.  With regard to the third guidepost, the Supreme Court found: "The most

relevant civil sanction under Utah state law for the wrong done to the Campbells appears to be a

$10,000 fine for an act of fraud, an amount dwarfed by the $145 million punitive damages

award." 538 U.S. at 428 (internal citation omitted).  The Supreme Court noted that, "[w]hen

compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory

damages, can reach the outermost limit of the due process guarantee." 538 U.S. at 425.  All in

all, the Supreme Court held in State Farm Mutual Automobile Insurance Co. v. Campbell:

> An application of the Gore guideposts to the facts of this case, especially in light
> of the substantial compensatory damages awarded (a portion of which contained a
> punitive element), likely would justify a punitive damages award at or near the
> amount of compensatory damages.   The punitive award of $145 million,
> therefore, was neither reasonable nor proportionate to the wrong committed, and
> it was an irrational and arbitrary deprivation of the property of the defendant.

538 U.S. at 429.

        After the Supreme Court's holding in State Farm Mutual Automobile Insurance Co. v.

Campbell, the Tenth Circuit affirmed an award with a ratio of twenty to one.  See Haberman v.

The Hartford Ins. Group, 443 F.3d 1257, 1263 (10th Cir. 2006)(considering a $100,000.00

punitive damage award with actual damages of $5,000.00).   Noting the Supreme Court's

admonition in State Farm Mutual Automobile Insurance Co. v. Campbell that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," the Tenth Circuit nonetheless affirmed the twenty to one ratio. Haberman v. The Hartford Ins. Group, 443 F.3d at 1272. The Tenth Circuit found it persuasive, with the reprehensibility of the defendant's conduct, that the compensatory damages were relatively low. See 443 F.3d at 1272 ("We are not convinced that the low award of compensatory damages in this case cannot support the more than single digit ratio.").

      c.      ***Exxon Shipping Co. v. Baker***.

Although the binding precedential value of the Supreme Court's most recent punitive damages decision in Exxon Shipping Co. v. Baker, 554 U.S. 471 (2008), is limited to maritime cases, see Exxon Shipping Co. v. Baker, 554 U.S. at 513, some commentators view the decision as signaling an intention to adopt a bright-line punitive to compensatory damages ratio of one to one in all cases, see, e.g., Joni Hersch & W. Kip Viscusi, Punitive Damages by Numbers: *Exxon Shipping Co. v. Baker*, 18 Sup. Ct. Econ. Rev. 259, 260 (2010)(stating that, "[g]iven the earlier statements by the Court in State Farm v. Campbell," and "the Court's reliance in Exxon Shipping Co. v. Baker on statistical analyses of punitive damages that are not specific to maritime cases, there is considerable likelihood that the 1:1 ceiling ultimately will have ramifications beyond maritime cases."); Michael L. Brooks, Uncharted Waters: The Supreme Court Plots the Course to a Constitutional Bright-Line Restriction on Punitive Awards in *Exxon Shipping Co. v. Baker*, 62 Okla. L. Rev. 497, 517-18 (Spring 2010)("[A]lthough the precise holding in Exxon may be narrow, the case is likely to have a substantial impact on the constitutional dimension of punitive damages."). But see Erwin Chemerinsky, A Narrow Ruling on Punitive Damages, Trial, Sept. 2008, at 62, 63 ("[T]he Court was clear that it was dealing only with punitive damages in

maritime cases.  At most, its reasoning can be applied to other areas of federal common law where punitive damages are allowed.").

Exxon Shipping Co. v. Baker was a lawsuit that commercial fishermen and native Alaskans brought for economic damages arising from the grounding of the supertanker *Exxon Valdez* on a reef off the Alaskan coast, which caused millions of gallons of crude oil to spill into Prince William Sound.  See 554 U.S. at 476.  After the United States Court of Appeals for the Ninth Circuit remitted the matter twice, the punitive damages award on appeal to the Supreme Court was $2.5 billion.  See Exxon Shipping Co. v. Baker, 554 U.S. at 481.  Total compensatory damages in the case were $507.5 million.  See 554 U.S. at 515.  The Supreme Court held that punitive damages in maritime cases should be limited to a one to one ratio.  See 554 U.S. at 513.  Although it did not decide Exxon Shipping Co. v. Baker on constitutional grounds, but rather pursuant to maritime law, the Supreme Court held: "In *State Farm*, we said that a single-digit maximum is appropriate in all but the most exceptional of cases, and '[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee.'"  Exxon Shipping Co. v. Baker, 554 U.S. at 514-15.

Justice Ginsburg appears to be among those who view Exxon Shipping Co. v. Baker as a sign of things to come in the Supreme Court's due-process jurisprudence.  In her dissent, she wrote:

> In the end, is the Court holding only that 1:1 is the maritime-law ceiling, or is it also signaling that any ratio higher than 1:1 will be held to exceed "the constitutional outer limit"?  On next opportunity, will the Court rule, definitively, that 1:1 is the ceiling due process requires in all of the States, and for all federal claims?

554 U.S. at 524 (Ginsburg, J., dissenting).

As constitutional scholar Erwin Chemerinsky has noted, the Supreme Court's "reasoning was less about maritime law and more about the need for predictable and consistent rules for punitive damages awards."  Chemerinsky, <u>supra</u> at 62.  Along these lines, the Supreme Court expressly rejected the "verbal" approach to judicial review of punitive damages -- the approach taken in the Supreme Court's prior punitive damages jurisprudence -- in <u>Exxon Shipping Co. v. Baker</u>.  <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. at 503-504.  After reviewing examples of state-law jury instructions on punitive damages, the Supreme Court noted:

> These examples leave us skeptical that verbal formulations, superimposed on general jury instructions, are the best insurance against unpredictable outliers. Instructions can go just so far in promoting systemic consistency when awards are not tied to specifically proven items of damage (the cost of medical treatment, say), and although judges in the States that take this approach may well produce just results by dint of valiant effort, our experience with attempts to produce consistency in the analogous business of criminal sentencing leaves us doubtful that anything but a quantified approach will work.

554 U.S. at 504.  The Supreme Court found that, rather than imposing caps on punitive damages, "the more promising alternative is to leave the effects of inflation to the jury or judge who assesses the value of actual loss, by pegging punitive to compensatory damages using a ratio or maximum multiple."  554 U.S. at 506.  The Tenth Circuit has not expounded upon <u>Exxon Shipping Co. v. Baker</u>.

**2.       Determining the Constitutional Limits on Punitive Damages Awards.**

Even in the context of a constitutional due-process analysis, the Supreme Court has recognized the value of "pegging punitive to compensatory damages using a ratio."  <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. at 506.  <u>See</u> <u>Pacific Mut. Life Ins. Co. v. Haslip</u>, 499 U.S. at 23 (holding that, while "the punitive damages award in this case is more than 4 times the amount of compensatory damages" and "may be close to the line," the award "does not cross the line into the area of constitutional impropriety"); <u>BMW of N. Am., Inc. v. Gore</u>, 517 U.S. at 580-81

(adopting as a "guidepost" the requirement that "exemplary damages must bear a 'reasonable relationship' to compensatory damages").    Indeed, the Supreme Court has held: "Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."   State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 425.   "When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 425.   Because the Supreme Court's reasoning in Exxon Shipping Co. v. Baker applies in cases outside the realm of maritime law, the Court will consider the reasoning, along with the guideposts identified in BMW of N. Am., Inc. v. Gore, mindful that the BMW of N. Am., Inc. v. Gore constitutional analysis controls the Court's analysis in non-maritime cases.   Cf. Agostini v. Felton, 521 U.S. 203, 237 (1997)("[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."    (citation omitted)).

### a.     The First *BMW of N. Am., Inc. v. Gore* Guidepost: "Some Wrongs Are More Blameworthy Than Others."

The reprehensibility of the Defendant's conduct is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award."   BMW of N. Am., Inc. v. Gore, 517 U.S. at 575.   The Supreme Court has set forth five characteristics of conduct that may be relevant to the reprehensibility guidepost: (i) whether the harm was physical versus economic; (ii) whether the conduct evidences "an indifference to or reckless disregard of the health and safety of others"; (iii) the financial vulnerability of the target of the conduct; (iv) whether the

conduct involved repeated action versus an isolated incident; and (v) whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 419.

Under these factors, more reprehensible conduct, such as violence or the threat of violence, and "trickery and deceit," is considered more deserving of substantial punitive damage awards.  BMW of N. Am., Inc. v. Gore, 517 U.S. at 575.  Where a plaintiff experiences purely economic harm, on the other hand, a substantial punitive damage award is less justified.  See BMW of N. Am., Inc. v. Gore, 517 U.S. at 575.  The Supreme Court has also noted, however, that "the infliction of economic injury, especially when done intentionally through affirmative acts of misconduct, or when the target is financially vulnerable, can warrant a substantial penalty."  BMW of N. Am., Inc. v. Gore, 517 U.S. at 577.  See Exxon Shipping Co. v. Baker, 554 U.S. at 494 (internal citations and quotations omitted)(recognizing that "[a]ction taken or omitted in order to augment profit represents an enhanced degree of punishable culpability").  Likewise, "heavier punitive awards have been thought to be justifiable when wrongdoing is hard to detect (increasing chances of getting away with it), or when the value of the injury and the corresponding compensatory award are small (providing low incentives to sue)."  Exxon Shipping Co. v. Baker, 554 U.S. at 494.

      **b.**    **The Second *BMW of N. Am., Inc. v. Gore* Guidepost: Punitive Damages Must Bear a Reasonable Relationship to Compensatory Damages.**

"The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff."  BMW of N. Am., Inc. v. Gore, 517 U.S. at 580.  In the constitutional context -- as opposed to the maritime context -- the Supreme Court has eschewed a mathematical formula.  See BMW of N. Am., Inc.

v. Gore, 517 U.S. at 582 ("Of course, we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula").  A punitive damages award of more than 500 times the compensatory damages, however, may be too great to pass constitutional muster.  See BMW of N. Am., Inc. v. Gore, 517 U.S. at 583 ("In most cases, the ratio will be within a constitutionally acceptable range, and remittitur will not be justified on this basis.  When the ratio is a breathtaking 500 to 1, however, the award must surely 'raise a suspicious judicial eyebrow.'"  (internal citation omitted)).  Even before Exxon Shipping Co. v. Baker, absent exceptional circumstances, a ratio of greater than ten to one was likely to be deemed constitutionally excessive.  See BMW of N. Am., Inc. v. Gore, 517 U.S. at 581 (noting that the difference between punitive and actual damages in TXO Prod. Corp v. Alliance Res. Corp. "suggested that the relevant ratio was not more than 10 to 1").  Indeed, in most cases, the maximum ratio of punitive to compensatory damages permitted by the Due Process Clause appears to be nine to one.  See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 425 ("Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.").  At the same time as it appeared to uphold a nine to one ratio of punitive to compensatory damages generally, the Supreme Court in State Farm Mutual Automobile Insurance Co. v. Campbell also noted that: "When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 425.  Previously, the Supreme Court had affirmed a punitive damages award of "more than 4 times the amount of compensatory damages," although it noted that this award "may be close to the line."  Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. at 23-24.

The Supreme Court noted several studies of punitive damage awards in <u>Exxon Shipping Co. v. Baker</u>, expressing its concern with "the stark unpredictability of punitive awards":

> Courts of law are concerned with fairness as consistency, and evidence that the median ratio of punitive to compensatory awards falls within a reasonable zone, or that punitive awards are infrequent, fails to tell us whether the spread between high and low individual awards is acceptable.  The available data suggest it is not.  A recent comprehensive study of punitive damages awarded by juries in state civil trials found a median ratio of punitive to compensatory awards of just 0.62:1, but a mean ratio of 2.90:1 and a standard deviation of 13.81.  Even to those of us unsophisticated in statistics, the thrust of these figures is clear: the spread is great, and the outlier cases subject defendants to punitive damages that dwarf the corresponding compensatures.  The distribution of awards is narrower, but still remarkable, among punitive damages assessed by judges: the median ratio is 0.66:1, the mean ratio is 1.60:1, and the standard deviation is 4.54.  Other studies of some of the same data show that fully 14% of punitive awards in 2001 were greater than four times the compensatory damages, with 18% of punitives in the 1990s more than trebling the compensatory damages.  And a study of "financial injury" cases using a different data set found that 34% of the punitive awards were greater than three times the corresponding compensatory damages.

554 U.S. at 499-500 (citations omitted).  Relying on empirical studies of punitive damages awards, the Supreme Court determined that the median ratio for all types of cases -- ranging from those with the least blameworthy conduct triggering punitive damages to those featuring malice -- is less than one to one.  <u>See</u> 554 U.S at 512 ("These studies cover cases of the most as well as the least blameworthy conduct triggering punitive liability, from malice and avarice, down to recklessness, and even gross negligence in some jurisdictions.  The data put the median ratio for the entire gamut of circumstances at less than 1:1 . . . .").

      **c.**     **The Third *BMW of N. Am., Inc. v. Gore* Guidepost: Civil or Criminal Penalties in Comparable Cases Can Provide Notice of Potentially Significant Punitive Damages.**

"Comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness."  <u>BMW of N. Am., Inc. v. Gore</u>, 517 U.S. at 583.  While "[t]he existence of a criminal penalty does have

bearing on the seriousness with which a State views the wrongful action," the Supreme Court has cautioned that "[p]unitive damages are not a substitute for the criminal process, and the remote possibility of a criminal sanction does not automatically sustain a punitive damages award." Nonetheless, courts should "accord 'substantial deference' to legislative judgments concerning appropriate sanctions for the conduct at issue."   Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 301 (1989)(O'Connor, J., concurring in part and dissenting in part).

### d.      All Three *BMW of N. Am., Inc.* Guideposts Need Not Be In Agreement.

Tenth Circuit decisions suggest that all three BMW of North America, Inc. v. Gore guideposts need not be in agreement to support a finding that a punitive damages award is constitutionally excessive.   For example, in both Continental Trend Resources, Inc. v. OXY USA, Inc., 101 F.3d at 641 and United Phosphorous, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1231, the Tenth Circuit found that, while the reprehensibility and ratio guideposts both supported their ultimate decision, the facts in those cases "d[id] not lend themselves to comparison with statutory penalties."   Cont'l Trend Res., Inc. v. OXY USA Inc., 101 F.3d at 641.   See United Phosphorous, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1231 ("A finding of common law fraud does not lend itself to comparison with statutory penalties.").

### e.      The Defendant's Wealth is Relevant to the Determination of Punitive Damages.

Beyond the BMW of North America, Inc. v. Gore factors, the Tenth Circuit also permits consideration of the defendant's wealth when determining whether the punitive damages awarded comport with the Due Process Clause.   See Cont'l Trend Res., Inc. v. OXY USA, Inc., 101 F.3d at  641.   On the one hand, the Tenth Circuit acknowledged that "the Supreme Court in BMW downplayed the defendant's wealth as a justification for increasing punitive damages."

101 F.3d at 641.  On the other hand, however, the Tenth Circuit found that the Supreme Court "places in the constitutional calculus the question of the minimum level of penalty necessary to achieve the state's goal of deterrence."  Cont'l Trend Res., Inc. v. OXY USA, Inc., 101 F.3d at 641.[4]

In Federal Deposit Insurance Corp. v. Hamilton, 122 F.3d 854 (10th Cir. 1997), the Tenth Circuit found that the wealth of the defendant in that case, NationsBank, "cut[] the other way," contrasted with the BMW of North America, Inc. v. Gore guideposts. 122 F.3d at 862. The defendant's conduct was not significantly reprehensible given that the injury was economic and that "it arises out of a contractual relationship where the parties can and should contractually protect themselves by providing for explicit remedies in the event of breach."  Fed. Deposit Ins. Corp. v. Hamilton, 122 F.3d at 862 (noting that, under these circumstances, "the permissible ratio of punitive damages to actual damages should be relatively modest").  Also, the Tenth Circuit found that there were not "any civil or criminal penalties applicable to the conduct engaged in by NationsBank," suggesting that "NationsBank was not on notice that its conduct could give rise to substantial non-compensatory liability."  Fed. Deposit Ins. Corp. v. Hamilton, 122 F.3d at 862. Still, a punitive to compensatory ratio of six to one was permitted after remittitur, based, in part, on the Tenth Circuit's consideration of the defendant's wealth:

---

[4] Thus, the Court in Continental Trend Resources, Inc. v. OXY USA, Inc. quoted BMW of North America, Inc. v. Gore:

> The sanction imposed in this case cannot be justified on the ground that it was necessary to deter future misconduct without considering whether less drastic remedies could be expected to achieve that goal.  The fact that multimillion dollar penalty prompted a change in policy sheds no light on the question whether a lesser deterrent would have adequately protected the interests of Alabama consumers.

517 U.S. at 584-85.

> Although we have been cautioned that the size of the defendant should not ordinarily be a very significant factor, we have also concluded that it is not irrelevant either. OXY, 101 F.3d at 641. NationsBank is undeniably a large financial institution, and the $44,000 in fraud damages cannot be expected to serve as much of a deterrent to any future misconduct. Hence, constitutionally, a higher ratio of punitive to actual damages is warranted here than would be the case if the base level of compensatory damages were a significantly higher figure relative to the size of the defendant.

Fed. Deposit Ins. Corp. v. Hamilton, 122 F.3d at 862. In Deters v. Equifax Credit Info. Servs., Inc., the Tenth Circuit stated:

> In assessing the reasonableness of the punitive damages award in the instant case, we must consider the purposes of such a remedy, namely to punish and deter. In this respect, the wealth and size of the defendant are relevant considerations. We agree with the district court that Equifax's gross operating revenue of $1.8 billion in 1996 could be considered in levying a substantial punitive damages award.

202 F.3d at 1233.

### f. Litigation Costs, Including Attorney's Fees, Are Appropriately Considered When Evaluating Constitutionality of Punitive Damages Awards.

The Tenth Circuit has also noted that "the costs of litigation in order to vindicate rights is an appropriate element to consider in justifying a punitive damages award." Cont'l Trend Res., Inc. v. v. OXY USA Inc., 101 F.3d at 642 (citing O'Gilvie v. Int'l Playtex, Inc., 821 F.2d 1438, 1447 (10th Cir. 1987), cert. denied, 486 U.S. 1032 (1988)). Thus, because there was evidence in Continental Trend Resources, Inc. v. OXY USA Inc. that "OXY thought it could impose its corporate will on plaintiffs," and because the plaintiffs had to endure a three-week trial, a lengthy appellate process, and significant post-trial litigation, the Tenth Circuit felt it was appropriate to consider the likely legal costs in addition to the compensatory damages when evaluating whether the punitive damages award was excessive. 101 F.3d at 642 ("Nothing in BMW would appear to prohibit consideration of the cost of those legal proceedings in determining the constitutionally permissible limits on the punitive damages award.").

## ANALYSIS

The Court will grant the Register Motion in part and deny it in part.  The Court concludes that the evidence is relevant to liability and punitive damages.  The Court concludes, however, that the evidence of other accidents is inadmissible unless E. Leon can demonstrate that the other accidents are substantially similar to the accident at issue.  On the present record, the Court will exclude the unredacted Accident Register, because the document's lack of detail prevents it from determining whether the listed accidents are substantially similar to the accident at issue.  It will deny the Register Motion and admit evidence of other accidents only if E. Leon can demonstrate that they are substantially similar to the accident at issue.

I.      **EVIDENCE OF OTHER ACCIDENTS IS INADMISSIBLE UNDER RULE 401 UNLESS E. LEON CAN DEMONSTRATE THAT THEY ARE SUBSTANTIALLY SIMILAR TO THE ACCIDENT AT ISSUE.**

The Court determines that E. Leon intends to introduce the Accident Register and similar evidence to support a punitive damages award and increase the applicable standard of care, and thus the possibility of liability.  It will apply federal law and require E. Leon to demonstrate that any prior accidents were substantially similar to the accident at issue.  The evidence is otherwise inadmissible under established Tenth Circuit law and, to the extent E. Leon seeks to use it to increase a punitive damages award, it violates federal due-process protections for punitive damages defendants.

A.      **E. LEON INTENDS TO INTRODUCE THE ACCIDENT REGISTER AND OTHER ACCIDENT EVIDENCE TO SHOW A HEIGHTENED DUTY OF CARE AND TO SUPPORT A PUNITIVE DAMAGES AWARD.**

To determine whether E. Leon may introduce the Accident Register and other similar evidence, the Court must determine exactly why she seeks to admit it and whether it is relevant to any issues in the case.  E. Leon provides several different rationales for her need to introduce

the Accident Register and other accident evidence.  <u>See</u> Register Response at 2-3.  These include: (i) "to show notice that FedEx knew or should have known the consequences of its deliberate policy and practice not to train drivers"; (ii) to show "FedEx's apparent indifference to the consequences of its failure"; (iii) "so that the jury can understand the risk of danger and determine the amount of care that FedEx must provide"; and (iv) to "determine the culpable mental state of the corporation and fix an appropriate amount of punitive damages."  Register Response at 2-3.  At the hearing, E. Leon largely focused on demonstrating FedEx Ground's "foreknowledge" for punitive damage calculations.  Dec. 22 Tr. at 62:3-7 (Barber).

The Court concludes that E. Leon intends to introduce this evidence to: (i) support a punitive damages award; and (ii) show a higher duty of care.  The punitive damages connection is clear enough -- E. Leon states that "[t]he jury in this case must be allowed to review and understand the report in order to determine the culpable mental state of the corporation and fix an appropriate amount of punitive damages."  Register Response at 3.  This argument relies on New Mexico cases connecting the defendant's mental state to the possibility of punitive damages.  <u>See</u> <u>Clay v. Ferrellgas, Inc.</u>, 1994-NMSC-080, ¶ 15, 881 P.2d 11, 15 (requiring at least evidence of recklessness or gross negligence for punitive damages).  FedEx's "cavalier attitude towards [the] safety of a dangerous activity," E. Leon argues, could raise its "level of conduct to recklessness."  Register Response at 3.

E. Leon also contends that the jury could use the evidence to determine FedEx Ground's duty of care, because "as the risk of danger increases, the amount of care also increases."  Register Response at 2.  Although E. Leon's briefing is not entirely clear, the Court believes that this argument addresses whether FedEx Ground is liable at all.  E. Leon's cited jury instruction states only that "[e]very person has a duty to exercise ordinary care for the safety of the person

and the property of others."  NMRA § 13-1604.  E. Leon likely meant to refer to the preceding instruction, which provides that, "[a]s the risk of danger that should reasonably be foreseen increases, the amount of care required also increases."  NMRA § 13-1603.  See Cross v. City of Clovis, 1988-NMSC-045, ¶ 10, 755 P.2d 589, 592 (using identical language); Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 13, 881 P.2d at 14 ("[A]s the risk of danger increases, the duty of care also increases.").  E. Leon could argue that these accidents' frequency demonstrates a high risk of danger, which increases the amount of care that FedEx Ground owed in this case and makes recovery more likely.  Accordingly, evidence of prior accidents is admissible for two issues in the case -- liability (duty) and punitive damages.  As discussed below, however, the unredacted Accident Register is inadmissible at this time for either of these purposes.

**B.**    **THE SUBSTANTIAL SIMILARITY REQUIREMENT APPLIES AND REQUIRES E. LEON TO PROVIDE MORE INFORMATION ON THE UNDERLYING ACCIDENTS.**

First, the Court agrees with FedEx Ground that the Accident Register and other accident evidence is inadmissible unless E. Leon can demonstrate that those accidents were substantially similar to the accident here.  The Court concludes that, under these circumstances, the substantial similarity requirement applies outside of the products liability context.  E. Leon has not yet provided sufficient information on the underlying accidents for the Court to admit either the Accident Register or evidence of other accidents.

**1.**    **Federal Law Applies.**

Federal law on substantial similarity applies in diversity cases.  The Tenth Circuit has not explicitly tied the substantial similarity requirement to any particular Federal Rule of Evidence. See Gilbert v. Cosco Inc., 989 F.2d 399, 402 (10th Cir. 1993); Four Corners Helicopters, Inc. v. Turbomeca, S.A., 979 F.2d 1434, 1442 (10th Cir. 1992).  The Court will thus undertake its own

analysis.

In a federal court diversity case, "'[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.'" James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1216-17 (10th Cir. 2011)(quoting Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938)("Erie")).   Under the Tenth Circuit's guidance in Sims v. Great American Life Insurance Co., state substantive law informs whether a fact is of consequence.  See 469 F.3d at 882.

> For example, state law defines the elements and defenses of a cause of action in a diversity case.  If, in such a case, a defendant proffers evidence supporting a defense that is no longer permitted by state statute, that proffer is of no consequence to the action and therefore not properly provable.

469 F.3d at 882.  The analysis thus turns on the distinction between procedural and substantive law, which the Tenth Circuit describes in further detail:

> "A pure rule of evidence . . . is concerned solely with accuracy and economy in litigation . . . ."   Barron v. Ford Motor Co., 965 F.2d 195, 199 (7th Cir. 1992).   Such rules "are addressed to lawyers and judges in their professional roles and govern the means by which disputes regarding the content or application of substantive rules should be resolved.  The purpose of these rules is to achieve accuracy, efficiency, and fair play in litigation, without regard to the substantive interests of the parties."   Michael Lewis Wells, The Impact of Substantive Interests on the Law of Federal Courts, 30 Wm. & Mary L. Rev. 499, 504 (1989).

As John Hart Ely observed,

> [A] procedural rule is . . . one designed to make the process of litigation a fair and efficient mechanism for the resolution of disputes.  Thus, one way of doing things may be chosen over another because it is thought to be more likely to get at the truth, or better calculated to give the parties a fair opportunity to present their sides of the story, or because, and this may point quite the other way, it is a means of promoting the efficiency of the process.

John Hart Ely, The Irrepressible Myth of Erie, 87 Harv. L. Rev. 693, 724-25 (1974).

In contrast, "a substantive rule is concerned with the channeling of behavior outside the courtroom." Barron, 965 F.2d at 199. Substantive rules "are directed at individuals and governments and tell them to do or abstain from certain conduct on pain of some sanction. Substantive rules are based on legislative and judicial assessments of the society's wants and needs, and they help to shape the world of primary activity outside the courtroom." Wells, supra, at 504. Ely elaborates upon this idea:

> The most helpful way . . . of defining a substantive rule . . . is as a right granted for one or more nonprocedural reasons, for some purpose or purposes not having to do with the fairness or efficiency of the litigation process. Thus, in attempting to give content to the notion of substance, the literature has focused on those rules of law which characteristically and reasonably affect people's conduct at the stage of primary private activity.

Ely, supra, at 725 (internal citations and quotations omitted).

In short, although the distinction between substance and procedure is not always clear, we can distinguish a substantive rule from a procedural rule by examining the language and the policy of the rule in question. If these inquiries point to achieving fair, accurate, and efficient resolutions of disputes, the rule is procedural. If, however, the primary objective is directed to influencing conduct through legal incentives, the rule is substantive.

Sims v. Great Am. Life Ins. Co., 469 F.3d at 882-83 (alterations in original)(footnote omitted).

In Sims v. Great American Life Insurance Co,, the Tenth Circuit applied the substance/procedure distinction to an Oklahoma statute that required the use of seatbelts, but excluded evidence regarding the use or non-use of seatbelts in civil suits in the state. See 469 F.3d at 883-84 (citing Okla. Stat. tit. 47, § 12-420). Starting with rule 401 and concluding that Erie did not apply, and then looking to Oklahoma law to determine whether the law was procedural or substantive, but not finding Oklahoma cases on point, the Tenth Circuit surveyed general statements about the law's purposes. See 469 F.3d at 884. The Tenth Circuit concluded that, "[w]hile not completely clear, the language in [the Oklahoma case law] suggests that § 12-420 reflects substantive state policy to the extent that drivers and passengers, while required by law to wear their seat belts, should not be penalized, through connotations of fault, beyond a

small statutory fine."  469 F.3d at 884-85.  Unlike a procedural rule, the Oklahoma statute was "not concerned with how seat-belt evidence might affect the accurate resolution of litigated disputes . . . [or] with the efficient resolution of disputes."  469 F.3d at 885.  Rather, the Tenth Circuit concluded that "the rule was designed to protect drivers from being blamed in a court of law for failure to wear a seat belt."  469 F.3d at 885.

The Court concludes that New Mexico law on substantial similarity is procedural in nature.  A decision whether evidence of prior accidents is admissible is not "concerned with the channeling of behavior outside the courtroom."  Sims v. Great Am. Life Ins. Co., 469 F.3d at 882-83 (quoting Barron v. Ford Motor Co. of Canada, 965 F.2d at 199)).  Unlike a seatbelt rule, this distinction is unlikely to modify any behavior outside of the courtroom.  The rule is instead aimed at "achieving fair, accurate, and efficient resolutions of disputes."  Sims v. Great Am. Life Ins. Co., 469 F.3d at 882-83.

The Tenth Circuit's diversity cases are consistent with the Court's conclusion, even though they do not discuss the issue in depth.  In Black v. M & W Gear Co., for example, a plaintiff brought a products liability diversity action against the manufacturer of a riding tractor lawnmower.  See 269 F.3d at 1226.  The Tenth Circuit applied federal cases interpreting rules 401, 402, 403, and 802 of the Federal Rules of Evidence to resolve the dispute, imposing a substantial similarity requirement.  See 269 F.3d at 1226-29.  The Tenth Circuit followed the same pattern in Wheeler v. John Deere Co., noting that it would apply state law if a question depended "upon policy considerations rather than relevancy."  862 F.2d at 1410.  See Ponder v.

Warren Tool Corp., 834 F.2d 1553, 1560 (10th Cir. 1987)(citing federal cases to impose a

substantial similarity requirement in a diversity case).[5]

## 2.    **Background.**

_____

[5]The Court's conclusions would not change even if it applied New Mexico law.  In a
2015 case, the Court of Appeals of New Mexico examined a plaintiff's attempt to introduce
injury reports that a defendant's other employees filed.  See Williams v. BNSF Ry. Co., 2015-
NMCA-109, ¶ 15, 359 P.3d 158, 162.  The Court of Appeals of New Mexico reviewed New
Mexico's law on point:

> Then, as now, the rule is that evidence of prior accidents or injuries is not relevant
> to prove a specific act of negligence, but may be relevant to show either the
> existence of a danger or hazard or a defendant's knowledge of the danger. 1
> George E. Dix, *McCormick on Evidence*, § 200, at 1106–07, 1112–13 (Kenneth S.
> Broun ed., 7th ed. 2013).  Evidence of prior accidents or injuries is relevant where
> the circumstances surrounding the prior incidents are substantially similar to the
> circumstances surrounding the incident at issue.

2015-NMCA-109, ¶ 16, 359 P.3d 158, 162 (emphasis added)(citing Ohlson v. Kent Nowlin
Const. Co., 1983-NMCA-008, ¶ 34, 660 P.2d 1021, 1025).  The Court of Appeals of New
Mexico described this rule as consistent with both the Tenth Circuit and the general rule in other
states.  See Williams v. BNSF Ry. Co., 2015-NMCA-109, ¶¶17-18, 359 P.3d 158, 162-163.

Court of Appeals of New Mexico decisions do not, of course, bind the Court.  Under the
Erie doctrine, federal courts sitting in diversity must apply the substantive law of the state that
would otherwise have jurisdiction over the claims at issue.  See Erie, 304 U.S. at 78; Gasperini
v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996).  In the absence of an authoritative
pronouncement from the highest court, a federal court's task under the Erie doctrine is to predict
how the state's highest court would rule if presented with the same case.  See Wade v.
EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007).  The federal court "must follow the
decisions of intermediate state courts in the absence of convincing evidence that the highest court
of the state would decide differently."  Stoner v. New York Life Ins. Co., 311 U.S. 464, 467
(1940).  To predict how the state's highest court would rule, the federal court "may seek
guidance from decisions rendered by lower courts in the relevant state, appellate decisions in
other states with similar legal principles, district court decisions interpreting the law of the state
in question, and 'the general weight and trend of authority' in the relevant area of law."  Wade v.
EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)(citations and internal quotation marks
omitted).

The Court concludes that the Supreme Court of New Mexico would reach the same result
as the Court of Appeals of New Mexico in Williams v. BNSF Ry. Co.  First, Williams v. BNSF
Ry. Co. was a very recent decision and is consistent with many other states' decisions.  See
Williams v. BNSF Ry. Co., 2015-NMCA-109, ¶¶17-18, 359 P.3d at 162-163.  Second, other
decisions from the Supreme Court of New Mexico and the Court of Appeals of New Mexico are
consistent with its result.  See Hodgkins v. Christopher, 1954-NMSC-089, ¶ 18, 274 P.2d 153,
157; Strickland v. Roosevelt Cty. Rural Elec. Co-op., 1982-NMCA-184, ¶ 6, 657 P.2d 1184,
1187.

This issue usually arises in the products liability context.  See Pandit v. Am. Honda Motor Co., 82 F.3d 376, 380 (10th Cir. 1996)("We have held that evidence of similar accidents is admissible in a products liability case if the proponent provides a proper predicate.")(citing Wheeler v. John Deere Co., 862 F.2d at 1407; Ponder v. Warren Tool Corp., 834 F.2d 1553, 1560 (10th Cir. 1987); Rexrode v. American Laundry Press Co., 674 F.2d 826, 829 n.9 (10th Cir. 1982)).  See 1 Federal Evidence § 4:5 (4th ed.)("There must be 'substantial similarity' between other accidents and the accident in issue[.]"); 15 A.L.R.6th 1.[6]  One treatise explains:

> In light of the prejudice that such evidence can carry with it, and because of the rule that evidence of other accidents or their absence is not admissible solely to show a character or propensity for careful or careless behavior, most judges will scrutinize it carefully. Usually, a non-propensity purpose and a showing of sufficient similarity in the conditions giving rise to the various accidents are required. Of course, exactly identical circumstances cannot be realized, but the burden of showing substantial similarity falls on the proponent of the evidence.

1 McCormick On Evid. § 200 (7th ed.).

In Black v. M & W Gear Co., for example, a widow brought a products liability action against the manufacturer of the riding tractor lawnmower that rolled over and killed her husband. See 269 F.3d at 1226.  The defendants filed a motion in limine to exclude evidence "concerning dissimilar accidents" under rules 401, 402, 403, and 802 of the Federal Rules of Evidence.  269 F.3d at 1226.  The United States District Court for the Western District of Oklahoma focused on one plaintiff's expert's deposition testimony, which relied on an article stating that "fifty thousand people had been killed in tractor rollovers in the fifty years before 1971" and

---

[6]Many other states impose some form of substantial similarity requirement, and the Court has been unable to find states that have not adopted it.  See Mueller v. Buscemi, 230 P.3d 1153, 1156 (Alaska 2010)("It was [the evidence proponent's] burden to prove that her fall and these other falls occurred under substantially similar circumstances."); Union Pac. R.R. Co. v. Barber, 356 Ark. 268, 288, 149 S.W.3d 325, 338 (2004); Burton v. CSX Transp., Inc., 269 S.W.3d 1, 12 (Ky. 2008), as corrected (Dec. 17, 2008); Watson v. Ford Motor Co., 389 S.C. 434, 454, 699 S.E.2d 169, 179-80 (2010)("Courts require a plaintiff to establish a factual foundation to show substantial similarity because evidence of similar incidents may be extremely prejudicial.").

referenced many other individual tractor rollover incidents.  269 F.3d at 1226.  The court denied the motion and admitted the deposition testimony, although the plaintiff never introduced the underlying studies into evidence.  See 269 F.3d at 1226-27.  The defendants appealed the resulting $2.5 million jury verdict.  See 269 F.3d at 1225.

The Tenth Circuit[7] noted that evidence of other accidents in a products liability suit could be relevant "to show notice, demonstrate the existence of a defect, or to refute the testimony of a defense witness."  269 F.3d at 1227 (citing Four Corners Helicopters, Inc. v. Turbomeca, S.A., 979 F.2d at 1440).  It added an important limitation, however: "Before evidence of other accidents is admissible for any purpose, however, the party seeking its admission must show the circumstances surrounding the other accidents were substantially similar to the accident that is the subject of the litigation before the court."  269 F.3d at 1227 (emphasis added)(citing Wheeler v. John Deere Co., 862 F.2d at 1407).

---

[7]Black v. M & W Gear Co. supports FedEx Ground's arguments, because the primary opinion and the dissent agreed on the relevant questions.  The panel in Black v. M & W Gear Co. consisted of the Honorable Circuit Judges Murphy and Briscoe and Senior District Judge Crow, who was sitting by designation.  Judge Murphy authored the opinion, Judge Briscoe concurred in the result, and Judge Crow dissented.   See 269 F.3d at 1225.  Judge Briscoe disagreed with Judge Murphy's conclusions on the "substantial similarity" question:

> Defendants essentially denied that the mower at issue was susceptible to rollovers, and plaintiff's purpose in introducing the statistical evidence was to show defendants had notice that the mower could, in fact, roll over. The district court specifically recognized this and, despite its awareness that the statistical evidence cited by Sevart arose from accidents that were not identical to the one at issue, it concluded the evidence was relevant and more probative than prejudicial.

269 F.3d at 1242 (Briscoe, J., concurring).  Judge Crow, on the other hand, agreed with Judge Murphy, citing "the longstanding and undisputed rule of law that 'before evidence of other accidents is admissible for any purpose, however, the party seeking its admission must show the circumstances surrounding the other accidents were substantially similar to the accident that is the subject of the litigation before the court.'"  269 F.3d at 1242-43 (Crow, J., dissenting).  The Black v. M & W Gear Co. thus supports FedEx Ground's proposition, albeit in an unconventional manner.

Similarly, in Wheeler v. John Deere Co., a district judge admitted "the live testimony of five witnesses who lost portions of their right arms while clearing the augers[8] on" similar tractors to the one at issue.  862 F.2d at 1407.  It also allowed the plaintiff to impeach the defendant's expert "with evidence of all twenty-four accidents involving the vertical auger on Deere combines."  862 F.2d at 1407.  The Tenth Circuit reversed, explaining that, although the five witnesses with similar accidents could testify, the impeachment evidence was improper because "the judge had not previously found [the accidents] to be substantially similar."  862 F.2d at 1414-15.  It noted that "[b]oth federal and Kansas law permit the introduction of substantially similar accidents in strict products liability actions."  862 F.2d at 1407.

### 3.     Tie to Products Liability.

As a threshold matter, the Court concludes that the "substantial similarity" rule applies outside of products liability litigation.  Most cases have been willing to extend the test outside of the products liability context.  Two cases from district courts within the Tenth Circuit have applied the test to slip-and-fall claims.  See Goeken v. Wal-Mart Stores, Inc., No. 99-4191-SAC, 2002 WL 1334855, at *2 (D. Kan. May 16, 2002)(unpublished)(allowing testimony on the absence of prior accidents at a Wal-Mart store, subject to the substantial similarity test); Simons v. Eaton Corp., No. 93-1144-PFK, 1994 WL 721494, at *3 (D. Kan. Dec. 6, 1994)(Kelly, J.)(unpublished)(allowing evidence of similar prior accidents to show notice).

In Torres v. Cintas Corporation, No. 08-CV-0185-CVE-TLW, 2010 WL 1411002 (N.D. Okla. Apr. 2, 2010)(Eagan, J.)(unpublished), the plaintiff gathered affidavits from employees at other cleaning plants "to show that Cintas did not have or did not enforce safety rules preventing employees from climbing on an energized conveyor."  2010 WL 1411002, at *4.  The Honorable

---

[8]An auger is a sharp tool that is used for making holes.  See Auger, Merriam-Webster Dictionary (January 26, 2016), http://www.merriam-webster.com/dictionary/auger.

Claire V. Egan, Chief United States District Judge for the Northern District of Oklahoma, applied federal evidentiary law and stated that the plaintiff could use this evidence "if she can show that the incidents were substantially similar to the incident causing decedent's death." 2010 WL 1411002, at *5.   Chief Judge Egan declined to make an immediate decision, because "the record does not describe the other similar incidents with sufficient specificity to consider a pre-trial ruling on the admissibility of this evidence."   2010 WL 1411002, at *5.   See 2 Uncharged Misconduct Evidence § 7:25 ("It is true that as in negligence actions, courts in products actions announce that the uncharged accident must occur under similar or substantially similar circumstances.").

        One case from a district court within the Tenth Circuit reached a different conclusion. The Honorable Raymond P. Moore, United States District Judge for the District of Colorado, declined to extend the substantial similarity test beyond the realm of products liability in Wade v. Union Pac. R.R. Co., No. 12-CV-1772-RM-CBS, 2014 WL 1909666 (D. Colo. May 13, 2014)(unpublished).  The plaintiff in that case alleged that his "railroad-issued winter overshoes allegedly caught in the grating of a step on Defendant Union Pacific Railroad Company's locomotive" and sought damages from the railroad.  2014 WL 1909666, at *1.  The railroad presented "summary evidence of hundreds of prior slip, trip and fall claims reported by employees of Defendant before and after the introduction of the LaCrosse boot" to explain why it required its employees to wear the boot.  2014 WL 1909666, at *3.  The plaintiff challenged the admission of this evidence -- in a motion for a new trial -- on the ground that the accidents involved were not substantially similar to the accident at issue.  See 2014 WL 1909666, at *4. Judge Moore rejected this argument and declined to grant the plaintiff a new trial, explaining:

            Relying on substantial similarity case law, Plaintiff seems to presume that undue
            prejudice must exist whenever accident data evidence is introduced in a trial

> because case law requires substantial similarity in *some* contexts -- particularly in the products liability arena, where the existence or non-existence of defects are at issue.  But such a presumption paints with too broad a brush in that it ignores the differing contexts in which such accident evidence may be offered.

2014 WL 1909666, at *4.  In the context before him, Judge Moore noted, the prior accidents were relevant to whether the requirement was negligent.  See 2014 WL 1909666, at *3.  Hence, the evidence came into the record, despite the lack of substantial similarity.

The Court concludes, however, that the substantial similarity rule applies in this particular context and that Wade v. Union Pac. R.R. Co. is distinguishable.  The substantial similarity requirement exists to ensure that highly prejudicial evidence of past accidents is relevant.  See 1 McCormick On Evid. § 200 (7th ed.).  In most cases, the plaintiff seeks to introduce evidence of prior accidents to show that the defendant ignored a known risk.  See Four Corners Helicopters, Inc. v. Turbomeca, S.A., 979 F.2d at 1440 (noting that plaintiffs present prior accidents "to demonstrate notice, the existence of a defect, or to refute testimony given by defense witnesses").  In other cases, a defendant may seek to introduce evidence of a lack of prior substantially similar accidents to refute the existence of a defect or rebut a notice argument.  See Pandit v. Am. Honda Motor Co., 82 F.3d 376, 380 (10th Cir. 1996)("[W]e conclude that evidence of the absence of similar accidents or claims is admissible as long as the proponent provides adequate foundation.").  Wade v. Union Pacific Railroad Co. was an unusual case because the defendant sought to introduce the evidence  not to address the risk of the accident at issue in the case, but rather to provide an alternative explanation for the defendant's allegedly negligent decision.  See 2014 WL 1909666, at *3.  Here, the plaintiff seeks to introduce the Accident Register and other accident evidence to show "foreknowledge" and increase the amount of punitive damages.  Dec. 22 Tr. at 62:3-7 (Barber).  This proposed use of the evidence,

unlike the proposed use in <u>Wade v. Union Pac. R.R. Co.</u>, threatens the prejudice that the substantial similarity requirement seeks to prevent.

####    4.    <u>**Application.**</u>

The Court will not admit the Accident Register or other accident evidence unless E. Leon can show that the accidents were substantially similar to the accident in this case. The question confronting the Court is similar to the question in <u>Torres v. Cintas Corporation</u>. The Accident Register contains only four columns of relevant categories: the number of fatalities, the number of other injuries, whether the accident required any towing, and whether it involved a fuel spill. <u>See</u> Accident Register, filed November 16, 2015 (Doc. 65-1)("Register Exhibit"). It does not provide information on the accidents' severity -- they could have involved minor injuries from fender-benders. <u>See</u> Dec. 22 Tr. at 62:15-20 (Saiz). More importantly, the Accident Register provides no details on the circumstances preceding the accidents. This accident involved a rear-end collision between two tractor-trailers at night on a large highway. <u>See</u> Complaint ¶¶ 12, 15, at 3. A series of accidents in which no party was at fault might have no relevance to this case. As in <u>Torres v. Cintas Corporation</u>, "the record does not describe the other similar incidents with sufficient specificity to consider a pre-trial ruling on the admissibility of this evidence." 2010 WL 1411002, at *5.

That E. Leon intends to introduce the ARR and similar evidence to show FedEx Ground's notice does not change this analysis. <u>See</u> Dec. 22 Tr. at 60:4-22 (Barber). Although "[t]he requirement of substantial similarity is relaxed . . . when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect," this relaxation does not mean that it disappears entirely. <u>Four Corners Helicopters, Inc. v. Turbomeca, S.A.</u>, 979 F.2d at 1440. <u>See</u> <u>Smith v. Ingersoll-Rand Co.</u>, 214 F.3d 1235, 1246-47 (10th Cir. 2000)("[We] accept a lesser

degree of similarity when evidence of other accidents is offered to show the defendant had notice

of potential defects in its product."); Vigil v. Burlington N. & Santa Fe Ry. Co., 521 F. Supp. 2d

1185, 1222 (D.N.M. 2007)(Brack, J.); 1 McCormick On Evid. § 200 (7th ed.).   The Tenth

Circuit's cases require substantial similarity "[b]efore evidence of other accidents is admissible

for any purpose[.]"   Black v. M & W Gear Co., 269 F.3d at 1227 (emphasis added).   The United

States Court of Appeals for the Fifth Circuit has agreed.   See Johnson v. Ford Motor Co., 988

F.2d 573, 580 (5th Cir. 1993)("[E]ven when it is offered solely to show notice, the proponent of

such evidence must establish reasonable similarity.").   E. Leon has not cited any cases to the

contrary.   In short, the Court requires more information on the relevant accidents before it can

conclude that the Accident Register or any other evidence meets even the most lenient version of

the substantial similarity requirement.

## C.   FEDERAL CONSTITUTIONAL AND NEW MEXICO LIMITS ON PUNITIVE DAMAGES REQUIRE THE COURT TO EXCLUDE E. LEON'S PROPOSED EVIDENCE.

Second, to the extent that E. Leon intends to introduce the Accident Register and other

accident evidence, she must provide more information on the relevant accidents to satisfy federal

constitutional limits on punitive damages.   In State Farm Mutual Automobile Insurance Co. v.

Campbell, the Supreme Court reversed the Supreme Court of Utah's decision to reinstate a

punitive damage award of $145 million based on the Fourteenth Amendment's Due Process

Clause.   See 538 U.S. at 412.   The Court explained:

> For a more fundamental reason, however, the Utah courts erred in relying upon
> this and other evidence: The courts awarded punitive damages to punish and deter
> conduct that bore no relation to the Campbells' harm. A defendant's dissimilar
> acts, independent from the acts upon which liability was premised, may not serve
> as the basis for punitive damages.   A defendant should be punished for the
> conduct that harmed the plaintiff, not for being an unsavory individual or
> business. Due process does not permit courts, in the calculation of punitive

damages, to adjudicate the merits of other parties' hypothetical claims against a
defendant under the guise of the reprehensibility analysis[.]

538 U.S. at 422-23.   See Montoya v. Shelden, 898 F. Supp. 2d 1279, 1299 (D.N.M.

2012)(Browning, J.)("The Supreme Court has made clear that punitive damages are intended to

punish a defendant for reprehensible conduct in this case, not for conduct in other similar,

unrelated cases.").

E. Leon seeks to admit the Accident Register and other accident evidence for this

prohibited purpose.  E. Leon's briefing emphasized that FedEx Ground's alleged negligence was

due to "corporate policy" and that the company "injured or killed approximately 895 (almost one

per day) people in the three years prior to the fatal crash in this case."  Register Response at 1.

The Accident Register cannot support these statements.  The Accident Register is a nationwide

compilation of accidents over a period of three years.  See Register Exhibit at 1-35.  It contains

only four columns of information, including the number of fatalities and other injuries.  See

Register Exhibit at 1.  The Court cannot determine whether any of the accidents it lists are

similar -- they could be completely "dissimilar acts, independent from the acts upon which

liability was premised."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 422-23.  The

Accident Register "sweeps in too much conduct that is, although relevant in the rule 401 sense,

too dissimilar to the conduct that harmed" E. Leon.  Peshlakai v. Ruiz, 39 F. Supp. 3d 1264,

1340 (D.N.M. 2014)(Browning, J.).  E. Leon cannot simply paint FedEx Ground as a bad actor

and hold it responsible for hundreds of other accidents, without regard to how dissimilar they

were to the accident in this case.

New Mexico courts have reached the same result.  E. Leon relies on Clay v. Ferrellgas,

Inc., 1994-NMSC-080, 881 P.2d 11, for the proposition that punitive damages should consider

"not only the individual actions of an employee, but also the cumulative effects of all

employees." Register Response at 3.  This case does not require that courts admit evidence of all of corporate employees' acts, regardless whether they are related to the acts that formed the basis for the relevant lawsuit.  In Behrens v. Gateway Court, LLC, 2013-NMCA-097, 311 P.3d 822, 831, the Court of Appeals of New Mexico[9] confronted a resident's lawsuit against the owners and operators of a mobile home park for a fire that "an electrical short in the wiring of an old air conditioner that had been left under the porch of the mobile home" caused.  Behrens v. Gateway Court, LLC, 2013-NMCA-097, ¶ 3.  The plaintiff sought punitive damages; in support, the plaintiff offered evidence that the mobile home park's owner had advanced several theories about the fire's cause, "blamed a plumber for the installation, and then failed to retract her statement even after learning that the plumber did not work on the wiring of the air conditioner," and argued that this evidence proved the owner's culpable state of mind.  2013-NMCA-097, at ¶ 24.  The Court of Appeals of New Mexico explained:

> [T]his Court has stated the "conduct giving rise to the punitive damages claim must be the same conduct for which actual or compensatory damages were allowed." Gonzales v. Sansoy, 103 N.M. 127, 129, 703 P.2d 904, 906 (Ct. App. 1984)(internal quotation marks and citation omitted).  Plaintiff's compensatory damages claim was based solely on Defendant's liability for causing the fire that destroyed Plaintiff's mobile home and personal possessions.  The compensatory damages claim therefore does not support a punitive damages award for post-fire conduct.

---

[9]The Court concludes that the Supreme Court of New Mexico would reach the same result, because the acts were so dissimilar to those that caused the underlying fire.  The Court also notes that, although the Supreme Court of New Mexico initially granted certiorari, see 2013-NMCERT-009, 311 P.3d 452, it later quashed certiorari, see Behrens v. Gateway, LLC, 2014-NMCERT-010, 339 P.3d 426.  The case thus remains good law in New Mexico.

The Court has searched all jurisdictions and cannot find any cases that come out differently than Behrens v. Gateway, LLC.  The Court has no sound reason to think that the Supreme Court of New Mexico, if confronted with the issue in this case, would decide it differently.  The Court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." Stoner v. New York Life Ins. Co., 311 U.S. at 467.  The "absence of conflicting evidence" is present here, so the Court will follow Behrens v. Gateway, LLC.  Indeed, federal law may require the result in Behrens v. Gateway, LLC.

Behrens v. Gateway Court, LLC, 2013-NMCA-097, at ¶ 24.  E. Leon's actual or compensatory damages are based on FedEx Ground's alleged negligence in training its drivers.  See Register Response at 1.  The Court cannot determine whether any of the accidents described in the Accident Register occurred because of FedEx Ground's negligence.  The Court thus cannot soundly allow the unredacted Accident Register into evidence at the time to support a punitive-damages award.

II.     **EVIDENCE OF OTHER ACCIDENTS IS ADMISSIBLE UNDER RULE 403.**

If E. Leon can demonstrate that certain prior accidents are substantially similar, the Court is unlikely to bar the evidence under Rule 403.  The Tenth Circuit requires district courts to remain "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."  United States v. Smalls, 605 F.3d at 787.  Evidence is not unfairly prejudicial merely because it damages a party's case.  See United States v. Caraway, 534 F.3d at 1301.

FedEx Ground argues that the dangers of "unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time" substantially outweighs this evidence's probative value.  Register Motion at 6 (quoting Fed. R. Evid. 403).  The Court disagrees with FedEx Ground's assessment.  As the Court has already noted, the evidence has probative value and, indeed, may be the only way that E. Leon has to prove notice and the number of FedEx Ground's accidents.  If the Court excludes this evidence, it is unlikely that E. Leon will be able, as she wants, to argue that FedEx Ground has an accident per day and is not training to avoid that problem.  The possibility of unfair prejudice will have to be high -- "substantial" -- to overcome the evidence's relevance.  The likelihood of unfair prejudice, however, seems low and manageable here.  E. Leon does not, at least at this stage, intend to introduce detailed accounts of

specific crashes involving FedEx Ground.  See Dec. 22 Tr. at 61:8-12 (Barber)(focusing on the total number of accidents rather than any specific case).  In Uitts v. General Motors Corp., the inadmissible accident reports included "highly inflammatory letters of owners or police reports relating to details of the accidents" and would have required "a mini-trial on each of the thirty-five reports offered by plaintiffs."  411 F. Supp. at 1383.   The evidence of prior accidents here is far more sanitized and less subject to dispute, and does not present the same degree of danger. Although allowing evidence of prior accidents usually creates some degree of prejudice, the Court believes that it can control those risks using limiting instructions.  Finally, the Court concludes that those risks do not substantially outweigh prior accidents' potential probative value on whether FedEx Ground had notice of its alleged negligence's consequences. The Court can always redact the dissimilar incidents.

## III.   EVIDENCE OF OTHER ACCIDENTS IS ADMISSIBLE UNDER RULE 404(b).

The Court also concludes that rule 404(b) does not exclude this evidence.  The Tenth Circuit has consistently applied the following test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d at 762.  E. Leon does not seek to admit evidence of prior accidents -- at least solely -- for the conduct-in-conformity inference that rule 404(b) prohibits -- that FedEx Ground "was negligent in this case."   Register Motion at 5.  Nor does she seek to admit this evidence as a "habit" or "routine practice" under rule 406.  Register Motion at 5.  She intends to use this evidence to show that FedEx Ground has "knowledge that injuries and deaths

occur," which may affect punitive damages.  Dec. 22 Tr. at 61:11-18 (Barber).  As the Court has already discussed, the evidence is relevant, and the risk of unfair prejudice does not substantially outweigh the complaints' probative value.  The Court will, upon request, issue an appropriate limiting instruction.  Accordingly, the Court concludes that rule 404(b) does not require the Court to exclude this evidence.  The evidence no doubt has a propensity effect, but that does not make it inadmissible if it is proffered for other purposes.  "When other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has 'the potential impermissible side effect of allowing the jury to infer criminal propensity.'"  United States v. Rodella, 2014 WL 6911573, at *11 (internal quotations omitted).  The Court can instruct the jury to prevent it from using the evidence for an improper purpose under rule 105, which will further "rein in the jury and prevent it from using the evidence for an improper purpose."  United States v. Rodella, 2014 WL 6911573, at *18.

## IV.   **EVIDENCE OF OTHER ACCIDENTS IS NOT HEARSAY.**

The rule against hearsay does not require the Court to exclude the Accident Register.  First, the Court determines that E. Leon is not necessarily offering the Accident Register for the truth of the matter asserted in the statement.  See Fed. R. Evid. 801(c)(2).  If E. Leon attempts to introduce this evidence to show that FedEx Ground has "knowledge that injuries and deaths occur," she would be offering it for the truth of the matter asserted -- that injuries and deaths occur.  Dec. 22 Tr. at 61:11-18 (Barber).  E. Leon also contends, however, that she offers the Accident Register to "show notice that FedEx knew or should have known the consequences of its deliberate policy and practice not to train its drivers."  Register Response at 2.  Whether FedEx Ground had notice of a disproportionately large number of accident reports does not depend on the reports' accuracy.  A disproportionately large number of reports "would give notice to [FedEx Ground] of a potential area for consideration and investigation."  Misener v. Gen. Motors, 165

F.R.D. 105, 107 (D. Utah 1996)(Boyce, M.J.).

Assuming that the Accident Register is hearsay for some purposes for which E. Leon seeks to use it, the Court determines that it falls within the hearsay exception for a party opponent's statements, because FedEx Ground assembled and produced it.  See Register Motion at 2.  It is a statement "the party manifested that it adopted or believed to be true," and it was "made by a person whom the party authorized to make a statement on the subject."  Fed. R. Evid. 801(d)(2).

The Court's examination of similar cases confirms that the Accident Register is not inadmissible hearsay.  FedEx Ground's citation to Johnson v. Ford Motor Co. is not persuasive.  See 988 F.2d 573.  In Johnson v. Ford Motor Co., the Fifth Circuit drew a distinction between allegations in pending litigation and documents that the defendant itself prepared.  See 988 F.2d at 579 (citing Roberts v. Harnischfeger Corp., 901 F.2d 42, 44-45 (5th Cir. 1989)(rejecting a plaintiff's attempt to introduce "copies of notices of pending litigation against" the defendant)).  The plaintiff there sought to introduce "a brief summary of claims, lawsuits, and complaints (as opposed to a summary of Ford investigations and tests, for example."  988 F.2d at 579.  See Rock v. Huffco Gas & Oil Co., 922 F.2d 272, 281 (5th Cir. 1991)(drawing the same distinction and rejecting evidence, because "[n]othing in the accident reports, themselves, indicates that the defendants adopted the version of the facts as reported by [their employee]").  The evidence here is not a summary of allegations against FedEx Ground, but rather FedEx Ground's account of accidents involving its drivers.  Unlike the evidence in Johnson v. Ford Motor Co., in other words, the Accident Register is "more than a summary of allegations by others."  988 F.2d at 579.

One other case provides stronger support for FedEx Ground's position, but is nonetheless distinguishable.  In Brown v. Crown Equipment Corp., 445 F. Supp. 2d 59 (D. Me. 2006)(Cohen, M.J.), a widow brought a products liability action against the manufacturer of the truck lift that

allegedly injured her husband.  <u>See</u> 445 F. Supp. 2d at 62.  The plaintiff obtained a series of accident reports from the defendant during discovery, which the defendant had reviewed, classified, and incorporated into "pivot tables and other statistical reports."  445 F. Supp. 2d at 66.  The court rejected the plaintiff's argument that the defendant "adopted" the accident reports by reviewing them and categorizing them, explaining that none of the plaintiff's arguments, "alone or taken together, necessarily establishes that the defendant has manifested an adoption of the contents of the reports, let alone a belief in their truth."  445 F. Supp. 2d at 66.

The Court concludes that the situation in this case is distinct from the situation in <u>Brown v. Crown Equip. Corp.</u>.  FedEx Ground created the Accident Register pursuant to a federal reporting requirement.  <u>See</u> Dec. 22 Tr. at 58:8-13 ("[F]ederal regulations require that trucking companies provide their certain accidents that are considered reportable, meaning they're required to report that the accident occurred.").  The relevant regulation requires:

> (b) For accidents that occur after April 29, 2003, motor carriers must maintain an accident register for three years after the date of each accident. For accidents that occurred on or prior to April 29, 2003, motor carriers must maintain an accident register for a period of one year after the date of each accident. Information placed in the accident register must contain at least the following:
>
> (1) A list of accidents as defined at § 390.5 of this chapter containing for each accident:
>
> (i) Date of accident.
>
> (ii) City or town, or most near, where the accident occurred and the State where the accident occurred.
>
> (iii) Driver Name.
>
> (iv) Number of injuries.
>
> (v) Number of fatalities.
>
> (vi) Whether hazardous materials, other than fuel spilled from the fuel tanks of motor vehicle involved in the accident, were released.

(2) Copies of all accident reports required by State or other governmental entities or insurers.

49 C.F.R. § 390.15(b). This obligation requires FedEx Ground to provide its own account of accidents involving its trucks. In other words, the Accident Register represents more than a summary of allegations of others -- it is FedEx Ground's own statement of events. If FedEx Ground may provide this data to the government as true,[10] E. Leon should be able to use it before a jury. The Court thus concludes that the hearsay rule does not bar the introduction of the Accident Register. The Court declines to rule on other specific pieces of evidence about prior accidents on a broad basis and without additional information from E. Leon.

**IT IS ORDERED** that the requests in Defendant FedEx Ground Packages System, Inc.'s Motion in Limine to Exclude Evidence of the Accident Register Report and Other Accidents, filed November 16, 2015 (Doc. 65), are granted in part and denied in part. The Court will grant Defendant FedEx Ground Package System, Inc.'s request that it exclude the Accident Register because the document's lack of detail prevents it from determining whether the listed accidents are substantially similar to the accident at issue. Plaintiff Elia Leon may attempt to introduce the Accident Register only if he can provide additional information to demonstrate that the other accidents are substantially similar to the accident at issue. The Court will deny FedEx Ground's request that it exclude other evidence of prior accidents, but will apply the same substantial similarity requirement to any of E. Leon's proposed admissions. If E. Leon can make that

---

[10]The relevant regulation requires FedEx Ground to make the information in the Accident Register "available to an authorized representative or special agent of the Federal Motor Carrier Safety Administration, an authorized State or local enforcement agency representative, or authorized third party representative within such time as the request or investigation may specify." 49 C.F.R. § 390.15(a)(1).

showing, the Court is unlikely to exclude the evidence on any of FedEx Ground's other objections.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Mark J. Caruso
Caruso Law Offices, PC
Albuquerque, New Mexico

--and--

Paul D. Barber
Barber & Borg LLC
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*

Brenda M. Saiz
Michael E. Kaemper
Abigail M. Yates
Rodey, Dickason, Sloan, Akin & Robb, PA
Albuquerque, New Mexico

> *Attorneys for the Defendant*