# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ELIA LEON, individually and as personal
representative of the estate of MARTIN LEON,
deceased,

       Plaintiff,

vs.                                          No. CIV 13-1005 JB/SCY

FEDEX GROUND PACKAGE SYSTEM, INC.,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Motion *In Limine*, filed November 16, 2015 (Doc. 76)("Motion"). The Court held a hearing on December 22, 2015. The primary issues are: (i) whether the Court should exclude third-party Larry Payne's out-of-court statements regarding his driving immediately before the crash under rule 403 of the Federal Rules of Civil Procedure; (ii) whether the Court should exclude evidence of Plaintiff Elia Leon's settlement with Payne and Puckett Transportation, Inc. ("Puckett"); (iii) whether the Court should exclude E. Leon's allegations in <u>Leon v. Payne, et al.</u>, No. CIV-12-0814 JB/LAM (D.N.M.)(the "<u>Puckett</u> Action"); and (iv) whether the Court should take judicial notice of Leon's allegations in the <u>Puckett</u> Action.[1] The Court will grant in part and deny in part the Motion. First, the Court will admit Payne's out-of-court statements for the limited purpose of showing

---

[1]The Motion includes a request that the Court exclude evidence related to decedent Martin Leon's use or non-use of seat belts or other restraint systems. <u>See</u> Motion at 1-5. Defendant FedEx Ground Package System, Inc. ("FedEx Ground") agreed to this request in its response. <u>See</u> Defendant FedEx Ground Package System, Inc.'s Response in Opposition to Plaintiff's Motion in Limine at 1, filed December 3, 2015 (Doc. 93)("Response"). The Court orally granted this part of the Motion at the hearing, and therefore will not discuss it in this Memorandum Opinion and Order. <u>See</u> Transcript of Hearing, taken December 22, 2015 (Doc. 128)("Tr.").

their inconsistency.  Second, the Court will exclude evidence of E. Leon's settlement with Payne and Puckett, because it would be unduly prejudicial, and the Court has other tools available to explain, at least partially, the missing parties to the jury.  Third, the Court will admit E. Leon's allegations in the Puckett Action, because they show that E. Leon has, in the past, asserted that Payne and Puckett were also negligent, and the pleading is thus relevant evidence of comparative fault.  Finally, the Court will take judicial notice of the allegations in the Puckett Action, but will not take judicial notice of their accuracy.

## FACTUAL BACKGROUND

The Court takes its facts from the Plaintiff's Complaint to Recover Damages for Personal Injury & Wrongful Death (Jury Trial Demanded), filed October 17, 2013 (Doc. 1)("Complaint"), the Motion, and the Response.[2]  On November 30, 2011, at roughly 11:00 p.m., Federico Martinez-Leandro was driving a tractor-trailer "eastbound on Interstate 40 in Cibola County, New Mexico approximately .2 miles west of mile marker 89."  Complaint ¶ 12, at 3.  Martin Leon, an authorized passenger, was present in the tractor's cab.  See Complaint ¶ 13, at 3.  Martinez-Leandro crashed the tractor-trailer into the rear of a second tractor-trailer while in the right lane.  See Complaint ¶ 15, at 3.  M. Leon suffered serious injuries and death because of the accident.  See Complaint ¶ 16, at 3.

Martinez-Leandro was Eusebia Transportation, Inc.'s employee or agent.  See Complaint ¶ 8, at 2.  Eusebia Transportation had leased the tractor and Martinez-Leandro's services to FedEx Ground, which provided the trailers and displayed its Department of Transportation number on the tractor.  See Complaint ¶ 7-8, at 2.

---

[2]The Court draws on the Motion and the Response for its facts, because the Complaint omits certain essential background information, such as a description of Payne's statements to investigators after the accident.

Payne, one of Puckett's drivers, was driving the other tractor-trailer involved in the collision.  <u>See</u> Complaint ¶ 15, at 3.  Payne reported to police officers responding to the crash that he was sleeping in his truck on the highway's right shoulder when FedEx Ground's truck struck him from behind.  <u>See</u> Response at 2.  Investigating officers later confronted Payne with physical evidence showing that the collision occurred in the right lane rather than the shoulder.  <u>See</u> Response at 2.  Payne then changed his account, providing a written statement that he was traveling at fifty-five miles per hour in the right lane immediately before the collision.  <u>See</u> Response at 2.  E. Leon, FedEx Ground, and the New Mexico State Police subsequently reconstructed the accident, and all agree that Payne's truck was traveling in the outer lane of travel at less than the speed limit.  <u>See</u> Motion at 5; Response at 2 (stating that Payne was traveling "well below the speed limit, at approximately 34 to 38 mph").

## PROCEDURAL BACKGROUND

Plaintiff E. Leon brought suit as decedent M. Leon's widow and personal representative in state court on May 16, 2012.  <u>See</u> <u>Puckett</u> Action, Complaint to Recover Damages for Wrongful Death, Punitive Damages and Other Damages, filed in state court May 16, 2012, filed in federal court July 25, 2012 (Doc. 1-1 in the <u>Puckett</u> Action)("<u>Puckett</u> Complaint").  E. Leon's <u>Puckett</u> Complaint names Payne, Puckett, Martinez-Leandro, FedEx Ground, and Eusebia Transportation, Inc. as defendants.  <u>See</u> <u>Puckett</u> Complaint ¶¶ 4-13, at 1-3.  The <u>Puckett</u> Complaint alleges that "Defendant Larry Payne operated his vehicle in a careless, negligent and/or reckless manner and without regard to the safety of others traveling on the highway of the State of New Mexico, including but not limited to Martin Leon."  <u>Puckett</u> Complaint ¶ 18, at 3-4.  It adds that "Defendant Federico Martinez-Leandro is further comparatively negligent for the operation of his vehicle."  <u>Puckett</u> Complaint ¶ 19, at 12.

FedEx Ground removed the case to federal court on July 25, 2012.  See FedEx Ground Package System, Inc.'s Notice of Removal at 1, filed July 25, 2012 (Doc. 1 in the Puckett Action).  On January 25, 2013, E. Leon voluntarily dismissed FedEx Ground, Martinez-Leandro, and Eusebia Transportation, Inc. from the case without prejudice.  See Puckett Action, Plaintiff's Notice of Partial Dismissal of Complaint Without Prejudice, filed January 25, 2013 (Doc. 24 in Puckett Action).  E. Leon states that she did so "under the mistaken belief that they were protected by workers' comp."  Transcript of Hearing at 123:21-23 (Barber), taken December 22, 2015 (Doc. 128)("Tr.").  E. Leon later learned during discovery in the Puckett Action that Martinez-Leandro "broke all the rules of trucking," thereby removing worker's compensation as a bar to suit.  Tr. at 123:23-124:6 (Barber).

E. Leon filed a second action in federal court against FedEx Ground on October 17, 2013.  See Complaint ¶¶ 2, 4, at 1.  E. Leon alleges two causes of action in her Complaint: (i) a negligence and negligence per se claim based on FedEx Ground's failure to maintain and operate the vehicle in a safe manner, see Complaint ¶¶ 17-25, at 4-5; and (ii) a negligence and negligence per se claim based on FedEx Ground's failure to maintain and operate the vehicle in compliance with applicable safety rules and administrative standards, see Complaint ¶¶ 26-39, at 5-7.  E. Leon seeks actual and compensatory, exemplary, and punitive damages.  See Complaint ¶¶ 41-43, at 7-9.

### 1.     The Motion.

E. Leon filed her only motion in limine on November 16, 2015.  See Motion at 1.  The Motion requests that the Court: (i) exclude Payne's out-of-court statements, particularly those to investigators; (ii) exclude evidence of Payne and Puckett's settlement agreement; and (iii)

exclude evidence of E. Leon's allegations in the <u>Puckett</u> Complaint.[3]  <u>See</u> Motion at 3-7.  On the first point, E. Leon argues that introduction of Payne's statements "is of no probative value and can only confuse the jury or prejudice the jury against Larry Payne."  Motion at 5.  Because Payne is not a party, E. Leon explains, his veracity is not at issue and his statements are irrelevant.  <u>See</u> Motion at 5-6.  Second, E. Leon argues that the Court should exclude evidence of the settlement agreement, because: (i) it has no probative value; (ii) it could prejudice the jury; (iii) it could cause the jury to increase nonparties' share of any comparative fault; (iv) the settlement agreement contains a provision stating that it is not evidence; and (v) courts generally exclude evidence of settlements.  <u>See</u> Motion at 6.  E. Leon contends that the Court can account for Payne and Puckett's absence with an appropriate jury instruction.  <u>See</u> Motion at 6.  Third, E. Leon argues that the <u>Puckett</u> Complaint's allegations against Payne and Puckett are irrelevant. <u>See</u> Motion at 7.  She notes that the <u>Puckett</u> Complaint "was drafted and signed by one of plaintiff's attorneys, Mark Caruso" and represents "Mr. Caruso's statements of facts that he believes to be true -- essentially, his opinion. They are not statements of the plaintiff."  Motion at 7.

### 2.    <u>The Response</u>.

FedEx Ground responded on December 3, 2015.  <u>See</u> Response at 1.  FedEx Ground begins by attempting to show that Payne's out-of-court statements are not hearsay or at least fall within a hearsay exception.  <u>See</u> Response at 1-8.  It contends that it will introduce Payne's statements to show their inconsistency rather than to prove their truth.  <u>See</u> Motion at 1-2.  It further explains that the statements are relevant, because "they specifically relate to [FedEx Ground's] affirmative defense of comparative fault."  Motion at 1-2.  It adds that Payne's

---

[3]As noted above, the Court will not discuss the Motion's request to exclude seatbelt/restraint evidence because the parties have agreed to it.

statements should be admissible because his severe illness has made him unable to testify.  See Motion at 3.  It then argues that Payne's statements fall within several hearsay exceptions, as: (i) a present sense impression, under rule 803(1) of the Federal Rules of Evidence; (ii) a recorded recollection, under rule 803(5); (iii) an excited utterance, under rule 803(2); and (iv) a statement that falls within the residual exception, under rule 807.  See Response at 3-8.

FedEx Ground also argues that the settlement agreement is relevant, because the jury will hear testimony about both drivers and the agreement will "explain Puckett's absence to the jury." Response at 8.  It asserts that "evidence of the *fact* of settlement between Plaintiff and Puckett is admissible under Federal Rule of Evidence 408 because [FedEx Ground] does not seek to introduce the evidence to show damages or the validity of Plaintiff's claim."  Response at 8 (emphasis in original).  It states that the fact of settlement "will assist the jurors in understanding Puckett's absence from trial."  Response at 10 (citing West v. N.M. Taxation & Revenue Dep't, 757 F. Supp. 2d 1065, 1078 (D.N.M. 2010)(Browning, J.) and Fahrbach v. Diamond Shamrock, Inc., 1996-NMSC-063, ¶¶ 2–3, 928 P.2d 269).

Finally, FedEx Ground argues that the Puckett Complaint's allegations against Payne and Puckett are relevant and admissible.  See Response at 10-15.  It counters E. Leon's argument about her attorney's opinions, explaining that rule 11 provides sanctions for "merely putting 'opinions' into a court filed pleading."  Response at 11.  It also states that "[s]tatements contained in a pleading filed in one action are generally admissible in a subsequent action involving one or both of the same parties."  Response at 11 (citing LCI Int'l Telecom Corp. v. American Teletronics Long Distance, 978 F. Supp. 799, 802 (N.D. Ill. 1997)(Bucklo, J.)).  It notes that the United States Court of Appeals for the Tenth Circuit has admitted parties' prior pleadings for impeachment or as substantive evidence.  See Response at 12 (citing Dugan v.

EMS Helicopters, Inc., 915 F.2d 1428, 1431-32 (10th Cir. 1990)).  As a fallback, it contends that the Court should take judicial notice of its own records in prior litigation.  See Response at 13-15.

    **3.**       **The Reply.**

E. Leon replied to FedEx Ground on December 21, 2015.  See Plaintiff's Reply to Defendant FedEx's Response in Opposition to Plaintiff's Motion in Limine, filed December 21, 2015 (Doc. 125)("Reply").  E. Leon first notes: "The investigating officers and both parties' accident reconstructionists agree that before the crash, Payne had pulled out from the side of the road onto the right hand lane of I-40, and that he was going somewhere between 35 and 45 mph at the time of the crash."  Reply at 1-2.  Given this agreement, she argues, Payne's prior inconsistent statements are irrelevant to the dispute before the Court.  See Reply at 2.  E. Leon contends that, even if the statements were relevant, their prejudice outweighs any probative value.  See Reply at 2.

E. Leon then attacks FedEx Ground's argument that the settlement with Payne and Puckett should be admissible.  See Reply at 2-3.  She contends that the settlement could be introduced only to improperly "convince the jury that Payne and Puckett were at fault."  Reply at 3.  She suggests that the Court give a jury instruction to the effect that "you should not worry about why Payne or Puckett are not parties to this case."  Reply at 3.

E. Leon makes similar arguments regarding the Puckett Complaint's allegations.  See Reply at 4-5.  She first defends her argument that the allegations were merely her attorneys' opinion, explaining that, "[a]lthough Rule 11 requires a good faith basis for the allegations, it does not alter that fact that allegations are simply that -- expressions of belief or opinion by the signatory attorney."  Reply at 3.  She concedes that the allegations are admissions of a party

opponent, but argues that they are inadmissible under rules 701 and 702.  See Reply at 4.  E. Leon also cites to Greenwood v. Mepamsa, No. 1 CA-CV 11-0782, 2013 WL 485727 (Ariz. Ct. App. Feb. 7, 2013)(Swann, J.)(unpublished), to support her arguments.  In Greenwood v. Mepamsa, a family brought a products liability action against the manufacturer of a heater that injured them in a flash fire.  See 2013 WL 485727, at *1.  The family entered into a pretrial settlement with one of the defendants.  See 2013 WL 485727, at *5.  The trial court denied the family's motion to exclude evidence of their prior claims against and settlement with that defendant.  See 2013 WL 485727, at *5.  It explained that it denied the motion to "expose the Greenwoods' 'dishonesty' in seeking to recover from the defendants at trial after they had settled with AmeriGas."  2013 WL 485727, at *6.  The Court of Appeals of Arizona reversed, rejecting this logic completely:

> We find no "dishonesty" inherent in the relatively common situation when a plaintiff in a multi-defendant case settles with some defendants and proceeds to trial against other defendants. By statute, Arizona law is structured to prevent duplicate or overlapping recoveries in cases involving multiple alleged tortfeasors. When, as here, a defendant settles and is designated a non-party at fault, the jury is instructed to reduce the plaintiff's recovery by the percentage of fault attributed to the settling defendants. A.R.S. § 12–2506. The integrity of the Arizona comparative fault system is compromised when the court allows evidence that invites the jury to speculate that it is being duped into facilitating multiplicitous recoveries. The role of the trial court when a settling defendant becomes an "empty chair" is to take steps to *prevent* the prejudice that might flow from jury speculation. The court's ruling here invited the opposite result: to ensure that the jury would view the Greenwoods less favorably by inferring that AmeriGas had paid them to be absent from the trial. Accordingly, on this record, the Greenwoods' motion in limine should have been granted.

2013 WL 485727, at *6.

### 4.    The Hearing.

The Court held a hearing on December 22, 2015.  See Tr. at 1.  The Court opened the hearing by commenting that "it seems to me that unless Larry Payne is going to testify, in one form or another, either a deposition or live, he can't start bringing in statements because there is

nothing to impeach." Tr. at 114:9-12 (Court). E. Leon argued that rule 403 counsels for exclusion, because Payne's statements have minimal probative value, and that the case "ought to be decided on its merits, not on the fact that somebody else made some statements that may or may not have been accurate." Tr. at 115:10-13 (Barber). FedEx Ground replied that it would use Payne's statements "to show comparative fault on behalf of Puckett" rather than to "assert the truth of the matter." Tr. at 116:1-4 (Saiz). It predicted that E. Leon would "argue that Puckett had no liability for this accident" and that Payne's statements would aid in their defense. Tr. at 117:13-18 (Saiz).

FedEx Ground then shored up its argument that Payne's statements fall within several exceptions to the general ban on hearsay evidence. See Tr. at 117:25-119:17 (Saiz). It stated that Payne's statement to police qualifies as a present sense impression, because it occurred "immediately" after the accident. Tr. at 118:9-11 (Saiz). It contended that the statement is a recorded recollection, because "[h]e handwrote his statement to the police at the time of the accident, or immediately afterwards." Tr. at 118:9-11 (Saiz). It argued that the statement was an excited utterance, because "[i]t was made while he was under the stress of the event, right afterwards, after somebody died." Tr. at 118:22-25 (Saiz). It stated that the statement also falls within rule 807's residual exception, because "[i]t is more probative of the point for which it is offered, and serves the interests of justice." Tr. at 119:6-9 (Saiz).

E. Leon responded that the statements are irrelevant, "because the experts and the cops all understood the speed within a pretty narrow range." Tr. at 120:3-5 (Barber). FedEx Ground emphasized that any police officer witnesses should be able to discuss "how the stories were inconsistent." Tr. at 120:8-15 (Saiz).

The Court repeated its belief that FedEx Ground intends to offer the statements for the

truth of the matter asserted.  See Tr. at 120:16-23 (Court).  The Court suggested that: (i) the statements do not fall within the present-sense-impression exception, because "he had [] time to think up something to try to excuse himself"; (ii) the recorded recollection exception is inapplicable, because Payne could not take the stand; (iii) the excited utterance exception was unlikely to apply; and (iv) the statements did not fall within the residual exception.  Tr. at 120:24-121:24 (Court).

The Court then noted that it was likely to admit the Puckett Complaint's allegations against Payne and Puckett.  See Tr. at 122:3-14 (Court).  E. Leon argued that "all of the cases that have looked at this -- and I haven't seen yours -- but all of them miss the point."  Tr. at 122:17-19 (Barber).   E. Leon contended that the inconsistent statements were "extremely prejudicial," because they show that she took an inconsistent position in the Puckett Complaint without explaining why.  Tr. at 123:16-23 (Barber).  The attorney who drafted the Puckett Complaint, she noted, would be unable to explain his decision on the stand.  See Tr. at 125:3-8 (Barber).  She stated that the allegations would "simply [] prejudice the jury, call Payne a liar." Tr. at 124:19-22 (Barber).

FedEx Ground responded that, "[i]f Mr. Caruso takes the stand and talks about his allegations, I believe that opens the door to settlement as well."  Tr. at 125:20-22 (Saiz).  It repeated that "allegations from a prior complaint can be used as evidentiary admissions against interests."  Tr. at 126:1-6 (Saiz).  It also raised a possible negative consequence:

> If a court were to permit plaintiffs to file lawsuits like this against multiple defendants; dismiss one; settle with another; and then refile against that same defendant, then it would encourage plaintiffs to file, essentially, one lawsuit, and dismiss one.  So that it never could be heard of again in a subsequent lawsuit.  It invites a jury to attribute 100 percent fault to one party at a time.

Tr. at 127:1-10 (Saiz).  E. Leon responded that the issue "isn't a question of whether or not they're hearsay. It's a question of whether or not they're probative of anything that exceeds the prejudice, particularly if the opportunity to explain them is denied."  Tr. at 128:1-5 (Barber).

The Court concluded the relevant portion of the hearing by stating that "[i]t does seem to me it's highly relevant, if we're going to have a comparative negligence case, and the plaintiffs took the position earlier in the case that Payne and Puckett were negligent, that seems to be relevant."  Tr. at 128:12-16 (Court).  The Court also noted that the Puckett Complaint's allegations could help to "explain to the jury where Payne and Puckett are."  Tr. at 128:19-23 (Court).  It stated that it would probably grant the Motion regarding the settlement agreement and deny it regarding the Puckett Complaint's allegations.  See Tr. at 129:1-5 (Court).

## LAW REGARDING THE RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."  Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).  "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401)("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")).  "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'"  United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012) (Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).  Irrelevant evidence, or

that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

**<u>LAW REGARDING RULE 403</u>**

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See <u>United States v. Record</u>, 873 F.2d 1363, 1375 (10th Cir. 1989)(Baldock, J.).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."  <u>United States v. Pettigrew</u>, 468 F.3d 626, 638 (10th Cir. 2006)(Tacha, J.)(quoting <u>United States v. Sides</u>, 944 F.2d 1554, 1563 (10th Cir. 1991)(Brorby, J.)).  The Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."  <u>United States v. Smalls</u>, 605 F.3d 765, 787 (10th Cir. 2010)(Baldock, J.).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, <u>see</u> <u>United States v. Lugo</u>, 170 F.3d 996, 1005 (10th Cir. 1999)(Kelly, J.), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, <u>see</u> <u>United States v. Bice-Bey</u>, 701 F.2d 1086, 1089 (4th Cir. 1983)(Ervin, J.); <u>United States v. Masters</u>, 622 F.2d 83, 87-88 (4th Cir. 1980)(Russell, J.).  As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative

> value and prejudice, potentially to exclude as unduly prejudicial some evidence
> that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(Thomas, J.)(quoting 1

Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed.

1999)). See United States v. Abel, 469 U.S. 45, 54 (1984)(Rehnquist, J.)("Assessing the

probative value of [proffered evidence], and weighing any factors counseling against

admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . .

.").

Evidence may be unfairly prejudicial if it would likely provoke the jury's emotional

response or would otherwise tend to adversely affect the jury's attitude toward a particular

matter. See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999)(Sanborn, J.).

Evidence is not unfairly prejudicial merely because it damages a party's case. See United States

v. Caraway, 534 F.3d at 1301; United States v. Curtis, 344 F.3d 1057, 1067 (10th

Cir. 2003)(Ebel, J.); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991)(Holloway,

J.). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest

decision on an improper basis, commonly, though not necessarily, an emotional one.'" United

States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(Hartz, J.)(quoting Fed. R. Evid. 403

advisory committee notes).

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." United States v. Christy, No. CR 10-1534

JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802).

Under rule 801(c), "hearsay is a statement, other than one made by the declarant while testifying

at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R.

Evid. 801(c). Hearsay bars a party from presenting its own statements, such as "a defendant . . .

attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."  United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999)(Carnes, J.).  A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness.  See United States v. Caraway, 534 F.3d at 1299 ("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.  If admitted for impeachment purposes, however, it is not hearsay.").  Rule 805 recognizes that "[h]earsay within hearsay" -- commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.  The Federal Rules of Evidence exclude a party opponent's statement from the definition of hearsay where:

> The statement is offered against an opposing party and:
>
> > **(A)** was made by the party in an individual or representative capacity;
> >
> > **(B)** is one the party manifested that it adopted or believed to be true;
> >
> > **(C)** was made by a person whom the party authorized to make a statement on the subject;
> >
> > **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
> >
> > **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2).  The Tenth Circuit has stated:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 667 (10th Cir. 2006)(Seymour, J.)(alterations omitted)(internal quotations and alterations omitted).[4]

### 1.  Law Regarding Rule 803(1).

Rule 803(1) provides an exception to the rule against hearsay for "[a] statement describing an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1).  "By its own terms, application of Rule 803(1) has three distinct requirements: i) the statement must describe or explain the event perceived; ii) the declarant must have in fact perceived the event described; and iii) the description must be 'substantially contemporaneous' with the event in question." United States v. Mejia-Valez, 855 F. Supp. 607, 613 (E.D.N.Y. 1994)(Korman, J.).  "The present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures." Brown v. Keane, 355 F.3d 82, 89 (2d Cir. 2004).  "'The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication.'"

---

[4]The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d) and uses instead the term "statements."  Fed. R. Evid. 801(d).  This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made."  Fed. R. Evid. 801, advisory committee's note on 2011 Amendments.

Although the advisory committee made the commentary quoted in the text regarding the trustworthiness of "admissions by a party-opponent" before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules. Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 should still be useful for cases after the restyling.  Fed. R. Evid. 801.

United States v. Jones, 221 F.3d 1353, 2000 WL 1089533, at *4 (10th Cir. 2000)(unpublished table decision)(quoting United States v. Parker, 936 F.2d 950, 954 (7th Cir. 1991)).[5]  "The admissibility of spontaneous utterances -- one ground relied on by the state trial court -- was recognized by the Supreme Court over a century ago in Insurance Co. v. Mosley, 75 U.S. (8 Wall.) 397, 406-07 . . . (1869)."  Martinez v. Sullivan, 881 F.2d 921, 928 (10th Cir. 1989).

    2.    **Law Regarding Rule 803(2).**

Rule 803(2), commonly referred to as the excited utterance exception, provides an exception to the exclusion of hearsay statements for "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  Fed. R. Evid. 803(2).  The United States Court of Appeals for the District of Columbia has noted that "[t]he rationale underlying the 'excited utterance' exception is that 'excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self-interest and therefore rendered unreliable.'"  United States v. Alexander, 331 F.3d 116, 122 (D.D.C. 2003)(quoting United States v. Brown, 254 F.3d 454, 458 (3d Cir. 2001)).  "Thus, to qualify as an excited utterance, the declarant's state of mind at the time that the statement was made must preclude conscious reflection on the subject of the

---

[5]United States v. Jones is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court concludes that United States v. Jones has persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

statement." United States v. Alexander, 331 F.3d at 122 (quoting United States v. Joy, 192 F.3d 761, 766 (7th Cir. 1999))(internal quotations and changes omitted). The Tenth Circuit, in United States v. Smith, 606 F.3d 1270 (10th Cir. 2010), set forth a district court's required analysis for whether a statement is admissible under the excited utterance exception:

> The so-called excited-utterance exception has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event. There is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance. Admissibility hinges on a statement's contemporaneousness with the excitement a startling event causes, not the event itself. There is no hard time limit that must be met under Rule 803; what is relevant is whether the declarant is still under the excitement of the startling event.

606 F.3d at 1279 (citations omitted)(internal quotation marks omitted). The Tenth Circuit has noted:

> Courts consider a range of factors in determining whether a declarant made a statement while under the stress of a particular event. Among the more relevant factors are: the amount of time between the event and the statement; the nature of the event; the subject matter of the statement; the age and condition of the declarant; the presence or absence of self-interest; and whether the statement was volunteered or in response to questioning.

United States v. Pursley, 577 F.3d 1204, 1220 (10th Cir. 2009). "Permissible subject matter of the statement is [not] limited . . . to description or explanation of the event or condition . . . . [T]he statement need only relate to the startling event or condition, thus affording a broader scope of subject matter coverage." United States v. Frost, 684 F.3d 963, 973 (10th Cir. 2012)(first brackets in original)(quoting Fed. R. Evid. 803 Advisory Comm. Notes). "If the trial court has access to a recording of the declarant's statement, it may also consider the declarant's tone and tenor of voice in determining whether the declarant made that statement while under the stress of excitement." United States v. Alexander, 331 F.3d 116, 123 (D.C. Cir. 2003)(internal quotations omitted).

The United States Court of Appeals for the Second Circuit has provided an analysis of the similarities and subtle differences between the present sense impression and excited utterance exceptions to the rule against hearsay:

> As defined by the Federal Rules of Evidence, a present sense impression is a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Rule 803(1), Fed. R. Evid. Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory. See United States v. Brewer, 36 F.3d 266, 272 (2d Cir. 1994).
>
> The hearsay exception for excited utterances is premised on a similar, though distinct, assumption that the reliability of a statement increases as opportunity for reflection by the declarant decreases. An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2), Fed. R. Evid. As we have explained, "[t]he rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." [United States v.] Tocco, 135 F.3d [] [116,] 127[ (2d Cir. 1998)]. Unlike present sense impressions, "[a]n excited utterance need not be contemporaneous with the startling event to be admissible." Id. Rather "[t]he length of time between the event and the utterance is only one factor to be taken into account in determining whether the declarant was, within the meaning of rule 803(2), 'under the stress of excitement caused by the event or condition.'" United States v. Scarpa, 913 F.2d 993, 1017 (2d Cir. 1990).
>
> . . . .
>
> Thus while the hearsay exception for present sense impressions focuses on contemporaneity as the guarantor of reliability, and requires that the hearsay statement "describe or explain" the contemporaneous event or condition, Rule 803(1), Fed. R. Evid., the excited utterance exception is based on the psychological impact of the event itself, and permits admission of a broader range of hearsay statements -- i.e. those that "relate to" the event. Rule 803(2), Fed. R. Evid.

United States v. Jones, 299 F.3d 103, 112 & n.3 (2d Cir. 2002).

In Maples v. Vollmer, No. CIV 12-0294 JB/RHS, 2013 WL 1681234 (D.N.M. March 31, 2013)(Browning, J.), the plaintiff's "then-boyfriend's daughter" called 911; in response, the

defendant officers arrived at the plaintiff's residence.  2013 WL 1681234, at *1.  The plaintiff

was in his front yard when the officers arrived; when he tried to walk away from them, the

officers chased the plaintiff, who then fled from the officers.  See 2013 WL 1681234, at *1.  The

officers tackled the plaintiff when they caught up to him, and the plaintiff alleged that the

officers used excessive and unnecessary force.  See 2013 WL 1681234, at *1.  The plaintiff filed

a motion in limine, asking the Court to prohibit the defendants or their witnesses from disclosing

the contents of the 911 call.  See 2013 WL 1681234, at *2.  The Court concluded that the call

was admissible under rule 803(2), noting that it satisfied the three requirements of the excited-

utterance exception to the rule against hearsay:

> The second and third requirements of the excited utterance analysis cannot
> reasonably be challenged under the circumstances surrounding S. Lane's 911 call:
> (i) S. Lane's statements were contemporaneous with the event, and there is thus
> no lapse of time here between the startling event to which S. Lane's statements
> relate and the statements; and (ii) there is a nexus between the statements' content
> and the event, as S. Lane's statements detail the event in real time, explain why
> the event prompted her to call 911, and describe Maples to the 911 operator.

2013 WL 1681234, at *16.  The remaining issue was whether the event to which they relate --

the plaintiff's "attempt to allegedly wrongfully gain access" to his residence and his "coming

after" the caller's father -- was "a startling event or condition."  2013 WL 1681234, at *16.

> Professor Stephen A. Saltzburg explains that courts have been quite liberal
> in finding that an event is startling for purposes of rule 803(1):
>
> > In most cases it is not seriously disputed that the event to which the
> > excited utterance relates is in fact a startling event. Occurrences
> > such as accidents, fights, and physical crimes are generally deemed
> > startling events. However, admissibility under the Rule is not
> > limited to events describing such clearly upsetting occurrences.
> > The Courts have been quite expansive in finding that an event
> > triggered a startled statement is in fact a startling event.
>
> 4 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, Fed. Rules of
> Evid. Manual § 803.02[3][b], at 803-18 (9th ed. 2006)(footnotes omitted).
> Professor Saltzburg cites to David v. Pueblo Supermarket, 740 F.2d 230 (3d Cir.

- 19 -

1984), as an "e.g." example to support his proposition that courts have been quite expansive in finding a startling event.   In <u>David v. Pueblo Supermarket</u>, the United States Court of Appeals for the Third Circuit held that a woman observing another woman, to whom she was not related, "who was eight months pregnant fall directly on her stomach . . . would reasonably qualify as a 'startling occasion.'" 740 F.2d at 235.  Another example to which Professor Saltzburg cites is <u>United States v. Beverly</u>, 369 F.3d 516 (6th Cir. 2006), in which the United States Court of Appeals for the Sixth Circuit held that "viewing the photograph of the individual that [the declarant] recognized as her husband committing a bank robbery was a startling event."  369 F.3d at 540.

2013 WL 1681234, at *16.  The Court noted that the caller believed that the plaintiff was not supposed to be at his residence, "he had left the hospital when he should not have, that she was 'pretty sure' he was in the hospital because he was suicidal, and that she believed [the plaintiff] was at the residence because he was coming after her father," concluding that "[t]hese events are at least as startling as observing an unrelated person, even a pregnant person, slip in a grocery store."  2013 WL 1681234, at *16.

### 3.        Law Regarding Rule 803(5).

Rule 803(5) exempts recorded recollections from rule 802's general exclusion of hearsay and allows a document that meets the foundational requirements to be read into the record.  <u>See</u> Fed. R. Evid. 803(5).  Rule 803(5) defines a recorded recollection as: "A record that: **(A)** is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; **(B)** was made or adopted by the witness when the matter was fresh in the witness's memory; and **(C)** accurately reflects the witness's knowledge." Fed. R. Evid. 803(5).  The Tenth Circuit has held that it is a foundational requirement for a record's admission under rule 803(5) that the "witness lack[] sufficient memory to testify fully" at trial, and it is reversible error if the lack of memory is not shown.  <u>United States v. Dazey</u>, 403 F.3d 1147, 1166-67 (10th Cir. 2005)(citing <u>Collins v. Kibort</u>, 143 F.3d 331, 338 (7th Cir. 1998), and <u>United States v. Felix-Jerez</u>, 667 F.2d 1297, 1301-02 (9th Cir. 1982)).

## LAW REGARDING JUDICIAL NOTICE

Rule 201 of the Federal Rules of Evidence allows a court to, at any stage of the proceeding, take notice of "adjudicative" facts that fall into one of two categories: (i) facts that are "generally known within the territorial jurisdiction of the trial court;" or (ii) facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (f). "Adjudicative facts are simply the facts of the particular case." United States v. Wolny, 133 F.3d 758, 764 (10th Cir. 1998)(quoting Advisory Committee Notes to rule 201). A court has discretion to take judicial notice of such facts, regardless whether requested. See Fed. R. Evid. 201(c). On the other hand, if a party requests that the court take judicial notice of certain facts, and supplies the necessary information to the court, judicial notice is mandatory. See Fed. R. Evid. 201(d). Also, if the parties timely request an opportunity to be heard, the Court must grant such an opportunity "as to the propriety of taking judicial notice and the tenor of the matter noticed." Fed. R. Evid. 201(e).

## ANALYSIS

The Court will grant the Motion in part and deny it in part. The Court will admit Payne's out-of-court statements for the limited purpose of showing their inconsistency, but not for their truth. The Court will exclude E. Leon's settlement with Payne and Puckett, because it is prejudicial, and there are other ways to avoid jury confusion, at least in part, over the missing parties. The Court will admit the Puckett Complaint's allegations to show that E. Leon has asserted that Payne and Puckett were also negligent. Finally, although the Court takes judicial notice of the Puckett Complaint, it cannot properly take judicial notice of the facts alleged within the document for the truth of the matters asserted therein; those statements are, however, admissible for the truth of the matters asserted therein, because they are not hearsay.

I.    PAYNE'S OUT-OF-COURT STATEMENTS ARE ADMISSIBLE, FOR A
      LIMITED PURPOSE, BECAUSE THEY ARE RELEVANT AND ARE NOT
      HEARSAY FOR THAT LIMITED PURPOSE.

The Court will admit Payne's out-of-court statements on the accident, for a limited

purpose, because they are relevant and because FedEx Ground is not offering them for the truth

of the matter asserted.  First, the statements are relevant for a limited purpose.  E. Leon contends

that these statements have no probative value, because the parties agree on how the accident

physically occurred.  See Reply at 1-2.  She states that this agreement, combined with Payne's

absence from the case, make his veracity and past inconsistent statements irrelevant.  See Motion

at 5-6.  The Court disagrees with E. Leon's conclusion.  FedEx Ground will present a defense of

comparative fault.  See Response at 2-3.  "Relevant evidence is evidence that has a tendency to

make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence."  United States v. Gutierrez-

Castro, 2011 WL 3503321, at *3.  Evidence indicating that Payne made inconsistent statements

to police might indicate that he knew he had acted carelessly or was at least partially at fault for

the wreck.  These statements suggest a guilty mind or conscience.  This evidence tends to make

Payne and Puckett's negligence more probable, and thus decrease FedEx Ground's share of the

comparative fault.  The Court will, upon request, giving a limiting instruction telling the jury that

it may consider Payne's statements for this limited purpose.  The parties have not agreed to

stipulate that Payne and Puckett were negligent, or that they should bear a certain portion of the

comparative fault.  That Payne is not now a party is irrelevant -- the jury must weigh his share of

responsibility.  See Motion at 5-6.

Second, rule 403 does not require the Court to exclude these statements.  Only "unfair

prejudice, substantially outweighing probative value," allows the Court "to exclude relevant

evidence.   United States v. Pettigrew, 468 F.3d at 638.   The Tenth Circuit has stated that exclusion is "an extraordinary remedy and should be used sparingly."   United States v. Smalls, 605 F.3d at 787.  This evidence may prejudice the jury against Payne.  See Motion at 5-6.  Given Payne's statements' probative value and his likely guilty mind, however, the Court cannot say that such prejudice would be unfair.

Third, Payne's statements are not hearsay, because FedEx Ground will introduce them to indicate that Payne made inconsistent statements rather than to show that each statement was true.   See Fed. R. Evid. 801(c)(2).   FedEx Ground seeks to admit: (i) excerpts from the deposition of police officer Lyle Maurice Sarracino; (ii) excerpts from the deposition of police officer Sergeant Steven Shutiva; and (iii) Payne's handwritten and signed statement to the police shortly after the accident during the course of the investigation.   See Response at 2-3.  FedEx Ground wants to admit these statements, not to establish that Payne was driving at a certain speed or to show the police officers' state of mind, but rather to establish that Payne made the statements.   See Barber Response at 1.  FedEx Ground does not offer the written statement, for example, to show that Payne was driving in the right lane at sixty five miles per hours when the accident occurred.   "[T]estimony is not hearsay when it is offered to prove only that a statement was made and not the truth of the statement."   Skyline Potato Co. v. Hi-Land Potato Co., No. CIV 10-0698 JB/RHS, 2013 WL 311846, at *19 (D.N.M. Jan. 18, 2013)(Browning, J.).   The written statement is thus not hearsay.  The police officers' depositions present a similar issue. The Court cannot determine, based on the briefing, whether the police officers will be present. Assuming either that: (i) the police officers can testify directly that Payne made statements to them; or (ii) their depositions are otherwise admissible under rule 32 of the Federal Rules of Civil Procedure, their statements are admissible.   FedEx Ground is not offering the police

officers' accounts of what transpired to show that Payne's truck was parked on the side of the road at the time of the accident.  That the statements came in the form of two police officers' depositions or Payne's handwritten, signed statement makes no difference to whether the statements are hearsay.

If the statements were hearsay, however, they would not be exempt for any of the reasons that FedEx Ground describes in its Response.  First, the statements do not fall within the "present sense impression" exception under rule 803(1).  Fed. R. Evid. 803(1).  This exception has three requirements: "i) the statement must describe or explain the event perceived; ii) the declarant must have in fact perceived the event described; and iii) the description must be 'substantially contemporaneous' with the event in question."  United States v. Mejia-Valez, 855 F. Supp. at 613.  Payne's statements fail the third prong of this test.  He did not make his statements while he was perceiving the crash, but rather after police arrived and "shortly thereafter during the investigation."  Response at 4.  The Court does not know how much time passed between the crash and the statements, as the pleadings and briefing do not contain any estimates.  See United States v. Cruz, 765 F.2d 1020, 1024 (11th Cir. 1985).  In United States v. Manfre, 368 F.3d 832 (8th Cir. 2004), the United States Court of Appeals for the Eighth Circuit held that a statement was not "substantially contemporaneous," because, "[a]t the very least, there was an intervening walk or drive between the time of the" event in question and the subsequent statement.  368 F.3d at 840.  Moreover, the exception's underlying rationale is premised on the idea that the minimal time between event and statement prevents "defective recollection or conscious fabrication."  United States v. Jones, 221 F.3d 1353, 2000 WL 1089533, at *4.  See Rock v. Huffco Gas & Oil Co., 922 F.2d 272, 280 (5th Cir. 1991)("Rock also had time to 'consciously manipulate the truth' prior to providing Gardner with information included in the second report; indeed, there is

evidence to suggest that Rock never had such an accident but that he staged such an event for personal gain.").  The parties agree that Payne's statements are inconsistent with the physical evidence.  See Motion at 5; Response at 2.  The Court will not apply a hearsay exception based on a reduced chance of prevarication to statements that both parties believe to be false or inaccurate.

Second, the statements do not qualify as recorded recollections under rule 803(5).  The rule defines a "recorded recollection" as a record that: "**(A)** is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; **(B)** was made or adopted by the witness when the matter was fresh in the witness's memory; and **(C)** accurately reflects the witness's knowledge."  Fed. R. Evid. 803(5).  FedEx Ground has not provided sufficient foundation for the Court to conclude that the statements meet the first two conditions.  Moreover, both parties agree that the relevant statements do not accurately reflect Payne's knowledge of the wreck.  See Motion at 5; Response at 2.

To overcome these problems, FedEx Ground cites LaVoy v. Snedeker, No. CIV-03-765 MCA/KBM, 2004 WL 3778602, at *24 (D.N.M. March 9, 2004)(Molzen, M.J.), report and recommendation adopted, No. CIV.03-765 MCA/KBM, 2004 WL 3777537 (D.N.M. June 30, 2004)(Armijo, J.).  LaVoy v. Snedeker involved a state murder prosecution against a homeless man who killed another homeless man by hitting him with a rock.  See 2004 WL 3778602, at *1. The police recorded their interview with the sole eyewitness who identified the defendant as the assailant, but she suffered a head injury and lost her memory before the trial.  See 2004 WL 3778602, at *24.  The court allowed prosecutors to read the transcript of her original taped statement "as a recorded recollection or as a record of regularly conducted activity."  2004 WL 3778602, at *24.  LaVoy v. Snedeker is inapplicable here, however, because there is no

indication that any of Payne's statements accurately reflect his knowledge.  See Fed. R. Evid. 803(5)(C).

Third, the statements are not admissible as excited utterances.  See Fed. R. Evid. 803(2). The excited utterance exception has three requirements: "(1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event."  United States v. Smith, 606 F.3d at 1279. The exception is premised on the idea that the speaker's state of mind "preclude[s] conscious reflection on the subject of the statement."  United States v. Alexander, 331 F.3d at 122.  A major collision between two tractor-trailers qualifies as a startling event.  It is less clear that Payne made the statements while he was still under the stress of the event's excitement. Although FedEx Ground argues that Payne made his statements "immediately after being involved in a fatal collision," the Court does not know how much time elapsed between the accident and the police officers' arrival on the scene.  Response at 4.  Payne made his written statement to the police only later in the investigation.  See Response at 2.  Finally, Payne made his statements to police after "conscious reflection."  United States v. Alexander, 331 F.3d at 122.  Both parties agree that his initial and subsequent statements to the police were both inaccurate.  See Motion at 5; Response at 2.  The statements were, in other words, "influenced by self-interest and therefore rendered unreliable."  United States v. Alexander, 331 F.3d at 122.

## II.  E. LEON'S SETTLEMENT WITH PAYNE AND PUCKETT IS INADMISSIBLE, BECAUSE IT WOULD BE PREJUDICIAL AND THERE ARE OTHER TOOLS AVAILABLE TO AVOID JURY CONFUSION.

Second, the Court will exclude evidence of E. Leon's settlement with Payne and Puckett, because its admission would be prejudicial and the Court can use other measures to avoid or minimize jury confusion.  Rule 408 of the Federal Rules of Evidence bars the admission of

settlements "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408.  Settlement agreements may be admissible "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  Fed. R. Evid. 408.

FedEx Ground contends that the Court should admit the settlement agreement's existence, if not its terms, to "assist the jurors in understanding Puckett's absence from trial." Response at 10.  Other courts have admitted settlement evidence for this purpose.  See Belton v. Fibreboard Corp., 724 F.2d 500, 505 (5th Cir. 1984)("[W]e hold that the trial court's admission of the evidence to prevent confusion of the jury was not an abuse of discretion."); Sterling Sav. Bank v. Citadel Dev. Co., 656 F. Supp. 2d 1248, 1256 (D. Or. 2009)(Haggerty, J.)("Courts have also used their discretion to admit evidence in other situations, such as to prevent confusion for the jury.").  The Court has discretion, however, to admit or exclude the settlement.  Rule 408 prohibits the admission of settlement evidence "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408.  Settlement evidence is not, however, automatically admissible because a party offers it for "another purpose" under rule 408.  See Fed. R. Evid. 408 ("The court may admit this evidence for another purpose . . .")(emphasis added); U.S. Aviation Underwriters, Inc. v. Olympia Wings, Inc., 896 F.2d 949, 956 (5th Cir. 1990)("The district court has broad discretion in determining whether to admit evidence of settlement for another purpose and we will not disturb that decision lightly."); Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, Federal Rules of Evidence Manual, Rule 408, at 603–04 (7th Ed. 1998).

FedEx Ground seeks to convince the Court to exercise its discretion here.  It cites Fahrbach v. Diamond Shamrock, Inc., 1996-NMSC-063, 928 P.2d 269, in which the Supreme Court of New Mexico rejected a plaintiff's challenge to a trial court's decision to admit a settlement agreement under New Mexico's identical version of rule 408.[6]  See 1996-NMSC-063, ¶ 12, 928 P.2d at 273.  Fahrbach v. Diamond Shamrock, Inc., however, illustrates the weaknesses in FedEx Ground's argument.  First, the Supreme Court of New Mexico held that a "trial court may inform the jury of the fact of settlement if the court has reason to believe (a) that it should do so in order to assist the jurors in understanding their responsibilities, and (b) that it can do so without prejudice to any party."  1996-NMSC-063, ¶1, 928 P.2d at 271 (emphasis added).  See id. 1996-NMSC-063, ¶ 19, 928 P.2d at 275 (emphasizing the importance of a lack of "prejudice to any party").  Second, the Supreme Court of New Mexico agreed with the plaintiffs that jury instructions "might have been more appropriate."  1996-NMSC-063, ¶ 19, 928 P.2d at 275.  See Eckhardt v. Charter Hosp. of Albuquerque, Inc., 1998-NMCA-017, ¶ 32, 953 P.2d at 730 ("A trial court may inform jurors about the reason for a co-defendant's absence if this absence presents a source of confusion, especially when the parties suggest no alternative means of clearing up the confusion.")(emphasis added).

---

[6]FedEx Ground also cites Greenemeier by Redington v. Spencer, 719 P.2d 710 (Colo. 1986), which held that, "absent special circumstances, the fact of settlement, but not the amount, should be made known to a jury" weighing comparative fault issues.  719 P.2d at 712.  Colorado's newer statutory scheme, which includes apportionment of damages with designated non-parties and contributions among joint tortfeasors, has since superseded that decision.  See Church v. Dana Kepner Co., No. 11-CV-02632-CMA-MEH, 2013 WL 24437, at *5 (D. Colo. Jan. 2, 2013)(Hegarty, M.J.); Winkler v. Rocky Mountain Conference of United Methodist Church, 923 P.2d 152, 162-63 (Colo. App. 1995).  Federal courts applying rule 408 do not admit the fact of settlement "as a general rule."  Compare Greenemeier by Redington v. Spencer, 719 P.2d at 712 with United States v. Alexander, 849 F.2d 1293, 1301 (10th Cir. 1988); F.D.I.C. v. Refco Grp., Ltd., 184 F.R.D. 623, 628 (D. Colo. 1999)(Kane, J.).

The introduction of this evidence would prejudice E. Leon.  Informing jurors that Puckett and Payne settled could cause them to unfairly decrease FedEx Ground's share of the liability. See McHann v. Firestone Tire & Rubber Co., 713 F.2d 161, 166 (5th Cir. 1983).  As the Court explained at the hearing, "the jury is going to assume that this is an admission of guilt."  Tr. at 103:23-24 (Court).  The settlement, of course, might not be nearly so significant.  Excluding evidence of the settlement will allow the jury to simply "fill out that jury form on comparative negligence" without worrying whether the settlement means that Payne and Puckett were more at fault.  Tr. at 104:6-9 (Court).  The jurors should make their decision based on the evidence they see and hear in the case, and they should not use the existence as a crutch to support their decision.  They may rely too heavily on the settlement to explain why Puckett and Payne are not in the case.  They might also speculate as to the settlement's amount and what percentage of fault they should attribute to the absent defendants.  The jurors should rely on their judgment and make an independent decision for that determination.  Moreover, unlike the plaintiff in Fahrbach v. Diamond Shamrock, Inc., E. Leon has requested a jury instruction as an alternative means of explaining Puckett and Payne's absence.  See Reply at 3.  While the Court is unclear exactly what that instruction should say, this method may allow the Court to prevent jury confusion without introducing an unnecessary risk of prejudice.  See Fahrbach v. Diamond Shamrock, Inc., 1996-NMSC-063, ¶ 20, 928 P.2d at 275.

## III.   E. LEON'S ALLEGATIONS IN THE PUCKETT COMPLAINT ARE ADMISSIBLE, BECAUSE THEY ARE RELEVANT TO COMPARATIVE FAULT.

The hearsay rule does not bar the Puckett Complaint's allegations, because they are a party opponent's statements.  The allegations also fall within the Tenth Circuit's separate exception for introducing a plaintiff's prior inconsistent pleadings against other defendants.  E.

Leon's proposed distinction between her attorney's statements in the <u>Puckett</u> Complaint and her own statements lacks legal merit, and does not invalidate the allegations as evidence. Finally, the danger of unfair prejudice from the allegations does not substantially outweigh their probative value. The Court will thus admit the <u>Puckett</u> Complaint's allegations at trial.

### A.   THE <u>PUCKETT</u> COMPLAINT'S ALLEGATIONS ARE NOT HEARSAY.

The Court will admit the <u>Puckett</u> Complaint's allegations, because they are a party opponent's statements.[7] The Tenth Circuit noted in <u>Dugan v. EMS Helicopters, Inc.</u> that "other circuits have allowed introduction of prior inconsistent pleadings as substantive evidence pursuant to Fed. R. Evid. 801(d)(2)." <u>Dugan v. EMS Helicopters, Inc.</u>, 915 F.2d at 1432. It permitted the defendant to introduce the plaintiff's prior inconsistent pleadings, noting that "[t]he ancillary complaint is factually inconsistent with the position plaintiffs pursued in this case and therefore constitutes an admission against interest pursuant to Fed. R. Evid. 801(d)(2)." 915 F.2d at 1434. At least two other Courts of Appeals have made similar determinations. <u>See</u> <u>Williams v. Union Carbide Corp.</u>, 790 F.2d 552, 556 (6th Cir. 1986)("As party admissions, the allegations would also be available as substantive evidence under Federal Rule of Evidence 801(d)(2)."); <u>United States v. Valencia</u>, 826 F.2d 169, 173-74 (2d Cir. 1987)(applying the rule in the criminal context); <u>Vincent v. Louis Marx & Co.</u>, 874 F.2d 36, 40 (1st Cir. 1989), <u>abrogated on other grounds by</u> <u>Knowlton v. Deseret Med., Inc.</u>, 930 F.2d 116, 123 n.4 (1st Cir. 1991)).

The relevant evidence is a statement "the party manifested that it adopted or believed to be true," and it was "made by a person whom the party authorized to make a statement on the

---

[7]E. Leon appears to concede this issue, but her statement is ambiguous. <u>See</u> Barber Motion at 7 ("Although defendant <u>might argue</u> that allegations in a complaint are admissions of a party opponent, that definition only takes them outside the scope of the definition of hearsay. It does not make them otherwise relevant or probative in excess of the prejudice they cause.")(emphasis added). The Court will address whether the statements are hearsay, because E. Leon's statement does not squarely address the issue.

subject." Fed. R. Evid. 801(d)(2).   It contradicts E. Leon's theory that FedEx Ground was largely or entirely responsible for the crash.   Like the prior complaint that the Tenth Circuit admitted in Dugan v. EMS Helicopters, Inc., the Puckett Complaint "is factually inconsistent with the position plaintiffs pursued in this case and therefore constitutes an admission against interest pursuant to Fed. R. Evid. 801(d)(2)."   915 F.2d at 1434.   The rule against hearsay evidence thus does not preclude the Puckett Complaint's admission.

### B. POLICY CONSIDERATIONS OVERLAYING THE HEARSAY EXEMPTION FOR A PARTY OPPONENT'S STATEMENT DO NOT PRECLUDE THE PUCKETT COMPLAINT'S ALLEGATIONS.

There is a judicial overlay on the Federal Rules of Evidence creating an exception to the general rule that a party's prior statements are admissible as admissions.   See 6 Handbook of Fed. Evid. § 801:26 n.11 (7th ed. 2012)(describing the exception).   This exception prohibits litigants from introducing a party's prior inconsistent pleadings in subsequent litigation.   See 6 Handbook of Fed. Evid. § 801:26 (7th ed. 2012).   Although this exception does not appear in the rules themselves, some courts have enforced it because the admission of prior inconsistent pleadings "frustrates the liberal pleading and joinder rules" by punishing plaintiffs for making inconsistent allegations.   6 Handbook of Fed. Evid. § 801:26 (7th ed. 2012).   One treatise described the rationale for this exception: "Since the purpose of alternative pleadings is to enable a party to meet the uncertainties of proof, policy considerations demand that alternative pleadings not be admitted either as an admission of a party-opponent or for the purpose of impeachment."   30B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 7026 (2014 ed.).

> Strictly applied, however, this rule would place a litigant at his peril in exercising the liberal pleading and joinder provisions of the Federal Rules of Procedure . . . . Thus, as a necessary exception to the general rule, there is ample authority that one of two inconsistent pleas cannot be used as evidence in the trial of the other.

Cont'l Ins. Co. of New York v. Sherman, 439 F.2d 1294, 1298 (5th Cir. 1971).

At least one treatise has suggested that the bar on admitting prior pleadings should apply even "to cases involving separate actions against different defendants to recover for the same injury." McCormick on Evidence § 262 (5th ed. 2003). This rule, however, would permit "sharp practice, whereby a plaintiff sues multiple defendants for the identical injury and then proceeds to collect from each one, safe in the knowledge that the jury in one case will never know what the plaintiff has plead in another case." Svege v. Mercedes-Benz Credit Corp., 329 F. Supp. 2d 285, 288 (D. Conn. 2004)(Kravitz, J.).

The Tenth Circuit has resolved this dilemma by creating an exception to the exception. It has held that "[i]nconsistent allegations contained in prior pleadings are admissible as evidence in subsequent litigation." LWT, Inc. v. Childers, 19 F.3d 539, 542 (10th Cir. 1994)(citing Dugan v. EMS Helicopters, Inc., 915 F.2d at 1431-32). The relevant allegations must be: (i) made against different defendants for the same injuries, see Dugan v. EMS Helicopters, Inc., 915 F.2d at 1432; Arrowood Indem. Co. v. Hartford Fire Ins. Co., 774 F. Supp. 2d 636, 646 (D. Del. 2011)(Stark, J.)(excluding prior allegations that "do [not] involve the same alleged injuries as the instant action"); and (ii) inconsistent with the allegations in the subsequent suit, see Dugan v. EMS Helicopters, Inc., 915 F.2d at 1431-32; Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co., No. 07-CV-00290-TDL-CBS, 2010 WL 582182, at *1 (D. Colo. Feb. 17, 2010)(Leonard, J.)(excluding prior allegations that "are not inconsistent with the plaintiffs' allegations in this case").

E. Leon made the relevant allegations in prior litigation against a different defendant that resulted from the same injury -- her husband's death. See Dugan v. EMS Helicopters, Inc., 915 F.2d at 1432. Her allegations in the Puckett Complaint are inconsistent with her allegations in

this case -- the Puckett Complaint raised Puckett and Payne's negligence, while the current Complaint makes no mention of it.  See Complaint ¶ 15, at 3.  The Puckett Complaint's allegations are, in short, the sort of admission that the Tenth Circuit has approved.  See Glaesman v. Shop-Rite Foods, Inc., 438 F.2d 341, 342 (10th Cir. 1971)("The subject evidence was a classic example of an indisputable admission against interest on a material issue and Shop-Rite cannot complain that other and less dramatic proof might be adequate to sustain plaintiff's burden.").

Plaintiffs may object to the allegations' admission on the grounds that they are inaccurate or that circumstances have changed.  In Williams v. Union Carbide Corp., for example, the plaintiff noted that he made the statements in his original complaint, without extensive investigation, "primarily out of a concern over the running of the statute of limitations."  790 F.2d at 555.  The court stated that this argument "may be quite persuasive, but should have been made to the jury."  790 F.2d at 556.  E. Leon has made a similar argument: "Mr. Caruso made some allegations; he dropped Fed Ex out under the mistaken belief that they were protected by workers' comp. But then we did some discovery, and we learned that the Fed Ex driver was in the interior lane, the inside lane, and broke all the rules of trucking . . . ."  Tr. at 123:21-124:1 (Barber).  The Court concludes, as did the court in Williams v. Union Carbide Corp., that E. Leon should make this argument to the jury.  See Dreier v. Upjohn Co., 196 Conn. 242, 247, 492 A.2d 164, 168 (1985)("The fact that statements in a pleading may be made before discovery at a time when the plaintiff is uncertain as to the truth is a circumstance that may be explained to the trier when the superceded [sic] pleading is admitted.")(citations omitted).  E. Leon worries that she will be unable to give this explanation at trial.  See Tr. at 124:8-11 (Barber)("[I]f they try to cross-examine Mrs. Leon about that, she'll say, I didn't write that, because she did not.").  E.

Leon will have opportunities to make this argument, particularly during her direct examination. Her attorneys will have to prepare for the question. E. Leon may choose to not try to contest what she alleged; that Puckett and Payne were, in some way, negligent does not seem like a big deal, and that E. Leon once believed that is not a big deal. The real issue at trial is probably not the existence of negligence, but the amount of negligence. The Court will allow the jury to evaluate E. Leon's explanation, if any.

### C.   THE <u>PUCKETT</u> COMPLAINT'S ALLEGATIONS ARE NOT MERELY OPINIONS.

E. Leon attempts to exclude the <u>Puckett</u> Complaint's allegations on the ground that the allegations are her attorney's "statements of facts that he believes to be true -- essentially, his opinion. They are not statements of the plaintiff." Motion at 7. She further argues that the attorney "certainly could not be called as a witness to give his opinion as to who was at fault in this case." Motion at 7. She cites <u>Greenwood v. Mepamsa</u> to support her argument that the <u>Puckett</u> Complaint's allegations are "inadmissible opinion[s]." Tr. at 123:2-3 (Barber).

The Court finds this argument unconvincing for two primary reasons. First, a complaint's allegations are not mere inadmissible opinions. As one treatise explains:

> More often, however, the pleading is prepared and signed by counsel, and the older view was that statements contained in such pleadings were presumed to be merely "suggestions of counsel" unless other evidence was produced that they were actually sanctioned by the client. The dominant position, however, is that pleadings shown to have been prepared or filed by counsel employed by the party are *prima facie* regarded as authorized by the client and are entitled to be received an admissions.

2 McCormick On Evid. § 257 (7th ed. 2013).[8]   Although a party opposing a pleading's admission may argue that it contained incorrect information, "except in extraordinary circumstances, such a showing goes only to the weight and not to the admissibility of the pleading." 2 McCormick On Evid. § 257 (7th ed. 2013).  If an attorney is "fully authorized to act and speak for the plaintiff," his or her statements are admissible as facts rather than as attorney opinions.  Williams v. Union Carbide Corp., 790 F.2d at 556.  See United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991)(reaffirming the "rule that inconsistent prior pleadings should be made available for the jury's comparison"); Williams v. Union Carbide Corp., 790 F.2d at 555-56 ("It is the general rule that statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney."); United States v. Martin, 773 F.2d 579, 583 (4th Cir. 1985)(holding that statements made by attorney to an IRS auditor at the pretrial stage were admissible); United States v. McKeon, 738 F.2d 26, 27-34 (2d. Cir. 1984)(holding that an opening statement made by an attorney is admissible in a later lawsuit against his client); Laird v. Air Carrier Engine Serv., Inc., 263 F.2d 948, 953 (5th Cir. 1959)("An attorney has wide authority in the conduct of litigation. He is chosen to speak for the client in Court. When he speaks in Court, whether it be on a formal trial or in an informal pretrial, he speaks for and as the client."); Athridge v. Rivas, 421 F. Supp. 2d 140, 151 (D.D.C. 2006)(Facciola, M.J.)("First, although Attorney Starr may have drafted and signed Iglesias' answer, the statements contained therein are considered statements of Iglesias himself."); Ediberto Roman, "Your Honor What I Meant to State Was . . .": A Comparative Analysis of the

---

[8]This principle has applied since the 1920s.  See Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, 32 F.2d 195, 198 (2d Cir. 1929)("A pleading prepared by an attorney is an admission by one presumptively authorized to speak for his principal.").

Judicial and Evidentiary Admission Doctrines As Applied to Counsel Statements in Pleadings, Open Court, and Memoranda of Law,[9] 22 Pepp. L. Rev. 981, 983 (1995)("Courts have not questioned the theory that counsel, while not the actual party, speaks for and as the party, particularly in litigation.").

Second, Greenwood v. Mepamsa does not support E. Leon's point.  The court there justified its decision to allow the defendant to read the plaintiffs' original complaint, "which included allegations against each of the settling parties," to "expose the Greenwoods' 'dishonesty' in seeking to recover from the defendants at trial after they had settled with AmeriGas."  2013 WL 485727, at *5-6.  It did not draw any distinction between the plaintiff's statements and his attorney's statements.  E. Leon has not cited any cases that make this distinction.  While the Court is certainly not implying, like the court in Greenwood v. Mepamsa, that E. Leon is dishonest in any way, the statements in the Puckett Complaint are legal positions that she has held in separate litigation, and she will need to stand by them or explain them.

---

[9]There are two admissions: judicial admissions and evidentiary admissions.

A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention. A statement made by counsel during the course of trial may be considered a judicial admission if it was made intentionally as a waiver, releasing the opponent from proof of fact.

Martinez v. Bally's Louisiana, Inc., 244 F.3d 474, 476-77 (5th Cir. 2001).  The Fifth Circuit has stated that an evidentiary admission, on the other hand, is "merely a statement of assertion or concession made for some independent purpose," and it may be controverted or explained by the party who made it."  Martinez v. Bally's Louisiana, Inc., 244 F.3d at 476-77 (internal quotations omitted).

**D.    THE POSSIBLE UNFAIR PREJUDICE FROM THE <u>PUCKETT</u> COMPLAINT'S ALLEGATIONS DOES NOT SUBSTANTIALLY OUTWEIGH THEIR PROBATIVE VALUE**.

Finally, the Court concludes that the danger of unfair prejudice does not substantially outweigh the evidence's probative value under rule 403.  First, the evidence has significant probative value.  E. Leon has not stipulated that Puckett and Payne were negligent.  The second Complaint does not mention their tractor-trailer's speed.  <u>See</u> Complaint ¶ 15, at 3.  As discussed above, FedEx Ground will raise a comparative fault defense, asking that the jury attribute some portion of the damages to Puckett and Payne.  <u>See</u> Response at 1-2.  That E. Leon previously asserted that Payne and Puckett were also negligent tends to support FedEx Ground's comparative fault defense.  The <u>Puckett</u> Complaint's allegations are thus relevant to determine whether Puckett and Payne are partly or wholly responsible for the collision at issue.

Other courts have admitted prior allegations for similar reasons.  In <u>Dugan v. EMS Helicopters, Inc.</u>, the plaintiffs first sued a helicopter's manufacturer and operator for injuries resulting from a crash.  <u>See</u> 915 F.2d at 1434.  They then filed a second lawsuit against different defendants, arguing that the second set of defendants were solely responsible for the crash.  <u>See</u> 915 F.2d at 1433.  The Tenth Circuit concluded the prior complaint was "highly relevant to the allocation of fault in this case," because, "[i]f the jury knew plaintiffs had alleged the secondary defendants were liable for failing strongly to advise EMS and Zimmer of the necessity of a tear down, the liability of EMS and Zimmer could have been directly reduced."  915 F.2d at 1435.  In this case, as in <u>Dugan v. EMS Helicopters, Inc.</u>, the prior complaint's allegations have "obvious relevancy."  915 F.2d at 1435.

The Court also addressed this issue, albeit in a criminal case, in <u>United States v. Ganadonegro</u>, 854 F. Supp. 2d 1088 (D.N.M. 2012)(Browning, J.).  In <u>United States v.</u>

Ganadonegro, the United States' initial first-degree murder prosecution ended in a mistrial.  See 854 F. Supp. 2d at 1092.  It then superseded the initial indictment, charging second-degree murder, voluntary manslaughter, and negligent child abuse.  See 854 F. Supp. 2d at 1093.  The defendant sought to admit statements from the United States' closing argument at the first trial that he shook a child "knowingly, intentionally and willfully" to "illustrate that the United States has admitted that it was wrong in terms of the theory on which it proceeded at the first trial and that it could be wrong again."  854 F. Supp. 2d at 1126-27.  The Court agreed that the "statement has a tendency to make the fact that he did not have a culpable mental state more probable than it would be without the evidence, or at least permits an inference to that effect."  854 F. Supp. 2d at 1126-27.  It thus allowed the defendant to introduce the statement into evidence in the second trial.  See 854 F. Supp. 2d at 1128.

The Puckett Complaint's allegations are also relevant, because they help to "explain to the jury where Payne and Puckett are."  Tr. at 128:19-23 (Court).  Given that courts may inform juries of the fact of settlement to avoid jury confusion, they should also be able to use a complaint's allegations to accomplish the same purpose.  See Kennon v. Slipstreamer, Inc., 794 F.2d 1067, 1070 (5th Cir. 1986).  Admitting the allegations over the settlement has specific advantages -- jurors will not know whether the case against Puckett and Payne settled or was dismissed, and will allow them to determine the Defendants' liability without undue deference to a settlement that might not be significant.  See Tr. at 103:25-104:1 (Court)("I mean, let's just say they settled for a dollar.  That wouldn't tell you a whole lot.").

Second, the evidence's potential prejudice does not substantially outweigh this probative value.  See 4 Jones on Evidence § 27:33 (7th ed. 2007)("A pleading, answer to interrogatory or admission that comes within the agent admission exception to the hearsay rule still should be

excluded if it is irrelevant, too prejudicial, or violates another rule of evidence unrelated to hearsay."). As discussed above, the <u>Puckett</u> Complaint's allegations have probative value for FedEx Ground. Absent the allegations, FedEx Ground will find it far more difficult to establish that Puckett and Payne were negligent or partly responsible for the collision. The likelihood of unfair prejudice, on the other hand, seems low and manageable. "The hiring of an attorney and the filing of a lawsuit are generally done with considerable thought and care. Absent unauthorized conduct on the part of the attorney, there is nothing unfair about having to explain one's past lawsuits." <u>Williams v. Union Carbide Corp.</u>, 790 F.2d at 556. The Court can also use jury instructions to "limit what [FedEx Ground] says to prevent or to mitigate improper jury speculation" -- for example, explaining why a party might change an assertion after discovery. <u>United States v. Ganadonegro</u>, 854 F. Supp. 2d at 112 (concluding that "rule 403 does not counsel in favor of exclusion of this evidence").

Moreover, the Court finds E. Leon's cited examples unpersuasive. E. Leon insists that, "[a]lthough defendant might argue that allegations in a complaint are admissions of a party opponent, that definition only takes them outside the scope of the definition of hearsay." Motion at 7. That the statements are not hearsay, she says, "does not make them otherwise relevant or probative in excess of the prejudice they cause." Motion at 7. She again cites to <u>Greenwood v. Mepamsa</u>, which explained, in a single sentence:

> [W]hile the Greenwoods' earlier allegations against AmeriGas may be evidentiary admissions and non-hearsay under Rule 801, *Henry v. HealthPartners of S. Ariz.*, 203 Ariz. 393, 396, ¶¶ 9–10, 55 P.3d 87, 90 (App. 2003), we note that on this record the probative value of the prior allegations was minimal and the risk of prejudice substantial.

2013 WL 485727, at *7. The potential prejudice in that case was greater, however, because the trial court encouraged the jury to punish the plaintiff's "dishonesty" in seeking to recover from a

second set of defendants.  2013 WL 485727, at *6.  Moreover, even the case mentioned in E.

Leon's quotation from <u>Greenwood v. Mepamsa</u> admitted similar evidence as more probative

than prejudicial:

> As TMC notes, an admission by a party opponent is, by its very nature,
> prejudicial to the party against whom it is admitted. . . .  Although Henry was
> undoubtedly prejudiced by the trial court's reading of the allegations, we cannot
> say that the jury was encouraged by that reading to decide the case on the basis of
> emotion, sympathy, or horror.

<u>Henry ex rel. Estate of Wilson v. HealthPartners of S. Ariz.</u>, 203 Ariz. 393, 398-99, 55 P.3d 87,

92-93 (Ct. App. 2002).

## IV.   THE COURT WILL TAKE JUDICIAL NOTICE OF THE <u>PUCKETT</u> <u>COMPLAINT, BUT NOT FOR ITS ALLEGATIONS' TRUTH.</u>

The Court will take judicial notice of the <u>Puckett</u> Complaint, but will not take judicial

notice of its contents' truth.  As discussed above, the Court will admit the <u>Puckett</u> Complaint's

allegations on other grounds, so FedEx Ground will be able to "inquire as to its contents and

averments during the cross-examination of Plaintiff."  Response at 14-15.

The Court will take judicial notice of the <u>Puckett</u> Complaint as a document.  Rule 201 of

the Federal Rules of Evidence allows the Court to take notice of facts that are "capable of

accurate and ready determination by resort to sources whose accuracy cannot reasonably be

questioned."  Fed. R. Evid. 201(b), (f).  These facts include prior filings in related cases.  <u>See</u>

<u>Hansen v. Harper Excavating, Inc.</u>, 641 F.3d 1216, 1220 (10th Cir. 2011)("We hereby take

judicial notice of the documents from this earlier case in the electronic database of the U.S.

District Court for the District of Utah, as facts 'capable of accurate and ready determination by

resort to sources whose accuracy cannot reasonably be questioned.'")(quoting Fed. R. Evid.

201(b)(2)); <u>St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.</u>, 605 F.2d 1169, 1172 (10th

Cir. 1979)("Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it.").

The Court may only consider noticed documents "to show their contents, not to prove the truth of matters asserted therein."  Response at 14.  See Tal v. Hogan, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); In re Thornburg Mortgage, Inc. Sec. Litig., No. CIV 07-0815 JB/WDS, 2009 WL 5851089 (D.N.M. Dec. 21, 2009)(Browning, J.)("This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record. However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein.").  That the Court takes judicial notice thus does not mean that it accepts any of the Puckett Complaint's allegations as fact.

**IT IS ORDERED** that the requests in the Plaintiff's Motion *In Limine*, filed November 16, 2015 (Doc. 76), are granted in part and denied in part.  The Court will admit evidence of Larry Payne's prior statements for the limited purpose of showing their inconsistency.  The Court will exclude evidence of E. Leon's settlement with Puckett Transportation, Inc. and Payne. The Court will admit evidence of E. Leon's allegations in the Complaint to Recover Damages for Wrongful Death, Punitive Damages and Other Damages, filed in state court May 16, 2012, filed in federal court July 25, 2012 (Doc. 1-1 in Leon v. Payne, et al., No. CIV-12-0814 JB/LAM (D.N.M.)).  Finally, the Court will take judicial notice of the Complaint to Recover Damages for Wrongful Death, Punitive Damages and Other Damages, filed in state court May 16, 2012, filed in federal court July 25, 2012 (Doc. 1-1 in Leon v. Payne, et al., No. CIV-12-0814 JB/LAM (D.N.M.)), but will not take judicial notice of its contents' truth.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Mark J. Caruso
Caruso Law Offices, PC
Albuquerque, New Mexico

--and--

Paul D. Barber
Barber & Borg LLC
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Brenda M. Saiz
Michael E. Kaemper
Abigail M. Yates
Rodey, Dickason, Sloan, Akin & Robb, PA
Albuquerque, New Mexico

  *Attorneys for the Defendant*