## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ELIA LEON, individually and as personal
representative of the estate of MARTIN LEON,
deceased,

        Plaintiff,

vs.                                                                                    No. CIV 13-1005 JB/SCY

FEDEX GROUND PACKAGE SYSTEM, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant FedEx Ground Package System, Inc.'s Motion for Partial Summary Judgment on Plaintiff's Claim of Aiding and Abetting, filed November 16, 2015 (Doc. 68)("Motion").  The Court held a hearing on December 22, 2015.  The primary issue is whether the Court should grant summary judgment in favor of Defendant FedEx Ground Package System, Inc. on Plaintiff Elia Leon's claim that FedEx Ground aided and abetted truck driver Federico Martinez-Leandro's violations of his duties towards decedent Martin Leon.  The Court will grant the Motion because it concludes that E. Leon cannot recover on any of her three possible aiding-and-abetting theories.

## FACTUAL BACKGROUND

The Court will provide two factual sections.  First, the Court will present the facts as alleged in the Plaintiff's Complaint to Recover Damages for Personal Injury & Wrongful Death (Jury Trial Demanded), filed October 17, 2013 (Doc. 1)("Complaint"), in order to provide a coherent narrative and contextualize the parties' arguments.  Second, the Court will set forth the undisputed material facts for purposes of deciding the Motion.

1.   **Factual Narrative.**

The Court takes its facts from the Complaint, the Motion, and Defendant FedEx Ground Package System, Inc.'s Response in Opposition to Plaintiff's Motion in Limine, filed December 3, 2015 (Doc. 93)("In Limine Response").

On November 30, 2011, at roughly 11:00 p.m., Federico Martinez-Leandro was driving a tractor-trailer "eastbound on Interstate 40 in Cibola County, New Mexico approximately .2 miles west of mile marker 89." Complaint ¶ 12, at 3. M. Leon, an authorized passenger, was present in the tractor's cab. See Complaint ¶ 13, at 3. Martinez-Leandro crashed the tractor-trailer into the rear of a second tractor-trailer while in the right lane. See Complaint ¶ 15, at 3. M. Leon suffered serious injuries and death because of the accident. See Complaint ¶ 16, at 3.

Martinez-Leandro was Eusebia Transportation, Inc.'s employee or agent. See Complaint ¶ 8, at 2. Eusebia Transportation had leased the tractor and Martinez-Leandro's services to FedEx Ground Package System, Inc., which provided the trailers and displayed its Department of Transportation number on the tractor. See Complaint ¶ 7-8, at 2.

Larry Payne, a driver for Puckett Transportation, Inc., was driving the other tractor-trailer involved in the collision. See Complaint ¶ 15, at 3. E. Leon, FedEx Ground, and the New Mexico State Police reconstructed the accident, and all agree that Payne's truck was traveling in the outer lane of travel at less than the speed limit. See Motion at 5; In Limine Response at 2 (stating that Payne was traveling "well below the speed limit, at approximately 34 to 38 mph").

2.   **Undisputed Material Facts.**

The standards governing the consideration of a motion for summary judgment are well established. Under rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue

regarding any material fact and the moving party is entitled to judgment as a matter of law.  The

burden of establishing the nonexistence of a genuine issue of material fact is on the moving

party.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

> Before the court can rule on a party's motion for summary judgment, the moving
> party must satisfy its burden of production in one of two ways: by putting
> evidence into the record that affirmatively disproves an element of the nonmoving
> party's case, or by directing the court's attention to the fact that the non-moving
> party lacks evidence on an element of its claim, "since a complete failure of proof
> concerning an essential element of the nonmoving party's case necessarily renders
> all other facts immaterial."  Celotex, 477 U.S. at 323-25.  On those issues for
> which it bears the burden of proof at trial, the nonmovant "must go beyond the
> pleadings and designate specific facts to make a showing sufficient to establish
> the existence of an element essential to his case in order to survive summary
> judgment."  Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007).

Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(emphasis

added).  Here, FedEx Ground does not "put[] forth evidence into the record that affirmatively

disproves an element of the nonmoving party's case."  Plustwik v. Voss of Norway ASA, 2013

WL 1945082, at *1.  Rather, it purports to "direct the court's attention to the fact that the non-

moving party lacks evidence on an element of its claim, 'since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1 (quoting Celotex

Corp. v. Catrett, 477 U.S. at 323-25).  Specifically, FedEx Ground "directs the court's attention

to the fact that," Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1, "[t]here is no

evidence in this case to support Plaintiff's claim for aiding and abetting," Motion at 2.  E. Leon

provides only three sentences in response to the Motion, and only one of them presents a fact.

See Plaintiff's Response to Defendant's Motion for Partial Summary Judgment on Plaintiff's

Claim for Aiding and Abetting at 1, filed December 3, 2015 (Doc. 90)("Response")("FedEx did

not provide any training to Mr. Martinez-Leandro.").

Because the parties have not provided a detailed set of allegations, the Court finds the

following undisputed material facts:

1.     The accident at issue occurred on November 30, 2011 in Cibola County, New Mexico. <u>See</u> Complaint ¶ 1, at 1; Defendant FedEx Ground Package System, Inc.'s Answer to Plaintiff's Complaint to Recover Damages for Personal Injury & Wrongful Death ¶ 1, at 1, filed November 18, 2013 (Doc. 4)("Answer").

2.     Before the accident, Federico Martinez-Leandro was driving a tractor-trailer eastbound on Interstate 40.  M. Leon was an authorized passenger in the tractor-trailer.  <u>See</u> Complaint ¶¶ 12-13, at 3; Answer ¶¶ 12-13, at 3.

3.     Payne's truck was traveling in the outer lane of travel below the speed limit at the time of the collision.  <u>See</u> Motion at 5; In Limine Response at 2 (stating that Payne was traveling "well below the speed limit, at approximately 34 to 38 mph").

4.     Larry Payne's tractor-trailer collided with Martinez-Leandro's tractor-trailer.  <u>See</u> Complaint ¶ 15, at 3; FedEx Ground Package System, Inc.'s Motion in Limine to Exclude Graphic Photographs at 1-2, filed November 16, 2015 (Doc. 71)("Photos Motion").

5.     The collision ejected M. Leon from the tractor-trailer and killed him.  <u>See</u> Complaint ¶ 16, at 3; Photos Motion at 2-3.

6.     FedEx Ground did not provide any training to Mr. Martinez-Leandro.  <u>See</u> Response at 1; Videotaped Deposition of Michael Sear at 23:14-16 (Barber, Sear), filed December 3, 2015 (Doc. 90-1).

## PROCEDURAL BACKGROUND

E. Leon brought suit as decedent M. Leon's widow and personal representative on

October 17, 2013.  <u>See</u> Complaint ¶¶ 2, 4, at 1.  E. Leon alleges three causes of action in her

Complaint: (i) a negligence and negligence per se claim based on FedEx Ground's failure to

maintain and operate the vehicle in a safe manner, <u>see</u> Complaint ¶¶ 17-25, at 4-5; (ii) a claim

that FedEx Ground aided and abetted Martinez-Leandro's violations of his duties, <u>see</u> Complaint

¶ 35, at 7; and (iii) a negligence and negligence per se claim based on FedEx Ground's failure to

maintain and operate the vehicle in compliance with applicable safety rules and administrative

standards, <u>see</u> Complaint ¶¶ 26-39, at 5-7.  The aiding and abetting claim states that "[u]pon

information and belief, defendant FedEx Ground, Inc. aided and abetted Federico Martinez-Leandro in violating some or all of the duties alleged above."   Complaint ¶ 35, at 7.   The Complaint does not specify exactly which "duties alleged above" are relevant, but the Complaint includes the following list of possibilities:

> 7.   Defendant owed a duty of care to maintain and to operate its commercial motor vehicle in a safe manner and in compliance with all safety rules, including statutes, rules and regulations governing the operation and maintenance of vehicles, including tractor trailers, upon New Mexico and interstate roadways.
>
> 8.   Defendant had a duty to maintain and operate the tractor trailer so that it was safe to operate on public roads.
>
> 9.   Defendant had a duty to retain records of the operation and maintenance of the tractor trailer involved in the crash.
>
> 10.   Defendant breached its duty of care by maintaining and operating its vehicles in a manner that was negligent or negligent *per se*, or both, prior to the crash, including but not limited to:
>
>> a.   Failing to yield;
>>
>> b.   Traveling too fast for conditions;
>>
>> c.   Failing to keep a proper lookout;
>>
>> d.   Failure to exercise due care in the operation and maintenance of the vehicle;
>>
>> e.   Failure to operate the vehicle in a safe and reasonable manner and under control;
>>
>> f.   Failure to make sure that the driver was knowledgeable and skilled in night driving, emergency maneuvers and vehicle inspections.
>>
>> g.   Driving a vehicle in violation of existing codes, statutes and ordinances;
>>
>> h.   Driving a vehicle while inattentive to other vehicles and roadway conditions.
>
> . . . .

28.    Defendants had non-delegable duties to maintain and operate the vehicle involved in the collision in conformance with applicable safety rules, amd omdistru [sic] standards, including Federal Motor Carrier Safety Act ("FMCSA") regulations, and in such a way as to not harm the public.

29.    Defendant FedEx Ground, Inc. had a duty to make sure its drivers, including Federico Martinez-Leandro, were qualified to operate safely its tractor trailers in such a way as to not harm the public.

30.    Defendant FedEx Ground, Inc. had a duty to supervise its drivers, including Federico Martinez-Leandro, to make sure its tractor trailers are operated in such a way as to not harm the public.

31.    Defendant FedEx Ground, Inc. had a duty to require Federico Martinez-Leandro to comply with federal, state and industry standard safety rules.

32.    Defendant had a duty to comply with all of the applicable safety rules, including trucking industry safety standards, state traffic laws and FMCSA regulations pertaining to the hiring of drivers, operation of trucks, maintenance of trucks, and other activities on interstate highways.

Complaint ¶¶ 7-10, 28-32, at 4-5, 6-7.  E. Leon seeks actual and compensatory, exemplary, and punitive damages.  See Complaint ¶¶ 41-43, at 7-9.

1.     **The Motion.**

On November 16, 2015, FedEx Ground moved for partial summary judgment "on all portions of Plaintiff's claim for 'aiding and abetting' arising from driver Federico Martinez-Leandro's individual acts."  Motion at 1.  FedEx Ground explains that

[t]o establish a claim of aiding and abetting, Plaintiff must prove: (1) Mr. Martinez-Leandro breached a duty owed to Plaintiff; (2) [FedEx Ground] knew of such a duty; (3) [FedEx Ground] intentionally provided substantial assistance or encouragement to Mr. Martinez-Leandro to commit an act that FGPS knew to be a breach of the duty; and (4) Plaintiff was damaged as a result.

Motion at 1 (citing GCM, Inc. v. Ky. Cent. Life Ins. Co., 1997-NMSC-052, ¶ 17, 947 P.2d 143, 148).   It argues that E. Leon cannot demonstrate that it provided "substantial assistance or encouragement to Mr. Martinez-Leandro" to commit an act that it knew would breach his duties. Motion at 2-3.  It explains that, although E. Leon refers to the "duties alleged above" in her

aiding and abetting claim, the duties she lists earlier in the Complaint allege FedEx Ground's duties rather than Martinez-Leandro's duties.  See Motion at 2.

       **2.**      **The Response.**

E. Leon responded on December 3, 2015.  See Response.  E. Leon begins by setting forth a statement of "undisputed" material facts:

1. FedEx did not provide any training to Mr. Martinez-Leandro.

2. FedEx has a duty to train its drivers to follow the Federal Motor Carrier Safety Regulations.  FMCSR § 390.11[.]

3. It is unlawful for a person or entity to "aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."  FMCSR § 390.13

Response at 1.  E. Leon argues that FedEx has a nondelegable duty to ensure that its drivers were adequately trained.  See Response at 2.  She says that FedEx Ground deliberately avoided training its drivers by attempting to delegate its training duty to hundreds of "mom and pop" small operators.  Response at 2.  She contends that FedEx Ground's failure to provide training, particularly training on fatigue recognition, fatigue avoidance, and lane changing, "aided and abetted Mr. Martinez-Leandro in unsafe driving."  Response at 2-3.

       **3.**      **The Reply.**

FedEx Ground replied on December 21, 2015.  See FedEx Ground Package System, Inc.'s Reply in Support of its Motion for Partial Summary Judgment on Plaintiff's Claim for Aiding and Abetting, filed December 21, 2015 (Doc. 123)("Reply").  FedEx Ground describes E. Leon's statement of undisputed material facts as "argument of counsel."  Reply at 1 (citing Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1025 (10th Cir. 1992)).  It disputes E. Leon's statement of the law, noting that, "[u]nder the FMCSR [Federal Motor Carrier Safety Regulations], a driver can be qualified by either training or experience or both."  Reply at 1

(citing 49 C.F.R. § 391.11(b)(3)).

FedEx Ground notes that there are very few cases on point.  See Reply at 2.  It points to
Schramm v. Foster, 341 F. Supp. 2d 536 (D. Md. 2004)(Motz, J.), which it says held that a
trucking company defendant "may have brought about an arrangement to make it possible for the
driver to violate the hours-of-service regulation," but did not "reach the level of supporting a
claim of aiding and abetting to defeat partial summary judgment under Section 390.13."  Reply
at 2-3.  It again argues that Section 390.11 "merely states that a motor carrier is required to
observe the FMCSR" and "does not mandate a duty to train drivers."  Reply at 3.  It adds that the
"Plaintiff has failed to offer any evidence that: (1) the cited regulation, § 390.11, was violated by
Mr. Martinez-Leandro; (2) Mr. Leandro-Martinez intended to violate the regulation; and (3)
FGPS knew and intended for Mr. Martinez-Leandro to violate the regulation with his alleged
conduct in the motor-vehicle accident."  Reply at 3.  It concludes by stating that E. Leon fails to
establish that it desired or knew that Martinez-Leandro would violate any safety regulations.  See
Reply at 3.

### 4. **The Hearing**.

The Court held a hearing on December 22, 2015.  See Transcript of Hearing, taken
December 22, 2015 (Doc. 128)("Tr.").  The Court opened the discussion by explaining that it
was inclined to grant in part and deny in part the Motion:

> I would grant the motion to the extent that it was based on any facts at all.  So the
> plaintiff couldn't make any sort of factual based aiding and abetting claim.  But if
> they wanted to simply say that Fed Ex has a duty to train its drivers, and then
> argue that they did not, that limited argument, allow that to proceed, because it
> seemed to me that there was evidence that Fed Ex had that duty, it contracted it
> out, and that there was evidence that that was not taking place, and so it seemed to
> me that everything else that might be aiding and abetting ought to be out of the
> case, but there ought to be some clarity here on this particular point, allow that to
> proceed.

Tr. at 67:6-19 (Court).  FedEx Ground admitted that it did not train Martinez-Leandro.  See Tr. at 68:20-23 (Kaemper).  It noted, however, that E. Leon's cited provision -- Section 3901.11 -- merely states that regulated entities must comply with the regulations.  See Tr. at 69:4-15 (Court, Kaemper).  It then argued that E. Leon's arguments addressed negligence, rather than aiding and abetting.  See Tr. at 70:6-14 (Kaemper).  It explained:

> Aiding and abetting requires intent; it requires collusion.  And really, if you look at the case of Schramm v. Foster, as well as just a summary of the statute, the aiding and abetting statute that's associated with the FMCSR, it's designed for situations where a company tells the driver -- the driver says, I'm going to violate the hours of service.  And the company says, Go ahead and violate the hours of service because we want you to get from point A to point B, and we don't want you to pay attention to the law.

Tr. at 70:15-25 (Kaemper).  FedEx Ground argued that E. Leon's allegations miss two important points: (i) that Martinez-Leandro did not violate any statutes that required training; and (ii) that FedEx Ground did not know that Martinez-Leandro would violate any rules or duties.  See Tr. at 71:2-13 (Kaemper).  FedEx Ground conceded, however, that it would be the relevant "motor carrier" discussed in the regulations.  Tr. at 71:18-22 (Court, Kaemper).

E. Leon responded that FedEx Ground's motion "violates my client's constitutional right to a jury trial."  Tr. at 71:24-72:2 (Barber).  She contended that the federal regulation encompasses negligently aiding and abetting others' violations.  See Tr. at 72:13-18 (Barber).  She also argued that federal law, rather than New Mexico law, would apply to her claims.  See Tr. at 73:6-9 (Barber)("Aiding and abetting means helping somebody.  It isn't a New Mexico claim.  It's a Federal Motor Carrier Safety Regulation claim.").  She added that FedEx Ground's failure to train was "aiding and abetting: Sending out untrained drivers who have not been instructed on what to do when they recognize signs of fatigue, for example."  Tr. at 73:16-19 (Barber).

FedEx Ground responded that "Mr. Leandro did not intend to violate the regulations, and Fed Ex did not know or intend for Mr. Leandro to violate the regulations."  Tr. at 74:22-75:1 (Kaemper).  Absent that element of intent, it argued, E. Leon's aiding and abetting claim must fail.  See Tr. at 75:1-4 (Kaemper).

The Court concluded the hearing by restating its original conclusion:

> I'm inclined to grant the motion in part, deny it in part; deny it as to this training issue, and just that narrow portion, allow it to go forward.  It does seem to me that plaintiff can argue that these drivers do have to be trained.  And they can be trained different ways.  You can hire people to train them.  But in the end, they have to be trained.  And if they're not trained, then Fed Ex can be liable, and that is going to lead to violations of the Act by the employees, if they're not trained.

Tr. at 75:5-21 (Court).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'"  Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013) (Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)).  See Celotex Corp. v. Catrett, 477 U.S. at 323.  "If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial."  Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting) (emphasis in original).[1]  Once the movant meets this burden, rule 56 requires the nonmoving

---

[1]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme Court, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate

party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  (internal quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (citation omitted)(internal quotation marks omitted)).

---

statement of the law.  See 10A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. CIV 07-2123 JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court of the United States concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts.  550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . .  When opposing

- 13 -

parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (emphasis in original).

The Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304

(10th Cir. 2009), and explained:

[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cty., 584 F.3d at 1312 (brackets omitted). "The Tenth Circuit, in Rhoads

v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished),[2]] explained that the

_____

[2]Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court finds that Rhoads v. Miller, 352 F. App'x 289 (10th Cir. 2009), and Lobozzo v. Colorado Department of Corrections, 429 F. App'x 707 (10th Cir. 2011), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

blatant contradictions of the record must be supported by more than other witnesses'

testimony[.]"    Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)

(Browning, J.)(citation omitted) aff'd, 499 F. App'x 771 (10th Cir. 2012).

> In evaluating a motion for summary judgment based on qualified immunity, we
> take the facts "in the light most favorable to the party asserting the injury." Scott
> v. Harris, 550 U.S. 372, 377 (2007).  "[T]his usually means adopting . . . the
> plaintiff's version of the facts," id. at 378, unless that version "is so utterly
> discredited by the record that no reasonable jury could have believed him," id.
> at 380.  In Scott, the plaintiff's testimony was discredited by a videotape that
> completely contradicted his version of the events.  550 U.S. at 379.  Here, there is
> no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads'
> testimony. There is only other witnesses' testimony to oppose his version of the
> facts, and our judicial system leaves credibility determinations to the jury. And
> given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory
> problems go to the weight of his testimony, not its admissibility . . . .  Mr. Rhoads
> alleges that his injuries resulted from a beating rendered without resistance or
> provocation. If believed by the jury, the events he describes are sufficient to
> support a claim of violation of clearly established law under Graham v. Connor,
> 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted).  See Lymon v.

Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92).

In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes,

United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal

question of qualified immunity and "determine whether plaintiff's factual allegations are

sufficiently grounded in the record such that they may permissibly comprise the universe of facts

that will serve as the foundation for answering the legal question before the court," before

inquiring into whether there are genuine issues of material fact for resolution by the jury.

584 F.3d at 1326-27 (Holmes, J., concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th

Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes

are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the

plaintiffs' facts").

**LAW REGARDING IMPLIED STATUTORY PRIVATE RIGHTS OF ACTION**

When a party seeks to enforce a statute that provides no express mechanism for its enforcement, a court must examine whether a cause of action may be implied through the common law.  See Starko, Inc. v. Presbyterian Health Plan, Inc., 2012-NMCA-053, ¶ 33, 276 P.3d 252, 264-65.  In Alexander v. Sandoval, 532 U.S. 275 (2001), the Supreme Court of the United States held: "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."  532 U.S. at 286 (citation omitted).  The Supreme Court explained: "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  532 U.S. at 286 (citation omitted).   "Statutory intent on this latter point is determinative," and "[w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  Alexander v. Sandoval, 532 U.S. at 286-87 (citations omitted).

The federal test for determining whether legislative intent exists is set forth in Cort v. Ash, 422 U.S. 66, 78 (1975).  See Alexander v. Sandoval, 532 U.S. at 287.  In Cort v. Ash, the Supreme Court of the United States set forth the test for determining whether to recognize an implied private cause of action:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted -- that is, does the statute create a federal right in favor of the plaintiff?  Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?  Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?  And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78 (internal quotation marks and citations omitted).  See also Nat'l Trust for Historical Pres. v. City of Albuquerque, 117 N.M. at 593, 874 P.2d at 801 (citing Cort. v. Ash,

422 U.S. at 78).

**ANALYSIS**

The Court will grant the Motion.  The Court could interpret E. Leon's ambiguous[3] aiding and abetting claim in three ways: (i) as a federal cause of action for FedEx Ground's violation of federal regulations; (ii) as a state cause of action for FedEx Ground's violation of federal regulations; or (iii) as a state cause of action under a state aiding and abetting negligence theory. Because the Court concludes that E. Leon has no cause of action on any of these theories, it grants summary judgment in favor of FedEx Ground.

**I.     E. LEON HAS NO FEDERAL CAUSE OF ACTION FOR VIOLATIONS OF THE FMCSR.**

The Court could construe E. Leon's claim as a federal claim that FedEx Ground aided and abetted Martinez-Leandro's violations of the FMCSR.  E. Leon seemed to adopt this approach both in his Response and at the hearing.[4]  See Response at 2-3 (citing 49 C.F.R. § 390.13); Tr. at 73:6-9 (Barber)("Aiding and abetting means helping somebody. It isn't a New Mexico claim. It's a Federal Motor Carrier Safety Regulation claim."); id. at 73:12-16 (Barber)("[T]aken together, the Federal Rules, we believe, impose a nondelegable duty on Fed Ex, as the motor carrier, to make sure that its drivers are trained, and obey the rules.").

---

[3] See Complaint ¶¶ 26-35, at 6-7 (failing to cite any specific federal or state law, but using the term "non-delegable duties"); Response at 2-3 (citing federal regulations, but describing a "nondelegable duty").

[4] E. Leon has consistently argued that the Court has only diversity jurisdiction over this claim.  See Complaint ¶ 11, at 3 ("Jurisdiction over the parties is appropriate pursuant to 28 U.S.C. §1332 and venue is proper in this Court."); Pretrial Order at 2, 8, 41, filed February 8, 2016 (Doc. 143).  The Court will discuss the aiding and abetting claim as a federal claim, but notes that E. Leon may not have thought of her aiding and abetting claim as a federal claim when she included it in her Complaint.  Moreover, that E. Leon did not expressly refer to federal statutes in her Complaint may support that she never intended -- there or here -- to plead a federal cause of action, and that she only intended to bring a state law claim for aiding and abetting.

- 17 -

E. Leon's federal theory asserts that FedEx Ground violated 49 C.F.R. § 390.13, which states: "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."  Response at 3 (quoting 49 C.F.R. § 390.13).  First, E. Leon contends that FedEx Ground had a non-delegable duty to train its drivers under the FMCSR.  See Response at 1.  The relevant regulation provides:

> A person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle.  Except as provided in § 391.63, a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.

49 C.F.R. § 391.11(a).  Second, she alleges that "FedEx, as a matter of longstanding corporate policy, attempts to delegate that duty with contractual obligations stating that hundreds of 'mom and pop' small operators will train and supervise their drivers while FedEx attempts to wash its hand of any duty to provide training or education."  Response at 2.  FedEx Ground's failure to train Martinez-Leandro, she says, aided and abetted him in "sleeping while he was driving," "making an unsafe lane change," and/or driving without the proper qualifications.  Response at 3.

E. Leon's federal claim for FedEx Ground's violations of the FMCSR fails as a matter of law.  The Court concludes that there is no federal private right of action allowing personal injury or wrongful death plaintiffs to hold defendants liable for violations of the FMCSR.  Although E. Leon does not identify any statute that could provide such a right of action, other plaintiffs have argued that violations of the FMCSR are actionable under the Motor Carrier Act, 49 U.S.C. §§ 10101-11908.[5]  See, e.g., Stewart v. Mitchell Transp., 241 F. Supp. 2d 1216, 1219 (D. Kan.

_____

[5]At least one court has rejected a plaintiff's attempt to make this argument at a late date. See Isso v. W. Exp., Inc., No. CIV-14-109-R, 2015 WL 4392851, at *3 (W.D. Okla. July 15, 2015)(Russell, J.)("[A]lthough Plaintiffs assert in response to the motion for summary judgment that certain federal safety regulations provide for independent causes of action against Western,

2002)(VanBebber, J.)("Plaintiffs claim that they have a private right of action under 49 U.S.C. § 14704(a)(2), which is part of the Motor Carrier Act."); Schramm v. Foster, 341 F. Supp. 2d at 540 ("Plaintiffs assert state common law claims for negligence, negligent entrustment, and negligent hiring and supervision, and federal claims under the Motor Carrier Act ('MCA') and Federal Motor Carrier Safety Regulations ('FMCSR').").

Only one court has agreed with this argument.  In Marrier v. New Penn Motor Express, Inc., 140 F. Supp. 2d 326 (D. Vt. 2001)(Sessions, J.), a plaintiff successfully argued that 49 U.S.C. § 14704(a)(2) provides a private right of action in FMCSR cases.  See 140 F. Supp. 2d at 328.  This statute states that "[a] carrier or broker . . . is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part."  49 U.S.C. § 14704(a)(2).  The Honorable William Sessions III, United States District Judge for the District of Vermont, rejected the defendant's argument that the act only applies to economic injuries.  See 140 F. Supp. 2d at 329.  It concluded that the two statutes create a private right of action, in part because "one of the purposes of the [Interstate Transportation Act] was to try to ensure safety in the operation of motor carriers."  140 F. Supp. 2d at 329.  It thus allowed the plaintiff to bring a federal claim.  See 140 F. Supp. 2d at 329.

Every other court to consider the issue has disagreed with Judge Sessions' interpretation of 49 U.S.C. § 14704(a)(2).  In Stewart v. Mitchell Transportation, for example, the Honorable George VanBebber, United States District Judge for the District of Kansas, agreed with a defendant that "§ 14704(a)(2) does not create a private right of action for what is actually a state law negligence claim" for two reasons.  241 F. Supp. 2d at 1219.  First, Judge VanBebber examined the surrounding statutory language, concluding that the statute is ambiguous:

there is no citation in the petition to any regulation or federal statute so as to give notice of such a claim.").

As noted above, § 14704(a)(2) states that a carrier "is liable for damages sustained by a person . . . ."  The language does not specifically indicate that a private right of action is created. In contrast, the drafters were much more specific in § 14704(a)(1), the provision directly preceding § 14704(a)(2).  Section 14704(a)(1) explicitly authorizes individuals to bring suit for violations of orders of the Secretary of Transportation or the Surface Transportation Board:

> **Enforcement of Order.** A person injured because a carrier . . . does not obey an order of the Secretary or the Board, as applicable, under this part . . . may bring a civil action to enforce that order under this subsection.
>
> A person may bring a civil action for injunctive relief for violations of sections 14102 and 14103.

241 F. Supp. 2d at 1219-20.  Judge VanBebber then examined the statute's legislative history.  That history, he concluded, "indicates that Congress did intend to create certain private rights of action in § 14704(a)(2), but not a right of action for personal injury."  241 F. Supp. 2d at 1220 (citing Conference Reports).  He explained that the provision was meant to shift commercial dispute resolution from the 108-year-old Interstate Commerce Commission to the courts, allowing private actions for "motor carrier leasing or lumping violations."  241 F. Supp. 2d at 1220.

> [T]he section was intended to apply only to commercial damages, not personal injuries. . . . [T]he history contains no discussion about the impact creation of a federal private right of action for personal injuries would have upon the workload of the federal courts.  Because that impact would be substantial, it is reasonable to infer that Congress did not intend to create such a right of action.

Schramm v. Foster, 341 F. Supp. 2d at 547.  See Harris v. FedEx Nat. LTL, Inc., 760 F.3d 780, 784 n.2 (8th Cir. 2014)(stating in dicta that "[w]e doubt there is a federal private right of action for a violation of the FMCSR"); Crosby v. Landstar, No. CIV. 04-1535-SLR, 2005 WL 1459484, at *2 (D. Del. June 21, 2005)(Robinson, J.)("Plaintiff's claims for personal injury and property damage are more like negligence claims.  Section 14704 does not give this court jurisdiction over negligence claims, which are traditionally within the purview of state jurisdiction."); Jones v.

D'Souza, No. CIV.A. 7:06CV00547, 2007 WL 2688332, at *7 (W.D. Va. Sept. 11, 2007)(Conrad, J.); Kavulak v. Laimis Juodzevicius, A.V. Inc., 994 F. Supp. 2d 337, 343-44 (W.D.N.Y. 2014)(Skretny, J.)("[T]his statute also does not create a private right of action to recover for personal injuries sustained by a motorist struck by a tractor-trailer driver."); Courtney v. Ivanov, 41 F. Supp. 3d 453, 457 (W.D. Pa. 2014)(Gibson, J.); Slagowski v. Cent. Washington Asphalt, Inc., No. 2:11-CV-00142-APG, 2014 WL 4887807, at *7 (D. Nev. Sept. 30, 2014)(Gordon, J.)("Virtually all courts that have examined this issue have concluded there is no private right of action for personal injuries arising from a violation of the MCA or its safety regulations."); Lipscomb v. Zurich Am. Ins. Co., No. CIV.A. 11-2555, 2012 WL 1902595, at *2 (E.D. La. May 25, 2012)(Milazzo, J.).   Some state courts have followed suit.   See Craft v. Graebel-Oklahoma Movers, Inc., 2007 OK 79, ¶ 25, 178 P.3d 170, 177 ("[T]he legislative history establishes that Congress was interested only in enabling private entities to assume the Interstate Commerce Commission's role to enforce the commercial aspects of the Motor Carrier Act."); Tierney v. Arrowhead Concrete Works, Inc., 791 N.W.2d 540, 547 (Minn. Ct. App. 2010)("[I]t is appropriate to look beyond the seemingly plain wording of subsection (a)(2) to the legislative history, to determine the scope of that subsection.").

The Court agrees with the majority of other courts that 49 U.S.C. § 14704(a)(2) does not create a private right of action for personal injury and wrongful death plaintiffs.   The Tenth Circuit has recognized that Court v. Ash's "four factors have been effectively condensed into one -- whether Congress, expressly or by implication, intended to create a private cause of action." Sonnenfeld v. City & Cty. of Denver, 100 F.3d 744, 747 (10th Cir. 1996).   Congressional intent is now the determinative factor:

> Like substantive federal law itself, private rights of action to enforce federal law
> must be created by Congress.  The judicial task is to interpret the statute Congress

> has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

Alexander v. Sandoval, 532 U.S. at 286-87 (internal quotation marks and citations omitted).

The Court concludes that 49 U.S.C. § 14704(a)(2) does not create a private right of action for personal injury plaintiffs for three primary reasons. First, the provision's language does not clearly include "rights-creating language" that "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff." Boswell v. Skywest Airlines, Inc., 361 F.3d at 1267 (quoting Alexander v. Sandoval, 532 U.S. at 288 and Cannon v. Univ. of Chicago, 441 U.S. 677, 693 n.13 (1979)). The provision's language does not expressly provide a private right of action, but rather states that the offending carrier or broker "is liable for damages." 49 U.S.C. § 14704(a)(2). The provision immediately above it, on the other hand, specifically states that "[a] person may bring a civil action for injunctive relief[.]" 49 U.S.C. § 14704(a)(1). The contrast between these provisions has confused courts for more than fifteen years. See Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc., 192 F.3d 778, 785 (8th Cir. 1999)("[W]e confess to being rather mystified by the inconsistent language used in the Termination Act's various enforcement provisions."). Congress, in other words, provided an unambiguous cause of action for commercial disputes, but not for personal injuries. Compare 49 U.S.C. § 14704(a)(1) with 49 U.S.C. § 14704(a)(2).

Second, there are indications of legislative intent to deny a personal injury remedy for violations of the FMCSR. See Cort v. Ash, 422 U.S. at 78. The Court finds Crosby v. Landstar's account convincing:

> Section 14704 was enacted by Congress as part of the ICC Termination Act of 1995 ("ICC Act"). With the enactment of the ICC Act, Congress disposed of the Interstate Commerce Commission and transferred its responsibilities to the

> Department of Transportation ("DOT").  *See Owner–Operator Indep. Drivers
> Ass'n, Inc. v. New Prime, Inc.*, 192 F.3d 778, 780 (8th Cir. 1999).  Congress,
> however, did not transfer all of the responsibilities of the ICC to DOT.  A section
> of the ICC Act allows commercial disputes, which had been administratively
> adjudicated by the ICC, to be brought in federal court.  H.R.Rep. No. 104–311, at
> 87–88 (1995), *reprinted in* 1995–2 U.S.C.C.A.N. 793, 799–800.  Specifically, the
> ICC Act was intended to "permit . . . private, commercial disputes to be resolved
> the way that all other commercial disputes are resolved -- by the parties."  Section
> 14704, in particular, was intended to "provide for private enforcement of the
> provisions of the Motor Carrier Act in court."  H.R.Rep. No. 104-311, at 87-88
> (1995), *reprinted in* 1995-2 U.S.C.C.A.N. 793, 799-800; *Owner–Operator Indep.
> Drivers Ass'n*, 192 F.3d at 785.

2005 WL 1459484, at *2.  See Stewart v. Mitchell Transp., 241 F. Supp. 2d at 1220 ("The

legislative history of the statute indicates that Congress did intend to create certain private rights

of action in § 14704(a)(2), but not a right of action for personal injury.").  The Court "cannot

apply its independent policy judgment to recognize a cause of action that Congress has denied."

Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1388 (2014)(citing

Alexander v. Sandoval, 532 U.S. at 286–287).

Third, a private right of action would be inconsistent with the Motor Carrier Act's

underlying purposes.  See Boswell v. Skywest Airlines, Inc., 361 F.3d at 1267.  The specific

provision at issue was part of the ICC Termination Act, which Congress enacted to deregulate

the trucking industry and "shift commercial dispute resolution from the 108-year-old Interstate

Commerce Commission to the courts."  Stewart v. Mitchell Transp., 241 F. Supp. 2d at 1220.

The state courts, rather than the Interstate Commerce Commission, had jurisdiction over personal

injury disputes before and after Congress enacted 49 U.S.C. § 14704(a)(2).  See Stewart v.

Mitchell Transp., 241 F. Supp. 2d at 1220-21.  E. Leon's reliance on "a Federal Motor Carrier

Safety Regulation claim" rather than "a New Mexico claim" is thus misplaced.  Tr. at 73:6-9

(Barber).

The Court's decision extends to E. Leon's aiding and abetting claim.  E. Leon contends that she can enforce 49 C.F.R. § 390.13's prohibition on aiding and abetting against FedEx Ground.  <u>See</u> Response at 3.  E. Leon may not use 49 U.S.C. § 14704(a)(2) to bring suit against FedEx Ground for violating the FMCSR.  <u>See</u> <u>Schramm v. Foster</u>, 341 F. Supp. 2d at 547 (rejecting a plaintiff's attempt to enforce 49 C.F.R. § 390.13's prohibition on aiding and abetting).

## II.   E. LEON HAS NO STATE CAUSE OF ACTION FOR VIOLATIONS OF THE FMCSR.

The Court could also construe E. Leon's aiding and abetting claim as an attempt to enforce a duty that a federal regulation creates, but in a state law cause of action.  The United States Court of Appeals for the Seventh Circuit addressed a similar issue in <u>Camp v. TNT Logistics Corp.</u>, 553 F.3d 502 (7th Cir. 2009)(Manion, J., with Ripple, J. and Sykes, J.).  There, a truck driver sued her logistic services provider and truck loader for negligently loading an unsecured pallet into her truck.  <u>See</u> 553 F.3d at 506.  The plaintiff cited 49 C.F.R. § 390.13, but did not base her claims on 49 U.S.C. § 14704(a)(2).  Instead, she argued that her claims were based "upon *state* law: a common-law cause of action and a statutory cause of action under the safety regulations."  553 F.3d at 506 n.1.  The Seventh Circuit rejected the statutory theory: "We are not aware of (and Camp has not pointed to) any Illinois statute that creates a cause of action for a violation of the FMCSR."  <u>Camp v. TNT Logistics Corp.</u>, 553 F.3d at 506 n.1.  It explained, however, that the plaintiff stated at oral argument "that a violation of the FMCSR is evidence of negligence."  553 F.3d at 506 n.1.  It interpreted the plaintiff's FMCSR violation argument accordingly: "We construe this statement as an assertion that the defendants' alleged violation of 625 ILCS 5/18b-105(b) -- which incorporates the relevant provisions of the FMCSR -- is prima facie evidence of common-law negligence under Illinois law."  553 F.3d at 506 n.1.  It

thus explained that the plaintiff was "pursuing a common-law negligence claim against each defendant based on distinct theories of duty -- statutory and traditional common-law." 553 F.3d at 506 n.1.

This case presents the Court with a similar dilemma. The Court is not aware of any New Mexico "statute that creates a cause of action for a violation of the FMCSR." Camp v. TNT Logistics Corp., 553 F.3d at 506 n.1. Neither party has cited, and the Court has been unable to locate, any state law incorporating the relevant provisions of the FMCSR into New Mexico law. Compare Camp v. TNT Logistics Corp., 553 F.3d at 506 ("Parts 390 and 392 (among several others) of the FMCSR are adopted by reference into the Illinois Vehicle Code by 625 ILCS 5/18b–105(b), part of the Illinois Motor Carrier Safety Law."). There is thus no state cause of action allowing a personal injury or wrongful death plaintiff to redress FMCSR violations.[6] E. Leon cannot prevail on this theory as a matter of law.

---

[6]That FedEx Ground aided and abetted Martinez-Leandro's violations of federal regulations does not provide an independent basis for holding FedEx Ground liable. It may, however, be relevant evidence for E. Leon's state negligence claim. For example, E. Leon contends that FedEx Ground's violations of its federal duties were negligence per se. See Complaint ¶ 36, at 7 ("The violations of its duties by defendant FedEx Ground, Inc. was [sic] negligent and was negligent per se."). Evidence that a defendant violated 49 C.F.R. § 390.13 would be evidence of negligence and, in New Mexico, could support a negligence per se theory. As the Honorable Kenneth J. Gonzalez, United States District Judge for the District of New Mexico, explained:

> Allen's testimony concerning alleged FMCSR violations is somewhat relevant to the question of whether MNT breached its duty to ensure Sateren was a qualified driver prior to and at the time of the accident. . . . Allen's discussion of Section 391.25 is relevant to Plaintiffs' negligence per se claims that Defendants' violated FMCSRs.

Asbury v. MNT, Inc., No. CIV. 12-252 KG/RHS, 2014 WL 6674475, at *10 (D.N.M. Aug. 6, 2014)(Gonzalez, J.). Plaintiffs may be barred from making this argument, however, if they fail to cite a state statute in their pretrial orders. See Stewart v. Mitchell Transp., 241 F. Supp. 2d at 1221. The Court emphasizes that it is not deciding that FedEx Ground violated 49 C.F.R. § 390.13.

## III.   E. LEON CANNOT RECOVER ON A STATE TORT LAW AIDING-AND-ABETTING THEORY.

Finally, the Court could interpret E. Leon's aiding and abetting claim as a purely state law claim.[7]  "New Mexico recognizes tort liability for aiding and abetting another's tortious conduct."  GCM, Inc. v. Kentucky Cent. Life Ins. Co., 1997-NMSC-052, ¶ 14, 947 P.2d 143, 147.  This recognition is grounded in the Restatement (Second) of Torts, which provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (1979).  New Mexico courts have applied this tort to breach of fiduciary duty claims, see GCM, Inc. v. Kentucky Cent. Life Ins. Co., 1997-NMSC-052, ¶ 17, 947 P.2d at 148; constructive fraud claims, see Wolf & Klar Cos. v. Garner, 1984-NMSC-040, ¶ 7, 679 P.2d 258, 260 ("Where one participates with or aids or abets an agent in an act which perpetrates a fraud upon the principal, he is equally liable with the agent to the principal for any damages suffered."); and battery claims, see Rael v. Cadena, 1979-NMCA-134, ¶ 5, 604 P.2d 822, 822 (holding third party who encouraged assailant to beat victim liable, because he "aid[ed] or encourage[d] the act").  New Mexico's law reflects the general rule in other jurisdictions.  See

---

[7]This interpretation conflicts with E. Leon's statement during the hearing that "[i]t isn't a New Mexico claim." Tr. at 73:6-9 (Barber).  The Court will nonetheless address it, because the pretrial order appears ambiguous.  See Pretrial Order at 52 (listing, as one of E. Leon's disputed issues of law, "[w]hether or not FedEx aided and abetted Federico Martinez-Leandro in violating federal and state safety laws and rules")(emphasis added).

Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc., 340 Md. 176, 200, 665 A.2d 1038, 1049-50 (1995)("Aider and abettor tort liability, for various underlying torts, has been uniformly recognized by cases elsewhere and by other authorities.")(collecting cases).

To establish a claim for aiding and abetting, E. Leon must prove that: (i) Martinez-Leandro breached a duty owed to M. Leon; (ii) FedEx Ground knew of such a duty; (iii) FedEx Ground intentionally[8] provided substantial assistance or encouragement to Martinez-Leandro to commit an act which FedEx Ground knew to be a breach of duty; and (iv) M. Leon was damaged as a result.  See GCM, Inc. v. Kentucky Cent. Life Ins. Co., 1997-NMSC-052, ¶ 17, 947 P.2d at 148; Motion at 2.

---

[8]The Tenth Circuit's Pattern Jury Instructions for criminal aiding and abetting under 18 U.S.C. § 2(a) include a similar requirement:

> This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: someone else committed the charged crime, and
>
> Second: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him.
>
> The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Tenth Circuit Pattern Jury Instructions Criminal § 2.06, at 81 (2011).  See United States v. Headman, 594 F.3d 1179, 1186-87 (10th Cir. 2010); United States v. Anderson, 189 F.3d 1201, 1207 (10th Cir. 1999).

"In practice, liability for aiding-abetting often turns on how much encouragement or assistance is substantial enough." Halberstam v. Welch, 705 F.2d 472, 478 (D.C. Cir. 1983). See Motion at 2-3 ("Plaintiff has not and cannot demonstrate that FGPS intentionally provided substantial assistance or encouragement to Mr. Martinez-Leandro to commit an act that [FedEx Ground] knew to be a breach of the duty."). The Restatement provides factors that courts use to make this determination:

> The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered.

Restatement (Second) of Torts § 876 (1979).

Direct encouragement at the time of the deed satisfies this prong. In Rael v. Cadena, the Court of Appeals of New Mexico affirmed a trial court's ruling holding a defendant liable for aiding and abetting a beating by yelling to the perpetrator to "Kill him!" and "Hit him more!" 1979-NMCA-134, ¶¶ 3-7, 604 P.2d at 822-23. Although the Court of Appeals of New Mexico recognized that mere presence at the scene would be insufficient for liability, it held that "verbal encouragement at the scene gives rise to liability." Rael v. Cadena, 1979-NMCA-134, ¶ 6, 604 P.2d at 823. Courts have also imposed aiding-and-abetting liability on passengers in a car who encourage a driver to drive drunk or ignore traffic safety rules. See Shelter Mut. Ins. Co. v. White, 930 S.W.2d 1, 4 (Mo. Ct. App. 1996); Cooper v. Bondoni, 1992 OK CIV APP 10, 841 P.2d 608, 611; Price v. Halstead, 177 W. Va. 592, 600, 355 S.E.2d 380, 389 (1987). Non-verbal encouragement can also lead to liability. See Keel v. Hainline, 1958 OK 201, 331 P.2d 397, 400 ("Keel aided and abetted the wrongful throwing by procuring and supplying to the throwers the articles to be thrown.").

Less direct acts may also support aiding-and-abetting liability.  In <u>Russell v. Marboro Books</u>, 18 Misc. 2d 166, 183 N.Y.S.2d 8 (Sup. Ct. 1959), the defendant book company sold a model's photograph to a company with the knowledge that the company would alter and use the photograph to defame the model.  <u>See</u> 18 Misc. 2d at 187, 183 N.Y.S.2d at 32.  The court concluded that the defendant's act constituted "substantial assistance" under an aiding and abetting theory.  18 Misc. 2d at 187, 183 N.Y.S.2d at 32.

As a threshold matter, the Court must understand exactly what E. Leon's claim is.  E. Leon alleges, in the Complaint and Pretrial Order that FedEx Ground "aided and abetted Federico Martinez-Leandro in violating some or all of the duties alleged above."  Pretrial Order at 44; Complaint ¶ 35, at 7 (using identical language).  Martinez-Leandro's most obvious breaches of his duties with respect to M. Leon[9] involve specific failures to drive properly -- a failure to stay awake while driving, a failure to yield, traveling too fast for conditions, and other similar acts.  E. Leon argues that FedEx Ground's failure to train its employees "aided or abetted its driver, Martinez-Leandro, in either sleeping while he was driving or making an unsafe lane change in violation of New Mexico Statutes."  Response at 3.

The Court concludes that aiding-and-abetting liability does not apply to the situation here.  E. Leon does not provide any evidence that FedEx Ground "intentionally provide[d] substantial assistance or encouragement" to Martinez-Leandro to sleep while driving or make an unsafe lane change.  <u>GCM, Inc. v. Kentucky Cent. Life Ins. Co.</u>, 1997-NMSC-052, ¶ 17, 947 P.2d at 148.  It is not in the same position as a passenger urging a driver to drive drunk, or to

---

[9]Many of the duties listed in the Complaint and Pretrial Order apply only to FedEx Ground.  <u>See</u> Pretrial Order at 41-44; Complaint ¶¶ 18-33, at 4-7.  The aiding and abetting theory, however, rests on Martinez-Leandro's breach of a duty owed to M. Leon.  <u>See</u> <u>GCM, Inc. v. Kentucky Cent. Life Ins. Co.</u>, 1997-NMSC-052, ¶ 17, 947 P.2d at 148.

speed.  See Shelter Mut. Ins. Co. v. White, 930 S.W.2d at 4.  FedEx Ground's "absence at the time of the tort" also weighs against liability.  Restatement (Second) of Torts § 876 (1979).  Moreover, the Court has not found any cases imposing aiding-and-abetting liability under similar circumstances.  Many of the cases described above involved intentional torts.  See Rael v. Cadena, 1979-NMCA-134, ¶ 6, 604 P.2d at 823 (involving battery); Wolf & Klar Cos. v. Garner, 1984-NMSC-040, ¶ 7, 679 P.2d at 260 (involving constructive fraud); GCM, Inc. v. Kentucky Cent. Life Ins. Co., 1997-NMSC-052, ¶ 17, 947 P.2d at 148 (involving an intentional breach of fiduciary duty).[10]

Although other courts have held that inaction may form the basis for a substantial assistance claim, see Failla v. City of Passaic, 146 F.3d 149, 158 (3d Cir. 1998)(holding, under New Jersey law, that an individual defendant could be liable if he knew that his employer's failure to accommodate a handicap was a breach of his employer's duty, and "his inaction actually assisted or encouraged the unlawful act"), the Court has not located any cases finding aiding-and-abetting liability on similar facts.  Cases involving attenuated relationships between the defendant and the alleged wrongdoer tend to reject liability.  In E.E.O.C. v. GLC Restaurants, Inc., No. CV 05-0618 PCT-DGC, 2006 WL 3052224 (D. Ariz. Oct. 26, 2006)(Campbell, J.), the Equal Employment Opportunity Commission ("EEOC") and individual plaintiffs brought a sexual harassment suit against a McDonald's restaurant's owners and store managers.  2006 WL 3052224, at *1.  The suit included an allegation that the store manager aided and abetted the assistant store manager's sexual harassment.  See 2006 WL 3052224, at *12.  The court first stated the relevant test: "Aiding and abetting requires that (1) the primary tortfeasor commit a

_____

[10]California's version of aiding-and-abetting liability appears to apply largely, if not entirely, in intentional tort cases.  See Schulz v. Neovi Data Corp., 152 Cal. App. 4th 86, 93, 60 Cal. Rptr. 3d 810, 816 (2007)("Liability may . . . be imposed on one who aids and abets the commission of an intentional tort . . . .").

tort that causes injury to the plaintiff, (2) the defendant know that the primary tortfeasor's act constitutes a breach of duty, and (3) the defendant substantially assist or encourage the primary tortfeasor in achieving the breach."  2006 WL 3052224, at \*12.  It then rejected the plaintiffs' claims for failure to satisfy the third prong:

> Ehresman's alleged assault and battery of Plaintiffs satisfies the first element. Regarding the second element, it is unclear if Keppel knew that Ehresman's acts constituted sexual harassment, although that would be a question for the jury. The third element, substantial assistance, requires "more than a little aid." *Wells Fargo* [*v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 488, 38 P.3d 12, 26 (2002)(en banc)].  Plaintiffs have not provided facts that show that Keppel substantially assisted or encouraged Ehresman in committing the tort.  All they allege is that Keppel did not respond to their complaints about Ehresman.  This lack of response may mean that Keppel was a poor manager of the Cordes Junction store and may help Plaintiffs overcome an affirmative defense to their Title VII claims, but it does not rise to the level of substantial assistance.

2006 WL 3052224, at \*12.  The Court's task is to determine or predict New Mexico law as accurately and faithfully as possible.[11]  E. Leon has not cited a New Mexico case holding an employer liable for aiding and abetting an employee's failure to be adequately trained, and the Court has been unable to locate any cases in any other states.  The Court does not believe that the Supreme Court of New Mexico would extend, expand, and apply aiding-and-abetting liability to a pure omission case, at least in these circumstances.  The Court thus concludes that E. Leon cannot prevail on this theory as a matter of law.  E. Leon may succeed in holding FedEx Ground liable for the same conduct on a more direct theory, such as comparative negligence or respondeat superior.

---

[11]"The federal court is bound to follow New Mexico law."  Levin v. Airgas Sw., Inc., 2006 WL 1305040, \*7 (D.N.M. April 30, 2006)(Browning, J.).  When the Supreme Court of New Mexico has not decided the issue the Court confronts, it must predict how the Supreme Court of New Mexico would rule.  See Guidance Endodontics, LLC v. Dentsply Intern., Inc., 708 F. Supp. 2d 1209, 1257 (D.N.M. 2010)(Browning, J.).  The Court is not bound to apply the Court of Appeals of New Mexico's holdings when it believes that the Supreme Court of New Mexico would arrive at a different conclusion.  See Anderson Living Trust v. ConocoPhillips Co., LLC, 952 F. Supp. 2d 979, 1033 n.8 (D.N.M. 2013)(Browning, J.).

**IT IS ORDERED** that the request in Defendant FedEx Ground Package System, Inc.'s Motion for Partial Summary Judgment on Plaintiff's Claim of Aiding and Abetting, filed November 16, 2015 (Doc. 68), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Mark J. Caruso
Caruso Law Offices, PC
Albuquerque, New Mexico

--and--

Paul D. Barber
Barber & Borg LLC
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Bryson F. Datt, Jr.
Robert E. Dapper, Jr.
Burns White, Attorneys at Law
Pittsburgh, Pennsylvania

--and--

Michael E. Kaemper
Brenda M. Saiz
Abigail M. Yates
Rodey, Dickason, Sloan, Akin & Robb, PA
Albuquerque, New Mexico

    *Attorneys for the Defendant*