**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ELIA LEON, individually and as personal
representative of the estate of MARTIN LEON,
deceased,

        Plaintiff,

vs.                                           No. CIV 13-1005 JB/SCY

FEDEX GROUND PACKAGE SYSTEM, INC.,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on Defendant FedEx Ground Package System,
Inc.'s Motion in Limine to Exclude the 911 Call, filed November 16, 2015 (Doc. 62)("Motion").
The Court held a hearing on December 22, 2015.  The primary issue is whether the Court should
admit a segment of a 911 call (the "911 Excerpt") between a Cibola County regional dispatcher
and Harriet, a FedEx Ground Package System, Inc. security department employee, regarding the
collision that sparked this litigation.  The Court will deny the Motion, because the statements in
the call are relevant, they are not inadmissible hearsay, and their potential unfair prejudice does
not substantially outweigh their probative value.

**<u>FACTUAL BACKGROUND</u>**

The Court takes its facts from the Plaintiff's Complaint to Recover Damages for Personal
Injury & Wrongful Death (Jury Trial Demanded), filed October 17, 2013 (Doc. 1)("Complaint"),
the Motion, and Defendant FedEx Ground Package System, Inc.'s Response in Opposition to
Plaintiff's Motion in Limine, filed December 3, 2015 (Doc. 93)("Prior Response").

On November 30, 2011, at roughly 11:00 p.m., Federico Martinez-Leandro was driving a

tractor-trailer "eastbound on Interstate 40 in Cibola County, New Mexico approximately .2 miles west of mile marker 89."  Complaint ¶ 12, at 3.  Martin Leon, an authorized passenger, was present in the tractor's cab.  See Complaint ¶ 13, at 3.  While in the right lane, Martinez-Leandro crashed the tractor-trailer into the rear of a second tractor-trailer.  See Complaint ¶ 15, at 3.  M. Leon suffered serious injuries and death because of the accident.  See Complaint ¶ 16, at 3.

Martinez-Leandro was Eusebia Transportation, Inc.'s employee or agent.  See Complaint ¶ 8, at 2.  Eusebia Transportation had leased the tractor and Martinez-Leandro's services to FedEx Ground Package System, Inc., which provided the trailers and displayed its Department of Transportation number on the tractor.  See Complaint ¶ 7-8, at 2.

Larry Payne, a driver for Puckett Transportation, Inc., was driving the other tractor-trailer involved in the collision.  See Complaint ¶ 15, at 3.  Elia Leon, FedEx Ground, and the New Mexico State Police reconstructed the accident, and all agree that Payne's tractor-trailer was traveling in the outer lane of travel at less than the speed limit.  See Prior Response at 2 (stating that Payne was traveling "well below the speed limit, at approximately 34 to 38 mph").

On December 1, 2011, at approximately 1:18 a.m., a FedEx Ground security department employee, identified as "Harriet," spoke with a Cibola County regional dispatcher.  Motion at 2. The two first discussed the accident's facts.  See Transcript of 911 Call at 1-16, recorded December 1, 2011, filed November 16, 2015 (Doc. 62-1)("911 Transcript").  The dispatcher traded contact information with Harriet, and then had the following conversation:

**Harriet/FedEx Security:**     My name is Harriet.

**Chris/Cibola Dispatch:**     Okay.  And . . .

**Harriet/FedEx Security:**     All information is greatly appreciated, so we could put this together.

| | |
|---|---|
| **Chris/Cibola Dispatch:** | Okay. Hold on one second.  Let me check one other thing for you real quick, okay. |
| **Harriet/FedEx Security:** | Okay, thank you, Chris. |

[Inaudible background radio chatter]

| | |
|---|---|
| **Chris/Cibola Dispatch:** | Can I place you on hold real quick? |
| **Harriet/FedEx Security:** | Sure. |
| **Chris/Cibola Dispatch:** | Thanks. |
| **Harriet/FedEx Security:** | Guess what, Lina?  We got another one!  Ground vehicle right outside of Grants, New Mexico, eastbound.  Cab is demolished.  The driver is not seriously [inaudible/background beeping].  The passenger is deceased. |
| **FedEx Ground Person:** | [Inaudible]. |
| **Harriet / FedEx Security:** | Yes, he hit the -- it rear-ended the back of another semi.   And  he  said  that  cab  is  just [inaudible/background beeping].  So the passenger is -- was killed instantly, he said, but it's a mess; it's a total mess. |

911 Transcript at 10-11.  The Court considers this series of exchanges to be the "911 Excerpt."

## PROCEDURAL BACKGROUND

E. Leon brought suit as decedent M. Leon's widow and personal representative on October 17, 2013.  See Complaint ¶¶ 2, 4, at 1.  E. Leon alleges two counts in her Complaint: (i) negligence; and (ii) "safety violations, negligent operations, and aiding and abetting."  Complaint at 4, 6.  E. Leon seeks actual and compensatory, exemplary, and punitive damages.  See Complaint ¶¶ 41-43, at 7-9.

### 1.  The Motion.

On November 16, 2015, FedEx Ground moved to exclude the 911 call from evidence.  See Motion at 1.  FedEx Ground argues that: (i) the call is irrelevant; (ii) the call is inadmissible

hearsay; and (iii) the call "is unnecessarily cumulative, and would severely prejudice [FedEx Ground]."  Motion at 1.  First, FedEx Ground contends that the 911 call's statements "have no bearing on any fact that is at issue" because FedEx Ground does not dispute "that Leon died at the scene of the accident" or where and when the accident occurred.  Motion at 3.  Second, FedEx Ground contends that the 911 call is hearsay, because it consists of out-of-court statements offered for the truth of the matter -- including that FedEx Ground "got another one." Motion at 3.  It adds that the testimony is "inherently unreliable" because Harriet, the unidentified FedEx Ground employee, and the dispatcher will not testify in court.  See Motion at 4.  It also contends in a conclusory manner that the 911 call does not fall within any hearsay exception.  See Motion at 4.  Third, FedEx Ground asserts that the Court should exclude the 911 call under rule 403 of the Federal Rules of Evidence.  See Motion at 4-5.  It notes that officers from the Cibola County Sheriff's Department will testify regarding the same underlying facts at trial, making the 911 call cumulative.  See Motion at 4.  It adds that "[t]he statements in the call, including Harriet's exclamation 'we got another one!,' could only be used in this context to improperly suggest that [FedEx Ground] frequently involves other drivers in accidents or that drivers are often killed in accidents with [FedEx Ground]."  Motion at 5.  The statements, it says, would cause the jurors to make a decision "based solely on their emotions."  Motion at 5.

2. **The Response.**

E. Leon responded on November 25, 2015.  See Plaintiff's Response to FedEx Ground Package System's Motion *In Limine* to Exclude the 911 Call, filed November 25, 2015 (Doc. 79)("Response").  E. Leon contends that "[t]he spontaneous excited utterance of the FedEx security person (Harriet) that 'We got another one' is an admission by a FedEx employee that with startling frequency FedEx drivers are being injured or killed."  Response at 2.  She argues

that the 911 call is not hearsay, because she offers it "to show notice of frequent accidents." Response at 2. She adds that, even if the statement is offered to show the truth of the matter, it is exempt from the hearsay rule as an excited utterance. See Response at 2 (citing Fed. R. Evid. 803(2)). She also cites to Morga et al. v. FedEx Ground Package System, Inc. et al., D-101-CV-2012-01906, which she says denied a similar FedEx Ground motion to exclude a 911 call. See Response at 2.

**3.   The Reply.**

FedEx Ground replied on December 14, 2015. See FedEx Ground Package System, Inc.'s Reply in Support of Motion In Limine to Exclude the 911 Call, filed December 14, 2015 (Doc. 98)("Reply"). FedEx Ground first asserts that E. Leon will use the 911 call to prove the truth of the matter asserted -- that FedEx Drivers are frequently injured and killed. Reply at 1. It notes that "it is totally impossible to conclude that these vague statements somehow provide 'notice' to FGPS of frequent accidents and deaths," and that "notice attributable to an . . . employee whom Plaintiff cannot even identify by last name has absolutely no probative value in this case." Reply at 1-2. It then argues that the "we got another one!" statement is not an excited utterance, because Harriet was not "under the continuing stress of any excitement caused by the accident." Reply at 2.

**4.   The Hearing.**

The Court held a hearing on December 22, 2015. See Transcript of Hearing, taken December 22, 2015 (Doc. 128)("Tr."). The Court opened the discussion by explaining that it was inclined to deny the Motion: "It seems to me it's a statement by somebody at Fed Ex. It's a recognition that, you know, they have accidents. And another one perhaps that's similar to this one. So I guess I would be inclined not to [ex]clude the 911 call." Tr. at 4:2-17 (Court). FedEx

Ground argued, in response to the Court's questions, that the 911 call was not a party opponent's statement because "[t]he declarant, Harriet, has not been fully identified. . . . The only indication that she even works for Fed Ex just sort of comes from the fact that she's a security department employee."  Tr. at 5:17-22 (Yates).  FedEx Ground repeated its argument that the statements in the call are less reliable than other available evidence.  See Tr. at 6:1-10 (Yates).

E. Leon responded that the statement is FedEx Ground's statement, because "the employee is one authorized by Fed Ex to take and be involved in those calls."  Tr. at 6:15-17 (Barber).  Although she conceded that she did not know the exact level of excitement, she also argued that the statement was an excited utterance, because it was a "reactionary comment."  Tr. at 6:18-20 (Barber).

> FedEx Ground repeated its excited utterance argument:
>
> This declarant, Harriet, she's asking in the course of her job -- she's the passive recipient of a telephone call that's a part of her job.  There is no showing that she was at the scene of the crash.  There is no showing at all that she's agitated in any way or responding in an excited manner.  She didn't witness the accident.

Tr. at 8:6-14 (Yates).  The Court concluded that it would likely deny the motion:

> You know, I think the plaintiff gets to put on its case how it wants to.  This doesn't strike me as particularly that prejudicial, the material.  So I'm inclined to allow it.  It doesn't seem to really have a hearsay objection, at least the statements from the Fed Ex representative.  And I reviewed the transcript a couple of times.  It looks like Fed Ex employees, so I think it's sufficient evidence to find that it is.  So I'll allow that testimony to come in.

Tr. at 8:23-9:7 (Court).

The parties clarified the scope of the Court's ruling at the hearing's end.  FedEx Ground asked whether the Court's ruling on the 911 call would admit the entire call, or only the 911 Excerpt.  See Tr. at 129:22-130:6 (Saiz)(citing Motion at 2).  The Court asked E. Leon whether there was "anything besides, We've got another one, that you want out of this transcript."  Tr. at

130:7-9 (Court).  E. Leon answered in the negative, noting that she believed that the parties'

dispute concerned only the statement above.  Tr. at 130:12-15 (Barber).  The Court then accepted

E. Leon's choice to admit only the excerpt.  See Tr. at 130:22-131:2 (Court).  The parties thus

asked that the Court address only the 911 Excerpt's admissibility, rather than the admissibility of

the entire 911 call.

## LAW REGARDING THE RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion

of irrelevant and potentially prejudicial evidence."  Train v. City of Albuquerque, 629 F. Supp.

2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).  "Relevant

evidence is evidence that has a tendency to make the existence of any fact that is of consequence

to the determination of the action more probable or less probable than it would be without the

evidence."  United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3

(D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401)("Evidence is relevant if: (a) it

has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.")).  "The standard for relevancy is

particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and

unrealistic.'"  United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)

(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).  Irrelevant evidence, or

that evidence which does not make a fact of consequence more or less probable, however, is

inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible."  United States v. Christy, No. CR 10-1534

JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802).

Under rule 801(c), "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999)(Carnes, J.). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness. See United States v. Caraway, 534 F.3d at 1299 ("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay. If admitted for impeachment purposes, however, it is not hearsay."). Rule 805 recognizes that "[h]earsay within hearsay" -- commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.

**1. Law Regarding Party Opponents' Statements.**

The Federal Rules of Evidence exclude a party opponent's statement from the definition of hearsay where:

> The statement is offered against an opposing party and:
>
> **(A)** was made by the party in an individual or representative capacity;
>
> **(B)** is one the party manifested that it adopted or believed to be true;
>
> **(C)** was made by a person whom the party authorized to make a statement on the subject;
>
> **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2). The United States Court of Appeals for the Tenth Circuit has stated:

Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 667 (10th Cir. 2006)(Seymour, J.)(alterations omitted)(internal quotations and alterations omitted).[1]

### 2. Law Regarding Rule 803(2).

Rule 803(2), commonly referred to as the excited utterance exception, provides an exception to the exclusion of hearsay statements for "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). The United States Court of Appeals for the District of Columbia has noted that "[t]he rationale underlying the 'excited utterance' exception is that 'excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self-interest and therefore rendered unreliable.'" United States v. Alexander, 331 F.3d 116, 122 (D.D.C. 2003)(quoting United States v. Brown, 254 F.3d 454, 458

---

[1]The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d) and uses instead the term "statements." Fed. R. Evid. 801(d). This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made." Fed. R. Evid. 801, advisory committee's note on 2011 Amendments. Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 should still be useful for cases after the restyling. Fed. R. Evid. 801.

(3d Cir. 2001)).  "Thus, to qualify as an excited utterance, the declarant's state of mind at the time that the statement was made must preclude conscious reflection on the subject of the statement."  United States v. Alexander, 331 F.3d at 122 (quoting United States v. Joy, 192 F.3d 761, 766 (7th Cir. 1999))(internal quotations and changes omitted).  The Tenth Circuit, in United States v. Smith, 606 F.3d 1270 (10th Cir. 2010), set forth a district court's required analysis for whether a statement is admissible under the excited utterance exception:

> The so-called excited-utterance exception has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event.  There is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance.  Admissibility hinges on a statement's contemporaneousness with the excitement a startling event causes, not the event itself.  There is no hard time limit that must be met under Rule 803; what is relevant is whether the declarant is still under the excitement of the startling event.

606 F.3d at 1279 (citations omitted)(internal quotation marks omitted).  The Tenth Circuit has noted:

> Courts consider a range of factors in determining whether a declarant made a statement while under the stress of a particular event.  Among the more relevant factors are: the amount of time between the event and the statement; the nature of the event; the subject matter of the statement; the age and condition of the declarant; the presence or absence of self-interest; and whether the statement was volunteered or in response to questioning.

United States v. Pursley, 577 F.3d 1204, 1220 (10th Cir. 2009).  "Permissible subject matter of the statement is [not] limited . . . to description or explanation of the event or condition . . . . [T]he statement need only relate to the startling event or condition, thus affording a broader scope of subject matter coverage."   United States v. Frost, 684 F.3d 963, 973 (10th Cir. 2012)(first brackets in original)(quoting Fed. R. Evid. 803 Advisory Comm. Notes).  "If the trial court has access to a recording of the declarant's statement, it may also consider the declarant's tone and tenor of voice in determining whether the declarant made that statement while under the

stress of excitement."  United States v. Alexander, 331 F.3d 116, 123 (D.C. Cir. 2003)(internal

quotations omitted).

The United States Court of Appeals for the Second Circuit has provided an analysis of

the similarities and subtle differences between the present sense impression and excited utterance

exceptions to the rule against hearsay:

> As defined by the Federal Rules of Evidence, a present sense impression is a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."  Rule 803(1), Fed. R. Evid.  Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory.  See United States v. Brewer, 36 F.3d 266, 272 (2d Cir. 1994).
>
> The hearsay exception for excited utterances is premised on a similar, though distinct, assumption that the reliability of a statement increases as opportunity for reflection by the declarant decreases.  An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  Rule 803(2), Fed. R. Evid.  As we have explained, "[t]he rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability."  [United States v.] Tocco, 135 F.3d [] [116,] 127[ (2d Cir. 1998)].  Unlike present sense impressions, "[a]n excited utterance need not be contemporaneous with the startling event to be admissible."  Id.  Rather "[t]he length of time between the event and the utterance is only one factor to be taken into account in determining whether the declarant was, within the meaning of rule 803(2), 'under the stress of excitement caused by the event or condition.'"  United States v. Scarpa, 913 F.2d 993, 1017 (2d Cir. 1990).
>
> . . . .
>
> Thus while the hearsay exception for present sense impressions focuses on contemporaneity as the guarantor of reliability, and requires that the hearsay statement "describe or explain" the contemporaneous event or condition, Rule 803(1), Fed. R. Evid., the excited utterance exception is based on the psychological impact of the event itself, and permits admission of a broader range of hearsay statements -- i.e. those that "relate to" the event.  Rule 803(2), Fed. R. Evid.

United States v. Jones, 299 F.3d 103, 112 & n.3 (2d Cir. 2002).

In Maples v. Vollmer, No. CIV 12-0294 JB/RHS, 2013 WL 1681234 (D.N.M. March 31, 2013)(Browning, J.), the plaintiff's "then-boyfriend's daughter" called 911; in response, the defendant officers arrived at the plaintiff's residence.  2013 WL 1681234, at *1.  The plaintiff was in his front yard when the officers arrived; when he tried to walk away from them, the officers chased the plaintiff, who then fled from the officers.  See 2013 WL 1681234, at *1.  The officers tackled the plaintiff when they caught up to him, and the plaintiff alleged that the officers used excessive and unnecessary force.  See 2013 WL 1681234, at *1.  The plaintiff filed a motion in limine, asking the Court to prohibit the defendants or their witnesses from disclosing the contents of the 911 call.  See 2013 WL 1681234, at *2.  The Court concluded that the call was admissible under rule 803(2), noting that it satisfied the three requirements of the excited-utterance exception to the rule against hearsay:

> The second and third requirements of the excited utterance analysis cannot reasonably be challenged under the circumstances surrounding S. Lane's 911 call: (i) S. Lane's statements were contemporaneous with the event, and there is thus no lapse of time here between the startling event to which S. Lane's statements relate and the statements; and (ii) there is a nexus between the statements' content and the event, as S. Lane's statements detail the event in real time, explain why the event prompted her to call 911, and describe Maples to the 911 operator.

2013 WL 1681234, at *16.  The remaining issue was whether the event to which they relate -- the plaintiff's "attempt to allegedly wrongfully gain access" to his residence and his "coming after" the caller's relative -- was "a startling event or condition."  2013 WL 1681234, at *16. The Court cited a leading treatise on the subject, and concluded that the event was sufficiently startling:

> Professor Stephen A. Saltzburg explains that courts have been quite liberal in finding that an event is startling for purposes of rule 803(1):
>
> > In most cases it is not seriously disputed that the event to which the excited utterance relates is in fact a startling event. Occurrences such as accidents, fights, and physical crimes are generally deemed

> startling events.  However, admissibility under the Rule is not
> limited to events describing such clearly upsetting occurrences.
> The Courts have been quite expansive in finding that an event
> triggered a startled statement is in fact a startling event.

4 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, <u>Fed. Rules of
Evid. Manual</u> § 803.02[3][b], at 803-18 (9th ed. 2006)(footnotes omitted).
Professor Saltzburg cites to <u>David v. Pueblo Supermarket</u>, 740 F.2d 230 (3d Cir.
1984), as an "e.g." example to support his proposition that courts have been quite
expansive in finding a startling event.   In <u>David v. Pueblo Supermarket</u>, the
United States Court of Appeals for the Third Circuit held that a woman observing
another woman, to whom she was not related, "who was eight months pregnant
fall directly on her stomach . . . would reasonably qualify as a 'startling
occasion.'"  740 F.2d at 235.  Another example to which Professor Saltzburg cites
is <u>United States v. Beverly</u>, 369 F.3d 516 (6th Cir. 2006), in which the United
States Court of Appeals for the Sixth Circuit held that "viewing the photograph of
the individual that [the declarant] recognized as her husband committing a bank
robbery was a startling event."  369 F.3d at 540.

2013 WL 1681234, at *16.  The Court noted that the caller believed that the plaintiff was not

supposed to be at his residence, "he had left the hospital when he should not have, that she was

'pretty sure' he was in the hospital because he was suicidal, and that she believed [the plaintiff]

was at the residence because he was coming after her father," concluding that "[t]hese events are

at least as startling as observing an unrelated person, even a pregnant person, slip in a grocery

store."  2013 WL 1681234, at *16.

## <u>LAW REGARDING RULE 403</u>

Rule 403 provides: "The court may exclude relevant evidence if its probative value is

substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the

proffered evidence's probative value against its potential for unfair prejudice.  <u>See</u> <u>United States

v. Record</u>, 873 F.2d 1363, 1375 (10th Cir. 1989)(Baldock, J.).  "[I]t is only unfair prejudice,

substantially outweighing probative value, which permits exclusion of relevant matter [under

rule 403].”  United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(Tacha, J.)(quoting

United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)(Brorby, J.)).  The Tenth Circuit has

reminded district courts that they should be “mindful” that “exclusion of evidence under Rule

403 that is otherwise admissible under the other rules is an extraordinary remedy and should be

used sparingly.”  United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010)(Baldock, J.).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court’s

discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999)(Kelly, J.), and the

trial court’s discretion to balance possible unfair prejudice against probative value is broad, see

United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983)(Ervin, J.); United States v.

Masters, 622 F.2d 83, 87-88 (4th Cir. 1980)(Russell, J.).  The Supreme Court of the United

States has noted:

> In deference to a district court’s familiarity with the details of the case and its
> greater experience in evidentiary matters, courts of appeals afford broad
> discretion to a district court’s evidentiary rulings . . . .  This is particularly true
> with respect to Rule 403 since it requires an “on-the-spot balancing of probative
> value and prejudice, potentially to exclude as unduly prejudicial some evidence
> that already has been found to be factually relevant.”

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(Thomas, J.)(quoting 1

Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed.

1999)).  See United States v. Abel, 469 U.S. 45, 54 (1984)(Rehnquist, J.)(“Assessing the

probative value of [proffered evidence], and weighing any factors counseling against

admissibility is a matter first for the district court’s sound judgment under Rules 401 and 403 . . .

.”).

Evidence may be unfairly prejudicial if it would likely provoke the jury’s emotional

response or would otherwise tend to adversely affect the jury’s attitude toward a particular

matter.  See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999)(Sanborn, J.).

Evidence is not unfairly prejudicial merely because it damages a party's case.  See United States

v. Caraway, 534 F.3d at 1301; United States v. Curtis, 344 F.3d 1057, 1067 (10th

Cir. 2003)(Ebel, J.); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991)(Holloway,

J.).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest

decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United

States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(Hartz, J.)(quoting Fed. R. Evid. 403

advisory committee notes).

## LAW REGARDING 911 CALLS

The Court addressed a 911 call's admissibility in Maples v. Vollmer, 2013 WL 1681234.

In that case, an arrestee alleged that two Albuquerque Police Department officers who tackled

him used excessive force.  See 2013 WL 1681234, at *1.  The defendants sought to introduce a

recording of and statements from the 911 call that brought the officers to the scene, to: (i) show

that their use of force was reasonable; and (ii) rebut the plaintiff's contention that he was allowed

to be at his home, rather than a hospital.  See 2013 WL 1681234, at *1.  The plaintiff objected on

the grounds that: (i) the 911 caller's statements were irrelevant unless the police officers actually

knew about the statements when they responded; and (ii) that the relevant statements were

inadmissible hearsay.  See 2013 WL 1681234, at *1.

The Court ran through an extensive analysis of the hearsay exceptions, concluding that

the statements, but not the recording, would be admissible on five primary grounds.  See 2013

WL 1681234, at *11.  First, the Court concluded that only the information that the officers

actually possessed was relevant, because "[t]he reasonableness of an officer's use of force . . .

depends on the information available to the officer at the time of the arrest."  2013 WL 1681234,

at *11.  Second, the Court determined that the caller's statements that the plaintiff was supposed

to be in a psychiatric ward were relevant to rebut the plaintiff's allegations that he was lawfully present at the property at the time of the arrest.  See 2013 WL 1681234, at *13.  As to the plaintiff's argument that the Court should exclude the 911 recording because the statements in the recording were hearsay, the Court concluded that the statements fell under the present sense impression, excited utterance, and regularly conducted activities exceptions to the rule against hearsay.  Third, the caller's statements were present sense impressions, because the statements described and explained the events as they occurred.  See 2013 WL 1681234, at *15 ("This statement is describing the event -- Maples' presence on the property -- and also explaining the event -- that she is calling 911 because Maples is not supposed to be there.").  Fourth, the statements also qualified as excited utterances.  See 2013 WL 1681234, at *16.  The Court explained that "[t]o believe one's father is in peril or being attacked by a person who has possibly just left without permission a hospital in which he was being watched and cared for because he threatened suicide, is a startling event."  2013 WL 1681234, at *16.  Fifth, the Court indicated that it would admit the recording as a record of a regularly conducted activity if the defendants laid the proper foundation.  See 2013 WL 1681234, at *17-18.  It cited several cases holding that 911 calls are kept in the regular course of business by police departments or municipal entities.  See 2013 WL 1681234, at *17 (citing United States v. Suggs, 266 F. App'x 258, 262 (4th Cir. 2008)(unpublished); United States v. Chen Kuo, 10–CR–671 S–1 KAM, 2011 WL 145471, at *11 (E.D.N.Y. Jan. 18, 2011); John v. Masterson, 08–0141 TLM, 2010 WL 1957876, at * 1 (D. Conn. May 14, 2010)).

The Court considered a similar question in Montoya v. Vill. of Cuba, No. CIV 11-0814 JB/SMV, 2013 WL 6504291 (D.N.M. Nov. 30, 2013)(Browning, J.).  As in Maples v. Vollmer, the police officer defendant in Montoya v. Vill. of Cuba moved to introduce a 911 call in order to

explain why he arrested the plaintiff.  See 2013 WL 6504291, at *21.  The Court first determined

that the 911 call was relevant: "Here, as in Maples v. Vollmer, the 911 recording is relevant to

rebut a central issue at trial: whether Romero arrested Montoya in retaliation for the petition that

she championed against the Cuba Police Department."  2013 WL 6504291, at *22.  Finally, the

Court ruled that the recording was admissible under the present sense impression, excited

utterance, and business record exceptions to the bar against hearsay evidence.  See 2013 WL

6504291, at *21.

## LAW REGARDING AUTHENTICATION OF EVIDENCE

Rule 901 of the Federal Rules of Evidence governs the authentication of evidence:

(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) Examples. The following are examples only -- not a complete list -- of evidence that satisfies the requirement:

(1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.

(2) Nonexpert Opinion About Handwriting. A nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation.

(3) Comparison by an Expert Witness or the Trier of Fact. A comparison with an authenticated specimen by an expert witness or the trier of fact.

(4) Distinctive Characteristics and the Like. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

(5) Opinion About a Voice. An opinion identifying a person's voice -- whether heard firsthand or through mechanical or electronic transmission or recording -- based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

(6) Evidence About a Telephone Conversation. For a telephone conversation, evidence that a call was made to the number assigned at the time to:

(A) a particular person, if circumstances, including self-identification, show that the person answering was the one called; or

(B) a particular business, if the call was made to a business and the call related to business reasonably transacted over the telephone.

(7) Evidence About Public Records. Evidence that:

(A) a document was recorded or filed in a public office as authorized by law; or

(B) a purported public record or statement is from the office where items of this kind are kept.

(8) Evidence About Ancient Documents or Data Compilations. For a document or data compilation, evidence that it:

(A) is in a condition that creates no suspicion about its authenticity;

(B) was in a place where, if authentic, it would likely be; and

(C) is at least 20 years old when offered.

(9) Evidence About a Process or System.  Evidence describing a process or system and showing that it produces an accurate result.

(10) Methods Provided by a Statute or Rule.  Any method of authentication or identification allowed by a federal statute or a rule prescribed by the Supreme Court.

Fed. R. Evid. 901.  Professors Charles Alan Wright and Victor James Gold explain:

Rule 901 has two purposes. First, the provision acknowledges the requirement of authentication and provides examples.  Second, Rule 901 allocates responsibilities between the judge and jury for determining whether an item of evidence is what its proponent claims it to be.  The rule allocates most of those responsibilities to the jury.

31 C. Wright & V. Gold, Federal Practice and Procedure: Evidence § 7102, at 12 (2000).

- 18 -

## ANALYSIS

The Court will deny the Motion regarding the 911 Excerpt for three reasons. First, the 911 Excerpt is relevant to whether FedEx Ground was aware it had experienced similar accidents. Second, the 911 Excerpt is not inadmissible hearsay, because, although it is offered for the truth of the matter asserted, it is a party opponent's statement. Third, the 911 Excerpt's potential unfair prejudice does not substantially outweigh its probative value.

## I.   THE 911 EXCERPT IS RELEVANT TO PUNITIVE DAMAGES AND LIABILITY.

The 911 Excerpt is relevant to two issues in this case -- punitive damages and liability (duty). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. New Mexico case law connects the defendant's mental state to the possibility of punitive damages. See Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 15, 881 P.2d 11, 15 (requiring at least evidence of recklessness or gross negligence for punitive damages). Evidence that FedEx Ground viewed this accident as "another one" tends to suggest that FedEx Ground was aware of its alleged negligence's consequences and thus support a finding of a mental state required for punitive damages. 911 Transcript at 10. In other words, the 911 Excerpt will support E. Leon's argument that FedEx Ground "does not train its tractor-trailer, 'line haul' drivers, despite the fact that FedEx has tremendous knowledge of the death and carnage that occurs." Response at 1.[2]

---

[2]FedEx Ground might argue that the 911 Excerpt's relevance is contingent on whether the prior accident was similar to the accident in this case. The Court addressed a similar issue in a recent Memorandum Opinion and Order. See Memorandum Opinion and Order, filed February 1, 2016 (Doc. 135)("Register Report MOO"). In the Register Report MOO, the Court excluded a terse list of accidents involving FedEx Ground because E. Leon could not "provide additional information to demonstrate that the other accidents are substantially similar to the accident at

New Mexico has also linked the foreseeable risk of danger to the duty of care.  See NMRA § 13-1603 ("As the risk of danger that should reasonably be foreseen increases, the amount of care required also increases."); Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 13, 881 P.2d at 14 ("[A]s the risk of danger increases, the duty of care also increases."); Cross v. City of Clovis, 1988-NMSC-045, ¶ 10, 755 P.2d 589, 592.  E. Leon could use the 911 Excerpt to argue that FedEx Ground should have foreseen a significant risk of danger, and thus had an increased duty of care.  See NMRA § 13-1603.

Finally, E. Leon should have some leeway in how she goes about proving a fact and, ultimately, her case.

---

issue."  Register Report MOO at 2.  See Wheeler v. John Deere Co., 862 F.2d 1404, 1407 (10th Cir. 1988).  E. Leon intends to introduce the 911 call to show that FedEx Ground had notice of other trucking accidents.  See Response at 2 ("[I]t will . . . show notice of frequent accidents.").  "The requirement of substantial similarity is relaxed . . . when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect."  Four Corners Helicopters, Inc. v. Turbomeca, S.A., 979 F.2d 1434, 1442 (10th Cir. 1992).  The Court concludes that there are sufficient indications of substantial similarity here to support the 911 call's introduction.  Harriet was aware of the accident's circumstances when she made the "another one" statement.  911 Transcript at 2-16.  Moreover, FedEx Ground's trucks had recently been involved in a similar accident:

> Marialy Morga, age 22, allegedly was driving very slowly or was stopped in the right lane, and perhaps partially on the shoulder, of westbound Interstate Highway 10 west of Las Cruces, N.M., at 1:30 a.m., June 22, 2011. Riding in Marialy's pickup truck, which allegedly had its tail lights and hazard lights activated, were her children, 4-year-old daughter Y.M.1 and 20-month-old son Y.M.2.  At the same time, a 22-wheel tractor-trailer driven by Elizabeth Quintana approached Marialy's vehicle from behind, allegedly at a speed of nearly 65 m.p.h. Quintana's tractor-trailer reportedly slammed into the rear of Marialy's pickup truck.

Jury Verdict, Morga v. FedEx Ground Package Sys., 2015 WL 1508690 (describing the facts in the other case).  See Response at 2 (referencing Morga v. FedEx Ground Package Sys.).  That accident also occurred at night, on a similar highway, and involved a rear-end collision with a tractor-trailer.  Under these circumstances, Harriet's sudden remark that FedEx Ground had "another one" is sufficient to show substantial similarity between the two accidents.  911 Transcript at 10.

> [T]he accepted rule that the prosecution is entitled to prove its case free from any
> defendant's option to stipulate the evidence away rests on good sense.   A
> syllogism is not a story, and a naked proposition in a courtroom may be no match
> for the robust evidence that would be used to prove it.

Old Chief v. United States, 519 U.S. 172, 189 (1997).  Old Chief v. United States also states that

the Court cannot ordinarily force the parties to stipulate to facts; parties can, except under very

narrow circumstances, turn down the offered stipulation and proceed to prove the facts with the

robustness that the party wishes.  See 519 U.S. at 186-87 ("A convincing tale can be told with

economy, but when economy becomes a break in the natural sequence of narrative evidence, an

assurance that the missing link is really there is never more than second best."); Blue v. Int'l

Bhd. of Elec. Workers Local Union 159, 676 F.3d 579, 585 (7th Cir. 2012)(applying the same

principle in a civil case).  The same rule allows a plaintiff to present its preferred evidence, even

if less prejudicial alternatives are available.  See Old Chief v. United States, 519 U.S. at 189.

## II.     THE 911 EXCERPT IS NOT INADMISSIBLE HEARSAY, DESPITE THAT E. LEON OFFERS IT FOR THE TRUTH OF THE MATTER ASSERTED, BECAUSE IT IS A PARTY OPPONENT'S STATEMENT.

E. Leon is offering the 911 Excerpt for the truth of the matter asserted -- that FedEx

Ground had "got another one!"[3]  911 Transcript at 10.  E. Leon argues that she offers the

statement "to show notice of frequent accidents" and "to show the reaction to the frequency [of]

FedEx['s] fatal accidents."   Response at 2.   These two purposes, however, depend on the

underlying assumption that FedEx Ground had "frequent accidents" to which its employees

reacted.  Response at 2.  The Court concludes that E. Leon seeks to introduce 911 Excerpt both

to show that FedEx Ground had a high frequency of accidents and to show that its employees

---

[3]The first part of the 911 Excerpt involves a few statements between the dispatcher and E. Leon.  See 911 Transcript at 10.  Although this exchange includes out-of-court statements, E. Leon does not offer them for the truth of the matters they assert.

knew about that frequency.  Thus, the evidence is being offered, at least in part, for the truth of its statements.

The 911 Excerpt does not qualify as an excited utterance.  The Tenth Circuit has set out three requirements for the excited utterance exception: "(1) a startling event; (2) [a] statement [] made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event."  United States v. Smith, 606 F.3d at 1279.  A startling event occurred here -- M. Leon was thrown from the truck and killed.  See Pretrial Order at 7, filed February 8, 2016 (Doc. 143).  The Court concludes, however, that the 911 Excerpt does not satisfy the final two factors.  See United States v. Smith, 606 F.3d at 1279.  The time elapsed between the accident and the telephone call is irrelevant, because "[a]dmissibility hinges on a statement's contemporaneousness with the excitement a startling event causes, not the event itself."  United States v. Smith, 606 F.3d at 1279.  Harriet, however, worked for FedEx Ground's Security Department, and was likely responsible for, and accustomed to, receiving reports of truck accidents on a regular basis.  See 911 Transcript at 8 ("We have Harriet from Security Department on the line, and she will take the report.").  By the time she made the relevant statement, she had already discussed the accident's details, including the location of any packages, with the dispatcher.  See 911 Transcript at 8-10.  Moreover, she was removed from the accident scene.  Harriet's statements are not analogous to a rape victim's reaction to an attack, see United States v. Harry, No. CR 10-1915 JB, 2014 WL 1950409, at *11 (D.N.M. May 7, 2014)(Browning, J.)(recognizing an excited utterance), or a 911 caller's report that a man is trying to attack the caller's relative, see Maples v. Vollmer, 2013 WL 1681234, at *16 (admitting the call as an excited utterance).

Harriet's statement, however, is an opposing party's statement under rule 801(d)(2).  See Fed. R. Evid. 801(d)(2).  FedEx Ground argues that Harriet's statements are not its statements, because she "has not been fully identified. . . . The only indication that she even works for Fed Ex just sort of comes from the fact that she's a security department employee."  Tr. at 5:17-22 (Yates).  Although "the admission of evidence concerning a telephone conversation usually requires identification of the voices heard," there is more than enough evidence here to authenticate the 911 Transcript.  31 C. Wright & V. Gold, Federal Practice and Procedure: Evidence § 7111 (2000).  FedEx Ground itself identified the parties speaking in the 911 transcript.  See 911 Transcript at 1 (indicating that Brenda M. Saiz, one of FedEx Ground's attorneys, authored the 911 Transcript).  It has repeatedly conceded that Harriet worked in its Security Department.  See Motion at 1, 2; Reply at 5.  The 911 Transcript shows that the 911 operator searched for a FedEx Ground representative to speak with the dispatcher, and that he or she reached Harriet.  See Tr. at 1-2.  The Court thus concludes that FedEx Ground's argument is unconvincing.  There is no reason to believe that Harriet was not telling the truth or that her statement was not an accurate description of the situation as she perceived it.  See Fed. R. Evid. 801(d)(2)(B).  FedEx Ground's argument that the statements are "untrustworthy" is similarly unpersuasive.  Tr. at 5:23-25 (Yates).  "An admission of a party opponent needs no indicia of trustworthiness to be admitted."  Grace United Methodist Church v. City Of Cheyenne, 451 F.3d at 667.  See Jewell v. CSX Transp., Inc., 135 F.3d 361, 365 (6th Cir. 1998)("The admissibility of statements of a party-opponent is grounded not in the presumed trustworthiness of the statements, but on a kind of estoppel or waiver theory, that a party should be entitled to rely on his opponent's statements.")(quotation omitted).  FedEx Ground's complaints about the 911 Excerpt's reliability "go to the weight to be given statements rather than to their admissibility."

Jewell v. CSX Transp., Inc., 135 F.3d at 366.  In short, the 911 Excerpt is a statement that "the party manifested that it adopted or believed to be true," and it was "made by a person whom the party authorized to make a statement on the subject."  Fed. R. Evid. 801(d)(2).  The Court will comply with the Tenth Circuit's call for a "generous treatment of this avenue of admissibility." Grace United Methodist Church v. City of Cheyenne, 451 F.3d at 667.

## III.  THE DANGER THAT THE 911 EXCERPT'S INTRODUCTION WILL RESULT IN THE PRESENTATION OF CUMULATIVE EVIDENCE OR UNFAIR PREJUDICE DOES NOT SUBSTANTIALLY OUTWEIGH ITS PROBATIVE VALUE.

The Court's decision to allow the 911 Excerpt into evidence will not result in the presentation of cumulative evidence or unfair prejudice that substantially outweighs its probative value.  FedEx Ground contends that the 911 Excerpt's introduction would result in the introduction of cumulative evidence and cause it severe prejudice.  See Motion at 1.  It notes that the 911 Excerpt "could only be used in this context to improperly suggest that FGPS frequently involves other drivers in accidents or that drivers are often killed in accidents with FGPS." Motion at 5.  The Court disagrees that the 911 Excerpt would be either cumulative or unfairly prejudicial.  Exclusion under rule 403 is an "extraordinary remedy and should be used sparingly."  United States v. Smalls, 605 F.3d at 787.

First, the evidence could have significant probative value.  Evidence that a FedEx Ground security employee, "in the course of her job," Tr. at 8:6-14 (Yates), perceived the accident in this case as "another one," 911 Transcript at 10, tends to suggest that FedEx Ground had the mental state required to allow punitive damages, Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 15, 881 P.2d at 15.  The 911 Excerpt is also relevant to whether FedEx Ground should have foreseen an elevated risk of danger.  See Clay v. Ferrellgas, Inc., 1994-NMSC-080, ¶ 13, 881 P.2d at 14. That FedEx Ground saw a fatal accident as "another one" shows that it should have been aware

of the risk of future accidents at the time when the prior accidents occurred.  911 Transcript at 10.  Given the Court's conclusion to exclude the list of accidents in the Accident Register Report, this simple statement may be E. Leon's strongest evidence that FedEx Ground had knowledge of past accidents, should have foreseen future accidents, and acted with the intent required to support punitive damages.

Second, the 911 Excerpt is unlikely to result in the presentation of cumulative evidence or significant unfair prejudice to FedEx Ground.  E. Leon has agreed to focus only on the 911 Excerpt, rather than on the entire call.  See Tr. at 130:7-131:2 (Court, Barber).  FedEx Ground's argument that the call would be "unnecessarily cumulative of the officers' trial testimony and would waste the jurors' and the Court's time" lacks a sound basis in this record.  Motion at 4.  The police officers will not be able to testify to the statements Harriet made to another FedEx Ground employee, because they did not participate in the conversation.  Even the dispatcher, the other party on the phone, likely did not overhear this part of the conversation.  See 911 Transcript at 10.  Given the Court's decision in the Accident Register MOO, E. Leon likely has scant other evidence to show FedEx Ground's awareness of accident risk.  See Accident Register MOO at 1.  Introducing a very brief excerpt from a brief 911 call will not "waste the jurors' and the Court's time."  Motion at 4.

Rule 403 permits the exclusion of otherwise relevant evidence only where "unfair prejudice" substantially outweighs the evidence's probative value.  United States v. Pettigrew, 468 F.3d at 638.  Moreover, evidence is not unfairly prejudicial merely because it damages a party's case.  See United States v. Caraway, 534 F.3d at 1301.  Although this evidence may damage FedEx Ground's case, that does not make it unfairly prejudicial.  Harriet remained "calm and detached throughout the entire call."  Reply at 2.  E. Leon does not seek to introduce other

parts of the transcript that could be more prejudicial.  See 911 Transcript at 22 ("Same ole cluster

fuck, for sure.").  The evidence here, which is relatively dry, will not suggest a decision based on

an emotional basis.  See United States v. Caraway, 534 F.3d at 1301.  The Court concludes that

the risks of the presentation of cumulative evidence and unfair prejudice do not outweigh the 911

Excerpt's probative value.

  **IT IS ORDERED** that Defendant FedEx Ground Package System, Inc.'s Motion in

Limine to Exclude the 911 Call, filed November 16, 2015 (Doc. 62), is denied.  Plaintiff Elia

Leon may introduce the 911 Excerpt in its entirety:

| | |
|---|---|
| **Harriet/FedEx Security:** | My name is Harriet. |
| **Chris/Cibola Dispatch:** | Okay.  And . . . |
| **Harriet/FedEx Security:** | All information is greatly appreciated, so we could put this together. |
| **Chris/Cibola Dispatch:** | Okay. Hold on one second.  Let me check one other thing for you real quick, okay. |
| **Harriet/FedEx Security:** | Okay, thank you, Chris. |

[Inaudible background radio chatter]

| | |
|---|---|
| **Chris/Cibola Dispatch:** | Can I place you on hold real quick? |
| **Harriet/FedEx Security:** | Sure. |
| **Chris/Cibola Dispatch:** | Thanks. |
| **Harriet/FedEx Security:** | Guess what, Lina?  We got another one!  Ground vehicle right outside of Grants, New Mexico, eastbound.  Cab is demolished.  The driver is not seriously [inaudible/background beeping].  The passenger is deceased. |
| **FedEx Ground Person:** | [Inaudible]. |
| **Harriet / FedEx Security:** | Yes, he hit the -- it rear-ended the back of another semi.     And   he   said   that   cab   is   just |

[inaudible/background beeping].   So the passenger
is -- was killed instantly, he said, but it's a mess; it's
a total mess.

911 Transcript at 10-11.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Mark J. Caruso
Caruso Law Offices, PC
Albuquerque, New Mexico

--and--

Paul D. Barber
Barber & Borg LLC
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Robert E. Dapper, Jr.
Bryson F. Datt, Jr.
Burns White LLC
Pittsburgh, Pennsylvania

--and--

Brenda M. Saiz
Michael E. Kaemper
Abigail M. Yates
Rodey, Dickason, Sloan, Akin & Robb, PA
Albuquerque, New Mexico

      *Attorneys for the Defendant*